IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PERNOD RICARD USA, LLC, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 06-505 (SLR) |
| BACARDI U.S.A., INC., | ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO TRANSFER VENUE
## <u>TO THE SOUTHERN DISTRICT OF FLORIDA</u>

Of Counsel:

Eugene D. Gulland
Oscar M. Garibaldi
Emily Johnson Henn
Jenny C. Ellickson
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

William R. Golden, Jr.
Michelle M. Graham
Matthew Marcotte
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY  10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

October 16, 2006

William J. Wade (#704)
Anne Shea Gaza (#4093)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7718
Facsimile: (302) 498-7718
wade@rlf.com
gaza@rlf.com
*Attorneys for Defendant
Bacardi U.S.A., Inc.*

# TABLE OF CONTENTS

TABLES OF AUTHORITIES ........................................................................................ ii

NATURE AND STAGE OF THE PROCEEDING........................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.  THE BALANCE OF CONVENIENCE FAVORS TRANSFER TO THE
    SOUTHERN DISTRICT OF FLORIDA................................................................ 3

    A.  Transfer Is Appropriate Because Pernod USA Has Chosen a Forum
        Having No Connection With Plaintiff Or to the Acts Giving Rise
        to Its Claims. ...................................................................................... 4

    B.  Pernod Has Offered Insufficient Reasons for Bringing This Action
        in Delaware. ....................................................................................... 5

    C.  Transfer is Appropriate Because the Claims Arose in South Florida......... 7

    D.  The Convenience of the Third Party Witnesses Weighs Strongly
        in Favor of Transfer. ........................................................................... 8

    E.  Pernod Mischaracterizes The Other Litigation Over Ownership
        Of the Havana Club Mark...................................................................... 9

II. THE INTERESTS OF JUSTICE ALSO FAVOR TRANSFER TO THE
    SOUTHERN DISTRICT OF FLORIDA................................................................ 11

CONCLUSION............................................................................................................ 12

i

# TABLE OF AUTHORITIES

## CASES

*Affymetrix, Inc. v. Synteni, Inc.*,
28 F. Supp. 2d 192 (D. Del. 1998).......................................................................................8

*Arrow Communications Labs., Inc. v. John Mezzalingua* Assocs.*, Inc.*,
No. Civ. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005)..............................4, 7

*Brown ex rel. FoxMeyer Drug Co. v. C.D. Smith Drug Co.*,
No. Civ. A. 98-494-SLR, 1999 WL 709992 (D. Del. Aug. 18, 1999)................................8

*Burstein v. Applied Extrusion Techs., Inc.*,
829 F. Supp. 106 (D. Del. 1992)......................................................................................1, 4

*Havana Club Holding, S.A. v. Galleon, S.A.*,
62 F. Supp. 2d 1085 (S.D.N.Y. 1999)..................................................................................9

*Havana Club Holding, S.A. v. Galleon S.A.*,
974 F. Supp. 302 (S.D.N.Y. 1997) .......................................................................................9

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995).......................................................................................2, 3, 11

*Kollmorgen Corp. v. Gettys Corp.*,
760 F. Supp. 65 (D. Del. 1991)............................................................................................4

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
77 F. Supp. 2d 505 (D. Del. 1999).................................................................................2, 5

*Omnicom Group, Inc. v. Employers Reinsurance Corp.*,
C.A. No. 01-839-GMS, 2002 U.S. Dist. LEXIS 1275 (D. Del. Jan. 28, 2002).................11

*Ricoh Co., Ltd v. Aeroflex Inc.*,
279 F. Supp. 2d 554 (D. Del. 2003)......................................................................................7

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1991)......................................................................................................1

*Tse v. Ventana Med. Sys., Inc.*,
No. 97-37-SLR, 1997 WL 811566 (D. Del. Nov. 25, 1997) ...............................................5

*Tsoukanelis v. Country Pure Foods, Inc.*,
337 F. Supp. 2d 600 (D. Del. 2004)......................................................................................3

RLF1-3071065-1

*Tuff Torq Corp. v. Hydro-Gear Ltd P'ship,.,*
882 F. Supp. 359 (D. Del. 1994)........................................................................................5

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.,*
201 F. Supp. 2d 294 (D. Del. 2002)..............................................................................3, 6

*Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.,*
775 F. Supp. 759 (D. Del. 1991)........................................................................................5

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 1071(b)(4) .................................................................................................2, 10

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)........................................................7

28 U.S.C. § 1404(a) ...........................................................................................1, 3, 9, 11

Cuban Assets Control Regulations,
31 C.F.R. Part 515..........................................................................................................10

J.W. Burns, *Confused Jurisprudence: False Advertising under the Lanham Act,*
79 Boston U. L. Rev. 807, 875 (1999)................................................................................6

## NATURE AND STAGE OF THE PROCEEDING

Defendant Bacardi U.S.A., Inc. ("Bacardi") has moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Southern District of Florida, where venue properly lies.

This is Bacardi's Reply Brief in Support of Its Motion To Transfer Venue to the Southern District of Florida.

## SUMMARY OF ARGUMENT

Pernod Ricard USA, LLC ("Pernod") tries to convert this Florida-centered false advertising dispute into a nation-wide dispute over the HAVANA CLUB trademark by citing news articles in national media and characterizing a consumer-focused claim as a clash of beverage titans. Bacardi's status as a large company does not preclude transfer here, where transfer to the Southern District of Florida demonstrably serves the convenience of the parties and witnesses and the interests of justice. This case arises and is centered in Florida, where HAVANA CLUB rum is sold, where consumers are allegedly deceived, and where any resulting lost sales to Pernod are occurring. Moreover, the only third party witnesses identified by the parties are in Florida, they are all elderly, and Bacardi's key third-party witness is seriously infirm.

Pernod has already elected not to litigate this action on its home turf. Because it has chosen to litigate in a foreign jurisdiction, its choice of forum receives less weight, and the "'quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer' is concomitantly reduced." *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) (quoting *Shutte v. Armco Steel Corp.*, 431 F. 2d 22, 25 (3d Cir. 1991)). Pernod offers no basis for its choice to bring suit in Delaware rather than in New York, where it is located, except the fact that Bacardi is incorporated in

Delaware. This factor, standing alone, does not outweigh the strong connection of this case to Florida, the convenience of third party witnesses, and the interests of justice.

The Court should examine "all relevant factors" under *Jumara*, to determine whether "on balance the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The fact that both parties are large corporations does not end the inquiry, which focuses on factors other than simply the financial burdens on the parties. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 509-14 (D. Del. 1999) (transferring a case notwithstanding its finding that "[t]he financial burden of litigating this case in Delaware is not likely to cause extreme hardship to either party" based on the convenience to non-party witnesses and judicial economy).

Pernod's other major assertion—that Bacardi has previously elected to litigate its rights to the HAVANA CLUB in New York and the District of Columbia—is misleading. Bacardi's predecessor was a *defendant* in the New York litigation, where Pernod's sister company unsuccessfully claimed that Bacardi's initial launch of HAVANA CLUB rum infringed its rights to the mark. The case could not have been transferred to Florida because plaintiffs joined as defendants Bacardi's distributors, who were not subject to personal jurisdiction in Florida. And pursuant to 15 U.S.C. § 1071(b)(4), the District of Columbia was the *only* forum in which Bacardi could have brought suit to appeal the Patent and Trademark Office's decision not to cancel the purported trademark registration of Cubaexport, Pernod's joint venture partner. Bacardi did not *choose* to litigate ownership to the HAVANA CLUB mark throughout the country, and Pernod's suggestion to the contrary is without merit.

2

Pernod does not dispute that jurisdiction and venue properly lie in the Southern District of Florida. Nor does it dispute that the Southern District of Florida has the strongest ties to the underlying events and witnesses. Pernod's willingness to litigate in a foreign jurisdiction coupled with Florida's indisputably strong connection to this action, to the majority of party witnesses and documents, and to all the non-party witnesses identified by the parties, strongly support transfer to the Southern District of Florida.

## ARGUMENT

This case should be transferred to the Southern District of Florida "[f]or the convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). The court has broad discretion in deciding whether to transfer an action upon examination of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Jumara*, 55 F.3d at 879 (citation omitted) (emphasis added).

## I.    THE BALANCE OF CONVENIENCE FAVORS TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA.

"[T]he Third Circuit has indicated that the analysis regarding transfer is very broad . . . emphasizing that 'there is no definitive formula or list of factors to consider.'" *Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002) (quoting *Jumara*, 55 F.3d at 879). While transfer is not warranted on a defendant's mere showing that an alternative forum would be more convenient for it, *see Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004), Bacardi here has met its burden to show that the applicable *Jumara* factors strongly support transfer.

3

### A.    Transfer Is Appropriate Because Pernod USA Has Chosen a Forum Having No Connection With Plaintiff Or to the Acts Giving Rise to Its Claims.

When evaluating the convenience of the parties and witnesses, courts in Delaware accord less weight to a plaintiff's choice of forum where the forum is not the plaintiff's "home turf" and "has no connection to any of the acts giving rise to the lawsuit." *Arrow Communications Labs., Inc. v. John Mezzalingua Assocs., Inc.*, No. Civ. 05-357-SLR, 2005 WL 2786691, at *3 (D. Del. Oct. 26, 2005) (quoting *Burstein*, 829 F. Supp. at 110). As noted above, in such situations the "'quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer' is concomitantly reduced." *Burstein*, 829 F. Supp. at 110 (quoting *Shutte*, 431 F. 2d at 25 (3d Cir. 1991)).

Pernod attempts to draw support from a case in which Delaware was held to be a New York plaintiff's home turf, *Kollmorgen Corp. v. Gettys Corp.*, 760 F. Supp. 65, 67-68 (D. Del. 1991), without offering any argument that Delaware is indeed its home turf in this case. It is not. A plaintiff's home turf is "the forum closest to the plaintiff's home in which plaintiff could effect personal service over the principal defendant." *Burstein*, 829 F. Supp. at 110 (citations and quotations omitted). In *Kollmorgen*, the Court made clear that "[o]nly if the 'home turf' is selected by the plaintiff or if the chosen forum has significant connection with the acts giving rise to the lawsuit may the Court acknowledge the convenience to the plaintiff by giving deference to his choice of forum." 760 F. Supp. at 67. Here, Pernod does not contend it could not effect service over Bacardi in New York; the fact that Delaware is closer to New York than to Florida is therefore irrelevant to the "home turf" inquiry. Pernod has chosen to litigate in a foreign jurisdiction, outside of its home turf, and its "convenience" should thus receive less weight. *See id.*; *Burstein*, 829 F. Supp. at 110.

4

**B.    Pernod Has Offered Insufficient Reasons for Bringing This Action in Delaware.**

In Delaware, "[c]ourts will not blindly prefer the plaintiff's choice of forum," which "must reflect the plaintiff's rational and legitimate concerns." *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991) (citation omitted). The sole rationale that Pernod offers for suing Bacardi in Delaware—as opposed to any other district in the country[1]—is that Bacardi is incorporated in Delaware. To be sure, place of incorporation is relevant to the transfer analysis. But standing as Pernod's sole rationale for choosing to litigate here—in a forum that is not its home turf and that has no stronger connection to the claims at issue than any other forum across the country—place of incorporation cannot carry the weight Pernod places on it. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 509 n.6 (D. Del. 1999) (observing that a defendant's state of incorporation is "certainly not dispositive" to a venue transfer inquiry and is not among the eleven factors identified by the Third Circuit in *Jumara* to guide courts in ruling on transfer requests).

The cases on which Pernod relies do not support its contention that Bacardi's Delaware charter is a sufficient basis, standing alone, to overcome the dominant interest of Florida in this suit.[2] Unlike in the cases it cites, Pernod here has chosen to bring suit

---

[1] Pernod suggests that Bacardi's statements in national news media somehow create a connection to Delaware. (D.I. 17, at 5-6, 16). Even if these statements constitute commercial advertising or are otherwise redressable under § 43(a), which is far from clear, this factor in no way distinguishes this District from any other forum across the country, including Pernod's home turf of New York.

[2] *Tuff Torq Corp. v. Hydro-Gear Ltd P'ship,.,* 882 F. Supp. 359, 363 (D. Del. 1994) (footnote omitted), is distinguishable because there, the plaintiff argued that Delaware was "the only jurisdiction where it could obtain jurisdiction over all the defendants." *Tse v. Ventana Med. Sys., Inc.*, No. 97-37-SLR, 1997 WL 811566, at *7 (D. Del. Nov. 25, 1997), is distinguishable because the court noted that "neither party ha[d] (continued...)

5

outside of its home turf, and Bacardi has demonstrated that Florida is the only state with any substantial ties to the underlying events and witnesses. The balance of convenience therefore weighs heavily in favor of transfer.

*Virgin Wireless, Inc.*, 201 F. Supp. 2d 294, is directly on point.[3] There, as here, the plaintiff had chosen not to file suit in its home turf and instead filed in Delaware where two of the defendants were incorporated. *Id.* at 297, 299-300. The court emphasized that "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred." *Id.* at 300 (citation omitted). The court concluded that "the center of operative facts in the action favor[ed] transfer to New York," where an infringement claim "arose out of plaintiffs' use of the [mark] by retail stores located in New York." *Id.* at 300.[4]

---

seriously addressed the convenience issue" and also because defendants sought to transfer to a forum with minimal ties to the action. *Paige Innovations Inc. v. Gen. Cable Indus., Inc.*, C.A. No. 94-767 (SLR), slip op. (D. Del. May 14, 1995), is distinguishable because the allegedly infringing product was sold in Delaware. (Attached hereto as Ex. 1).

[3] Pernod's attempts to distinguish trademark infringement cases such as *Virgin Wireless* are unavailing. False advertising claims under the Lanham Act, like infringement claims, focus on consumer deception, and the claims similarly arise where consumers are harmed. *See* J.W. Burns, *Confused Jurisprudence: False Advertising under the Lanham Act*, 79 Boston U. L. Rev. 807, 875 (1999) (footnote omitted) ("[D]eceptive advertising's chief vice is depriving the consumer of what she bargained for. To the extent rival sellers are harmed (through lost sales) by false advertising, their injury is always derivative of that incurred by purchasers. Quite simply, a rival is never harmed unless a buyer is duped first.").

[4] Pernod attempts to distinguish *Virgin Wireless* on the ground that the Court also relied on the existence of a related action pending in New York, yet the Court clearly held that, in addition to the public interests of judicial efficiency, "private interests of the parties favor[ed] a transfer" to New York. *Virgin Wireless, Inc.,* 201 F. Supp. at 301. Moreover, in this case, public interests also favor transfer. *See infra* pages 12-13.

6

**C.**    **Transfer is Appropriate Because the Claims Arose in South Florida.**

The Southern District of Florida is the sensible forum for this lawsuit, which arises out of Bacardi's sale of HAVANA CLUB rum in Florida. Pernod's claims arose under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The consumers who are alleged to be misled into purchasing HAVANA CLUB rum are located in Florida, and Florida has the strongest interest in resolving false-advertising claims surrounding locally sold rum. *See Arrow Comm. Labs*, 2005 WL 2786691, at *4 (transferring case to New York because, *inter alia*, "the subject matter of the lawsuit has significant local interest in New York"; "the District of Delaware has no connection to the subject matter of plaintiff's lawsuit, except that defendant is incorporated there"; and all of the defendant's relevant witnesses and documents were in New York).

Pernod does not dispute that Bacardi's HAVANA CLUB rum is not sold in Delaware; that neither party has any substantial business operations in Delaware; or that no third-party witnesses reside in Delaware; and Pernod cannot plausibly claim harm in Delaware from the events that gave rise to the suit. Pernod asserts that news articles in various national media publications create a basis for Pernod's choice of a Delaware forum, but the fact that such articles are distributed in Delaware in no way distinguishes Delaware from any other forum in the country and does not provide a basis for Pernod's decision to file suit here. On balance, the substantial connection of this suit to Florida weighs heavily in favor of transfer. *See Ricoh Co., Ltd v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (ordering transfer in patent case where, *inter alia*, no party maintained any facilities, personnel, or documents in Delaware; no acts of alleged infringement had taken place in Delaware; and no relevant third-party witnesses resided in Delaware).

7

**D.    The Convenience of the Third Party Witnesses Weighs Strongly in Favor of Transfer.**

Bacardi's opening brief showed that important non-party witnesses would more likely be able to participate if trial were held in the Southern District of Florida. (D.I. 7, at 5-7, 13-15). All of the identified third party witnesses are of advanced age, and the failing health of one very important witness, Ramón Arechabala, makes it difficult for him to travel to Delaware. (Arechabala Decl. ¶ 4-5, 7 (D.I. 8)). Pernod, which has put directly at issue Bacardi's rights to the HAVANA CLUB mark, cannot seriously question the relevance of the testimony recounting the forcible confiscation of the Arechabala family's rum business and associated assets in Cuba, nor the importance of hearing of these powerful and formative events from the mouths of the witnesses themselves at trial. *See Brown ex rel. FoxMeyer Drug Co. v. C.D. Smith Drug Co.*, No. Civ. A. 98-494-SLR, 1999 WL 709992, at *6 (D. Del. Aug. 18, 1999) (citations omitted) (noting that "[a]lthough defendants could present the deposition testimony of these witnesses at trial, . . . 'to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to the court, jury or most litigants'"). The Southern District of Florida is a more convenient forum than Delaware for all of these non-party witnesses, who will more likely be able to participate at trial if the case is transferred. The convenience and likely availability of third party witness therefore weigh heavily in favor of transfer. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (noting that third-party fact witnesses "who possess first-hand knowledge of the events giving rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience' analysis").

8

E.   **Pernod Mischaracterizes The Other Litigation Over Ownership Of the Havana Club Mark.**

Pernod claims that Bacardi's arguments in favor of transfer are somehow belied by its willingness to litigate ownership of the HAVANA CLUB trademark both in New York and in the District of Columbia.  (D.I. 17, at 2-3, 6, 11).  This argument is without merit.  Bacardi was a *defendant* in the New York action, which was styled *Havana Club Holding, S.A. et al. v. Galleon S.A. et al.*, 96 Civ. 9655 (SAS) (S.D.N.Y. Dec. 24, 1996).  Pernod's sister company, Havana Club Holding, S.A., and a Cuban company, Havana Club International, S.A., there brought unsuccessful claims, *inter alia*, that Bacardi's predecessor's use of the HAVANA CLUB mark infringed their rights in the mark and constituted a false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition.  *See Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999).   Transfer to the Southern District of Florida was unavailable under 28 U.S.C. § 1404(a) because the action could not have been brought there.[5]

After the court in *Havana Club Holding* held that Pernod's sister company had no rights to the HAVANA CLUB mark, it determined that Cubaexport, which had refused to appear, was an indispensable party without which it could not adjudicate the question of whether Bacardi held rights to the HAVANA CLUB mark.  *Havana Club Holding, S.A. v. Galleon S.A.*, 974 F. Supp. 302, 311-12 (S.D.N.Y. 1997).  Bacardi sought cancellation

---

[5]   Pernod's sister company and Havana Club International named Bacardi's distributors, Gallo Wine Distributors, Inc. and Premier Wine and Spirits, as defendants. Those companies were New York companies with principal places of business in New York, and jurisdiction and venue would not have been proper in Florida.   (*See* Declaration of Anne Shea Gaza in Support of Defendant's Motion To Transfer Venue to the Southern District of Florida, Ex. A ¶ 10 (October 16, 2006), filed contemporaneously herewith and referenced herein as "Gaza Decl.").

9

of Cubaexport's purported registration in the Patent and Trademark Office ("PTO"), and subsequently appealed the PTO Trademark Trial and Appeal Board's decision to the United States District Court for the District of Columbia, which was the only District in which venue would properly lie for such a suit against Cubaexport, a Cuban state-owned enterprise generally not permitted to conduct business in the United States. *See* 15 U.S.C. § 1071(b)(4); *see generally* Cuban Assets Control Regulations, 31 C.F.R. Part 515. Again, given that Bacardi had to seek relief in the PTO, in the first instance, and then to appeal to the District Court in the District of Columbia, Pernod's characterization of this history as demonstrating Bacardi's choice to litigate outside of Florida is misleading at best.

Pernod's attempt to avoid transfer by citing wholly unrelated infringement and contract actions brought by Bacardi in the Central District of California and the Southern District of New York is unavailing. The case styled *Bacardi & Company v. ESP Distrib. Co.*, 95 Civ. 4667 (MRP-SH) (C.D. Cal. July 14, 1995), was an infringement claim against small-scale sellers in Southern California of counterfeit "alcohol logo" cigarette lighters that displayed the BACARDI trademark. (*See* Gaza Decl. Ex B). As alleged by Bacardi in that suit, jurisdiction and venue were proper in the Central District of California—and only in the Central District of California—because the defendants all resided there, and the claims arose there. *Id.* Bacardi resolved that local dispute in the jurisdiction where it arose. For similar reasons, this action should be transferred to the Southern District of Florida where this dispute arose.[6]

---

[6] The case styled *Bacardi USA, Inc. v. M/V Cosco Norfolk*, Civ. No. 03-2996 (S.D.N.Y. Apr. 29, 2003), was a maritime claim for shortage or nondelivery against a (continued...)

## II.    THE INTERESTS OF JUSTICE ALSO FAVOR TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA.

Bacardi's opening brief showed also that the interests of justice favor transfer. *Jumara*, 55 F.3d at 879. Pernod cannot dispute that a weighing of the communities' respective relationships to the litigation strongly favors the Southern District of Florida, the community in which the underlying events have occurred and in which the vast majority of the witnesses and relevant documents are located. It is no response to characterize this as a national dispute between two of the country's leading marketers of spirits. Delaware's interest in this litigation is far outweighed by Florida's interest, because Bacardi's HAVANA CLUB rum is sold only in Florida, the consumers who are allegedly misled are located there, and any competitive harm to Pernod USA is occurring there.

Nor does Pernod dispute that the available statistics cited in Bacardi's opening brief demonstrate that the Southern District of Florida has a shorter median time from filing to disposition and from filing to trial (6.6 months and 16.7 months, respectively, in Florida, compared to 10.9 months and 23.5 months, respectively, in Delaware). (D.I. 7, at 15-16). Pernod's own authority holds that a shortened time to disposition is a factor in the transfer analysis under 28 U.S.C. § 1404(a). *See* (D.I. 17, at 17 (citing *Omnicom Group, Inc. v. Employers Reinsurance Corp.*, C.A. No. 01-839-GMS, 2002 U.S. Dist. LEXIS 1275, at *11 (D. Del. Jan. 28, 2002)).

Because the only factor supporting Pernod's choice of venue outside of its home turf is the fact that Bacardi is incorporated here, and because the applicable private and

shipping vessel and the issuer of the shipment's bill of lading seeking damages of less than $8,000. (*See* Gaza Decl. Ex. C). The case was resolved shortly after the complaint was filed. (*See* Gaza Decl. Ex. D).

public *Jumara* factors support transfer, Bacardi has met its burden of showing that the convenience of the parties and witnesses and the interests of justice strongly support transfer.

## CONCLUSION

For the reasons set forth above and in Bacardi's Opening Brief in Support of Its Motion To Transfer Venue, it is respectfully submitted that this action should be transferred to the Southern District of Florida, where the claims arose and where the defendant and the vast majority of the critical witnesses and relevant documents are located.

Of Counsel:

Eugene D. Gulland
Oscar M. Garibaldi
Emily Johnson Henn
Jenny C. Ellickson
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

William R. Golden, Jr.
Michelle M. Graham
Matthew Marcotte
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

Dated: October 16, 2006

William J. Wade (#704)
Anne Shea Gaza (#4093)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7718
Facsimile: (302) 498-7718
wade@rlf.com
gaza@rlf.com
*Attorneys for Defendant*
*Bacardi U.S.A., Inc.*

12

**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2006, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld
> Rodger D. Smith, II
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19801

I hereby certify that on October 16, 2006, I have sent by Federal Express the foregoing

document to the following non-registered participants:

> Herbert F. Schwartz
> Vincent N. Palladino
> Pablo D. Hendler
> ROPES & GRAY LLP
> 1251 Avenue of the Americas
> New York, NY 10020

> Anne Shea Gaza (#4093)
> Gaza@rlf.com
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAIGE INNOVATIONS INC.,        )
                               )
            Plaintiff,         )
                               )
      v.                       )   Civil Action No. 94-676-SLR
                               )
GENERAL CABLE INDUSTRIES, INC., )
                               )
            Defendant.         )

MEMORANDUM ORDER

On December 16, 1994, plaintiff Paige Innovations, Inc.
brought this action in the United States District Court for the
District of Delaware for damages and injunctive relief against
defendant General Cable Industries, Inc. for the wrongful
infringement of United States Design Patent No. 287,123 ("the
'123 patent"). The invention of this patent concerns an
extension cord product. Plaintiff claims that the allegedly
infringing product has been sold in Delaware. (D.I. 29 at 4)

Presently before the court is defendant's motion to
transfer the case from this District to the United States
District Court for the Eastern District of Kentucky pursuant to
28 U.S.C. § 1404. (D.I. 10) For the reasons discussed below,
the motion will be denied.

1

**BACKGROUND**

Plaintiff is a Canadian corporation with its principal place of business in King City, Ontario. (D.I. 29 at 4) Defendant is a Delaware corporation with its headquarters and principal place of business in Highland Heights, Kentucky, and offices in Rhode Island. (D.I. 11 at 2, 7; D.I. 12 at Exhibit B) According to defendant, the allegedly infringing product "was designed primarily at defendant's Highland Heights headquarters." In addition, "[defendant's] managers in charge of design, marketing, sales and manufacturing" of the allegedly infringing product, "and most of [defendant's] other employees" with relevant knowledge, "work at the Highland Heights headquarters." (Id.) One former employee "who was closely involved in the process of selecting the product design ... continues to live[,]" to "the best of [defendant's] knowledge," within the Eastern District of Kentucky. (Id. at 8) Further, "[a]ll of the relevant documents which [defendant] will be called upon to produce relating to the design, manufacture, marketing and sale of the [allegedly infringing product] are located in the Highland Heights headquarters. (Id. at 9)

**DISCUSSION**

Title 28, Section 1404(a) provides:

> For the convenience of the parties and the witnesses in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

2

Congress intended through Section 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988). "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court." <u>SportsMEDIA Technology Corp. v. Upchurch</u>, 839 F.Supp. 8, 9 (D.Del. 1993). The parties do not dispute that this action could have been brought in the Eastern District of Kentucky.

As a threshold matter, the parties disagree vigorously as to the proper weight to assign the plaintiff's choice of forum. As a general rule, "[b]ecause plaintiff['s] choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." <u>Bergman v. Brainin</u>, 512 F.Supp. 972, 973 (D.Del. 1981) (citing <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22,25 (3d Cir. 1970), <u>cert denied</u>, 401 U.S. 910 (1971))(emphasis added). Plaintiff's choice of forum is "paramount." <u>E.g.</u>, <u>Wesley-Jessen Corp. v. Pilkington Visioncare</u>, 157 F.R.D. 215, 216 (D.Del 1993).

Defendant argues that such deference to plaintiff's choice of forum applies only when plaintiff has chosen its "home turf" as the forum for the lawsuit. In fact, "[t]he deference to

3

the plaintiff's choice will still apply, even when not the
plaintiff's 'home turf,' when the plaintiff has chosen the forum
that is not its 'home turf' for some legitimate reason." Tuff-
Torq. Corp v. Hydro-Gear Ltd. Partnership, C.A. Nos. 93-414/416,
slip op. at 7 (D.Del. Jan. 3, 1994).[1]  In the present case,
plaintiff has a legitimate reason for its forum choice: the fact
that defendant is incorporated in Delaware.[2]  Therefore, even if
defendant is correct in its argument that Delaware is not
plaintiff's "home turf" for purposes of this action, deference to
plaintiff's choice will still apply.

---

1.  See also In re M.L.-Lee Acquisition Fund II, L.P., 816 F.Supp
973, 976 (D.Del. 1993)(emphasis added)("While transfer of a case
will generally be regarded as less inconvenient to a plaintiff if
the plaintiff has not chosen its "home turf" or a forum where the
alleged wrongful activity occurred, the plaintiff's choice of
forum is still of paramount consideration, and the burden remains
at all times on the defendant[] to show that the balance of
convenience and the interests of justice weigh strongly in favor
of transfer.")

2.  As this court has previously held:

> At the outset, the fact that [defendant]
> incorporated in Delaware should not be
> disregarded lightly.  By incorporating in
> Delaware, it can be assumed that [defendant]
> desired the benefits that it believed
> Delaware provides to chartered corporations.
> [Defendant] chose Delaware as its legal home
> and should not now complain that another
> [party] has decided to sue [defendant] in
> Delaware.

Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821
F.Supp. 962, 965 (D.Del 1993).

4

With respect to convenience of the parties and witnesses, defendant argues that this factor overwhelmingly favors transfer.  Specifically, defendant contends that (1) at least five of its employees with personal knowledge of the subject matter of this suit reside in Kentucky; (2) one critical non-party witness resides "to the best of [defendant's] knowledge" in Kentucky; (3) defendant's business as well as the personal lives of its employees will be disrupted if its employee witnesses must travel to Delaware for trial; (4) Kentucky is defendant's home; (5) Kentucky is no less, and arguably more, convenient than Delaware for plaintiff and its witnesses.  Plaintiff counters that it intends to call at least one witness resident in Ontario, as well as expert witnesses who will "most likely" reside in the Washington, D.C. area.  (D.I. 29 at 15) According to plaintiff, it will be more convenient and less expensive for these witnesses to travel to its chosen forum than to Kentucky.

Even if the Eastern District of Kentucky were the more convenient trial forum for both the parties and the non-party witnesses, this would not be sufficient to compel a transfer. This court in Wesley-Jessen analyzed an analogous situation in which a defendant made a similar showing, and concluded that transfer was inappropriate for three reasons.  First, the court noted that, being a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect.  157 F.R.D.

5

at 218. Defendant in the case at bar is similarly situated with
offices in Kentucky and Rhode Island. (D.I. 12 at Exhibit B)
The second factor noted by the court in Wesley-Jessen is the
incorporation of defendant in Delaware. Here again, the court
outlined the heightened burden on such a business. "Absent some
showing of a unique or unexpected burden, these corporations
should not be successful in arguing that litigation in their
state of incorporation is inconvenient." Id. Finally, the court
noted the somewhat archaic nature of the "convenience of the
parties" factor in determining a motion to transfer.

> A third reason for denying the motion to
> transfer is that technological advances have
> substantially reduced the burden of having to
> litigate in a distant forum....These
> technologies have shortened the time it takes
> to transfer information, reduced the bulk or
> size of documents or things on which
> information is recorded and can be
> transferred and have lowered the cost of
> moving that information from one place to
> another.

Id. The court finds that defendant has not demonstrated that
litigation in Delaware imposes on it a unique or unexpected
burden.

The final factor to be addressed by the court is the
interest of justice. In analyzing this factor the court looks to
judicial resources, cost to the parties, access to proof, and the
availability of compulsory process. Critikon, 821 F.Supp. at
966. With respect to judicial resources, in its opening brief,
defendant argues, based on 1993 median time-to-trial statistics,
that the Eastern District of Kentucky is likely to hear the case

6

three months before the plaintiff's chosen forum. This case has been set for trial to begin on March 4, 1996. The court is not persuaded, based on the 1993 statistics, that the Eastern District of Kentucky would set this case for trial at any earlier date. The efficient use of judicial resources does not require the transfer of this case.

Addressing compulsory process, defendant has also argued that one third party witness, a former employee of defendant, is not within the subpoena power of this court, but is "to the best of [defendant's] knowledge within the subpoena power of the Eastern District of Kentucky." The court addressed an analogous contention in Critikon, 821 F.Supp. at 967. Here, as in that case, defendant

> has not represented to the [c]ourt that [the third party witness] would be unwilling to testify at trial voluntarily. Because [the witness] is a former employee of [defendant], ... the [c]ourt must assume that he would be willing to testify absent a subpoena.

Thus, even if defendant were to prove that the third party witness resided in Kentucky, this factor would not weigh strongly in its favor.[3]

Concerning the cost to the parties, defendant argues that the net cost of litigating in Delaware would "substantially" exceed that of litigating in Kentucky. While it

---

3. Defendant also argues that the court should transfer this action because"[i]t appears that" many of its current employees are not "subject to subpoena by this Court." (D.I. 11 at 17) These current employees, of course, are under defendant's control, and thus their susceptibility to subpoena is not at issue.

7

appears true that defendant's costs would be less in Kentucky, it
is not at all clear that plaintiff's costs would, as defendant
contends, remain essentially the same. (D.I. 37 at 3)  Nor is
the court persuaded that defendant's costs would be made
"substantially greater" by the trial of this action is Delaware.
Trial is scheduled to begin on March 4, 1996 and last for five
days. (D.I. 20)  The extra expenses of which defendant complains
thus appertain only to a five-day period.  Further, some of
defendant's witnesses will be coming to Delaware from places
other than Kentucky -- e.g., Rhode Island -- at a cost presumably
less than that were they required to attend trial in Kentucky.
Defendant also argues that its costs will increase due to the
necessity of retaining local counsel. (D.I. 11 at 15)  Defendant
does not attempt to quantify this increase, however, and the
court thus has no basis for evaluating it.  In sum, the court is
not persuaded that the net cost of litigating in Delaware will be
"substantiality greater" than litigating in Kentucky.  Thus, this
factor does not decisively weigh in defendant's favor on the
present motion.

   With respect to access to proof, defendant contends
that transfer is appropriate because "[a]lmost all of the
relevant documents, including all of [defendant's] relevant
documents, are located at [defendant's] Highland Heights,
Kentucky headquarters...." (D.I. 11 at 14)  Plaintiff counters
that discovery will take place in various jurisdictions,
including Canada, Delaware, Ohio, Kentucky, Pennsylvania, Rhode

8

Island, Washington, D.C. and California, and that, in any event,
all necessary documents will be photocopied and readily available
at trial wherever it should occur.  (D.I. 29 at 16-17)

> As this court held in Critikon:
>
> > The location of documents, in the context of
> > access to proof, in a document-intensive case
> > such as this can be misleading.  No matter
> > where the trial is held, [defendant's] ...
> > counsel and [plaintiff's] ... counsel will be
> > required to travel to [various places] to
> > select and produce the requested discovery.
> > Regardless of where trial is held, the
> > documents will be copied and mailed to the
> > offices of counsel and subsequently
> > transported to trial.

821 F.Supp. at 966-67.  For this reason, the court finds that
defendant has not established that this factor compels the
transfer of this action.

Based on the record as it presently stands, defendant
has failed to demonstrate that the interests of justice dictate
transferring this action.


**CONCLUSION**

Therefore, at Wilmington, this 19th day of May, 1995, IT
IS ORDERED that defendant's motion to transfer this action (D.I.
10) is denied.


United States District Judge