IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PERNOD RICARD USA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>BACARDI U.S.A., INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 06-505 (SLR)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF ANNE SHEA GAZA
## IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE TO THE
## <u>SOUTHERN DISTRICT OF FLORIDA</u>

I, Anne Shea Gaza, of full age, hereby declare as follows:

1. I am an associate at Richards, Layton & Finger, P.A., which represents

Bacardi U.S.A., Inc. ("Bacardi") in this action. I make this Supplemental Declaration in support

of Defendants' Motion to Transfer Venue to the Southern District of Florida.

2. Attached hereto as Exhibit A is a true and correct copy of the First Amended

Complaint For Injunctive Relief filed on September 22, 1997, in *Havana Club Holding, S.A. et*

*al. v. Galleon S.A. et al.*, 96 Civ. 9655 (SAS) (S.D.N.Y. Dec. 24, 1996).

3. Attached hereto as Exhibit B is a true and correct copy of the Complaint filed

on July 14, 1995 in *Bacardi & Company v. ESP Distrib. Co.*, 95 Civ. 4667 (MRP-SH) (C.D. Cal.

July 14, 1995).

4. Attached hereto as Exhibit C is a true and correct copy of the Complaint in

*Bacardi USA, Inc. v. M/V Cosco Norfolk*, Civ. No. 03-2996 (S.D.N.Y. Apr. 29, 2003).

5.  Attached hereto as Exhibit D is a true and correct copy of the Conditional

Order of Voluntary Dismissal filed on July 3, 2003 in *Bacardi USA, Inc. v. M/V Cosco Norfolk*,

Civ. No. 03-2996 (S.D.N.Y. Apr. 29, 2003).

I hereby declare under penalty of perjury that all of the statements made by me herein are

true and correct.

_Anne Shea Gaza_
ANNE SHEA GAZA (#4093)

Dated:  October 16, 2006

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2006, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld
> Rodger D. Smith, II
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19801

I hereby certify that on October 16, 2006, I have sent by Federal Express the foregoing

document to the following non-registered participants:

> Herbert F. Schwartz
> Vincent N. Palladino
> Pablo D. Hendler
> ROPES & GRAY LLP
> 1251 Avenue of the Americas
> New York, NY 10020

> *Anne Shea Gaza*
> Anne Shea Gaza (#4093)
> Gaza@rlf.com
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700

# EXHIBIT A

A  374

*54.*

*lc · 9/26/97*

*2/24/98.*

MICHAEL KRINSKY (MK 4503)
RABINOWITZ, BOUDIN, STANDARD,
 KRINSKY & LIEBERMAN, P.C.
740 Broadway - Fifth Floor
New York, New York 10003
(212) 254-1111

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────x

HAVANA CLUB HOLDING, S.A. and          :
HAVANA CLUB INTERNATIONAL, S.A.,
                                       :
            Plaintiffs,
                                       :
     - against -
                                       :
GALLEON S.A.,/BACARDI-MARTINI U.S.A., INC.,      96 Civ. 9655 (SAS)
GALLO WINE DISTRIBUTORS, INC.,         :
G.W.D. HOLDINGS, INC.
and PREMIER WINE AND SPIRITS,          :

                                       :
            Defendants.
───────────────────────────────────x

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

        Plaintiffs by their undersigned counsel and for their First Amended Complaint against

defendants aver as follows:

        1.      This is an action for injunctive relief against defendants' use of the trademark

"Havana Club" in connection with their importation, distribution and sale of a rum produced in the

Commonwealth of the Bahamas.

# A 375

## JURISDICTION AND VENUE

2.    This Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121, which provides that the district courts of the United States shall have original jurisdiction over actions arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and 28 U.S.C. § 1331, which confers jurisdiction over actions arising under the laws or treaties of the United States.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391. Galleon S.A. is an alien that may be sued in any district, 28 U.S.C. § 1391(d); and Bacardi-Martini U.S.A., Inc., Gallo Wine Distributors, Inc., G.W.D. Holding Co., Inc. and Premier Wines & Spirits Inc. are all residents of this district within the meaning of 28 U.S.C. §§ 1391(b) and (c). In addition, venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to plaintiffs' claims occurred here.

## PARTIES

4.    Plaintiff Havana Club Holding, S.A. is a corporation organized under the laws of Luxembourg.

5.    Plaintiff Havana Club International, S.A. is a company organized under the laws of the Republic of Cuba, and is established and domiciled in Cuba with its place of business in Havana, Cuba.

6.    Defendant Galleon S.A. is a company organized under the laws of the Commonwealth of the Bahamas, with its principal place of business at 49 Collins Avenue, Nassau, Commonwealth of the Bahamas.

7.    Defendant Bacardi-Martini U.S.A., Inc. is a corporation organized under the laws of the State of Delaware. It is authorized to do business in the State of New York pursuant to

2

# A 376

New York's Business Corporation Law and has an address and registered agent for service of process within the Southern District of New York.

8.    Upon information and belief, there is common ownership and control of defendant Galleon S.A. and defendant Bacardi-Martini U.S.A., Inc.

9.    Bacardi-Martini U.S.A., Inc. does business under the name Exclusive Import Company.

10.    Defendant Gallo Wine Distributors, Inc. and defendant G.W.D. Holdings, Inc. are corporations organized under the laws of the State of New York and maintain a principal place of business in the State of New York. Their principal address is in Long Island City, New York and an additional address at which they do business is in Syosset, New York. Defendants Gallo Wine Distributors, Inc. and G.W.D. Holdings, Inc. are either related companies or the same business entity operating under two different designations.

11.    Defendant Premier Wine and Spirits Inc. is a d.b.a. of Gallo Wine Distributors, Inc. or G.W.D. Holdings, Inc. and has a business address in Syosset, New York.

### AS AND FOR A FIRST CAUSE OF ACTION

12.    Plaintiff Havana Club International, S.A. is in the business of exporting worldwide a Cuban-origin rum, HAVANA CLUB, from Cuba and of selling said rum in Cuba. It does so under license from plaintiff Havana Club Holding, S.A.

13.    Plaintiff Havana Club International, S.A. exports the Cuban-origin HAVANA CLUB rum to more than twenty countries, including Spain, Germany, Italy, France, Denmark, Austria, Sweden, Finland, Hungary, the United Kingdom, Mexico, Bolivia, Peru, Chile, Argentina,

3

A 377

Panama, Guatemala, Costa Rica and Canada.    Its principal export markets are Western Europe, Canada and Mexico.

14.    Plaintiff Havana Club International, S.A. has exported Cuban-origin HAVANA CLUB rum from Cuba since 1993.

15.    The aforesaid Cuban-origin HAVANA CLUB rum is the principal Cuban-origin rum exported from Cuba and is Cuba's premier rum.  Said rum has been sold in, and exported from, Cuba since 1973.

16.    Plaintiff Havana Club International, S.A. intends to export  the Cuban-origin HAVANA CLUB rum to the United States as soon as it legally possible to do so under United States law.  At present, the United States Treasury Department's Cuban Assets Control Regulations, 31 C.F.R. Part 515, prohibit the importation of Cuban-origin products into the United States except as accompanying baggage of returning United States visitors to Cuba.

17.    Cuban-origin HAVANA CLUB rum sold in Cuba by plaintiff Havana Club International, S.A. and its domestic distributor is imported into the United States as accompanying baggage by returning United States visitors to Cuba.

18.    At the end of October 1996, plaintiffs learned that bottles of rum bearing the name "Havana Club" produced in the Commonwealth of the Bahamas were being imported for sale in the United States.

19.    Said rum is produced by defendant Galleon S.A. in the Bahamas.  It is imported into the United States exclusively by defendant Bacardi-Martini U.S.A., Inc.  Bacardi-Martini U.S.A., Inc. distributes the Bahamian "Havana Club" rum in the United States through wholesalers.  In New York, Bacardi-Martini's wholesaler is a business entity owned and operated by

4

# A  378

defendants Gallo Wine Distributors, Inc. and G.W.D. Holdings, Inc. under the d.b.a. of defendant

Premier Wine and Spirits (hereinafter collectively "Premier Wine and Spirits").

       20.     Premier Wine and Spirits has listed as available for purchase by retailers and

wholesalers the Bahamian "Havana Club" rum in *Beverage Media, Metro New York*. This trade

magazine is published in New York City and is the principal trade magazine in which liquor and wine

wholesalers and distributors in the New York metropolitan area list brands and prices and provide

ordering information for the trade.

       21.     Through this and other mechanisms, the Bahamian "Havana Club" rum has

been and will be offered for sale and sold to consumers in New York.

       22.     A true and accurate copy of photographs of the front and back of two bottles

of the Bahamian "Havana Club" rum are attached hereto as Exhibit A and incorporated herein by

reference.

       23.     The words "Havana Club" are the dominant feature of both the front and back

labels of the Bahamian "Havana Club" rum.

       24.     On both the front and back labels, the words "Havana Club" are placed in the

top half of the label. The words occupy one-quarter of the length of the front label, and one-fifth of

the length of the back label.

       25.     On both the front and back labels, the words "Havana Club" are four times

larger than any other wording on the label.

       26.     Also appearing on the front label of bottles of Bahamian "Havana Club" rum

is a sketch of the Malecon, the famous seafront boulevard in Havana, Cuba.

# A  379

27.    The neck label, which also appears on the front of the bottles, emphasizes that the rum is "imported" and states that it is "Caribbean Rum."

28.    Cuba is an island in the Caribbean Sea, but the Commonwealth of the Bahamas is not in the Caribbean Sea.

29.    The only notification that the rum is produced in the Bahamas is on the back labels of the bottles. There the words "Product of Bahamas" appear positioned below the words "Havana Club," in lettering only one-seventh the size of the "Havana Club" lettering. The words "Product of Bahamas" are printed in a color similar to that of the background of each label, whereas the words "Havana Club" are printed in a color which strongly contrasts with and stands out from the background.

30.    The front label and the neck label of the bottles of Bahamian "Havana Club" rum do not indicate that the rum is produced or originates in the Bahamas. Nor do these labels contain any indication of origin other than that indicated by the dominant use of the name "Havana Club," the sketch of the Malecon, and the use of the word "Caribbean."

31.    Bottles of liquor are typically displayed to consumers in retail liquor stores with only the front of the bottle displayed.

32.    Defendants' use and threatened use of the "Havana Club" trademark and of the aforesaid label constitutes a false designation of origin, false or misleading description of fact, and false or misleading representation of fact.

33.    "Havana" is a geographic location. It is the capital and principal city of Cuba, is a province in Cuba, and is the Cuban province in which Cuba's capital is located.

6

A   380

34.    Defendants' use, and threatened use, of the "Havana Club" trademark and of the aforesaid label misrepresents the geographic origin of defendants' rum as being Cuba.

35.    Defendants' use of the "Havana Club" mark and of the aforesaid label on their Bahamian rum is likely to have the effect of causing consumers to be confused, mistaken or deceived as to the geographic origin of defendants' rum.

36.    Cuba is a geographic location for which rum is a significant product.  United States consumers are likely to associate rum with Cuba.  Cuba is known to United States consumers as a geographic location that is the source of rum.  There is a goods/place association between rum and Cuba.

37.    By reason of defendants' use of the "Havana Club" trademark and of the aforesaid label, a substantial number of United States consumers will purchase defendants' rum because they falsely believe it to be of Cuban origin.

38.    United States consumers are injured and will continue to be injured by defendants' use of the "Havana Club" trademark and the aforesaid label on their rum.

39.    Plaintiffs' Cuban-origin HAVANA CLUB rum is marketed in substantial part on the basis of its being a Cuban-origin rum and its appeal to United States consumers is, and is likely to be, in substantial part predicated on its being a Cuban-origin rum.

40.    Defendants' use of the "Havana Club" trademark and of the aforesaid label will impede plaintiffs' export of Cuban-origin HAVANA CLUB rum to the United States when United States law permits the importation of Cuban-origin products.

41.    Defendants' use of the "Havana Club" trademark and of the aforesaid label will impede plaintiffs' current and future sales of their HAVANA CLUB rum to United States visitors to

7

# A  381

Cuba for importation into the United States as accompanying baggage upon their return and for consumption in Cuba.

42.    Plaintiffs are likely to be damaged, and are injured and will be injured, by defendants' use of the "Havana Club" trademark and of the aforesaid label on their Bahamian rum.

43.    The injuries to United States consumers and to plaintiffs caused by defendants' use of the "Havana Club" mark and of the aforesaid label on Bahamian rum cannot be calculated or compensated in a future award of money damages. These injuries are irreparable.

44.    Plaintiffs have no adequate remedy at law.

45.    The aforesaid actions of the defendants are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.    Under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), plaintiffs are entitled to an injunction against defendants' use of the "Havana Club" trademark and of the aforesaid label on their Bahamian rum.

47.    Under Section 43(b) of the Lanham Act, 15 U.S.C. 1125(b), defendant's rum must be refused importation into the United States and may not be admitted to entry to any customhouse of the United States so long as it bears the "Havana Club" trademark and the aforesaid label.

48.    Defendants Galleon S.A. and Bacardi-Martini U.S.A., Inc. deliberately selected and used, and are using, the "Havana Club" trademark and the aforesaid label with the intention of:

a.    causing consumers to be confused, mistaken or deceived as to the geographic origin of defendants' rum; and

8

A  382

b.      impeding plaintiff Havana Club International, S.A.'s export of the

Cuban-origin HAVANA CLUB rum to the United States when it becomes legally possible for Cuban-

origin products to be imported into the United States.

### AS AND FOR A SECOND CAUSE OF ACTION

49.      Plaintiffs repeat and reallege each and every allegation set forth in paragraphs

1-31, 33, 39-48 of this Amended Complaint as if fully set forth herein.

50.      The trademark "Havana Club," when used on or in connection with

defendants' Bahamian rum, identifies a place other than the origin of said rum.

51.      Upon information and belief, the defendants did not use the "Havana Club"

trademark or the aforesaid label for the sale of rum in interstate commerce prior to January 1, 1996.

Upon information and belief, any use by the defendants of the "Havana Club" trademark or the

aforesaid label for the sale of rum in interstate commerce prior to January 1, 1996 was token use for

the purpose of establishing rights to said trademark rather than *bona fide* use for commercial

purposes.

52.      Defendants' use of the "Havana Club" trademark and of the aforesaid label are

*per se* violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### AS AND FOR A THIRD CAUSE OF ACTION

53.      Plaintiffs repeat and reallege each and every allegation set forth in paragraphs

1-31, 40-44 of this Amended Complaint as if fully set forth herein.

54.      The names "Havana Club Holding, S.A." and "Havana Club International,

S.A." are used by plaintiffs in Cuba and internationally to denote their trade in rum and said names

9

A  383

are legally adopted and used by them in accordance with the provisions of the respective national laws. Plaintiffs legally adopted and use said names in Cuba for their HAVANA CLUB rum business.

55.    Since 1973, worldwide sales of the Cuban-origin HAVANA CLUB rum have amounted to more than 130 million bottles and bulk sales of millions of liters.

56.    Since 1977, a substantial number of bottles of the Cuban-origin HAVANA CLUB rum have been imported into the United States from Cuba as accompanying baggage of United States visitors returning from Cuba. Over 400,000 such bottles have been imported into the United States.

57.    There have been repeated, extensive, continuous and widespread mention and discussion of the Cuban-origin HAVANA CLUB rum in United States newspapers and periodicals since 1973, both in stories dealing generally with Cuba and in stories about rum. In addition, similar articles mentioning HAVANA CLUB rum have appeared frequently in international media distributed in the United States.

58.    "Havana Club", the essential part of plaintiffs' commercial names, is widely recognized by United States consumers to symbolize the following:

a.    A rum of Cuban origin;

b.    A rum of high quality;

c.    The distinctive character and quality of the HAVANA CLUB rum sold by Havana Club International, S.A,. and previously sold by the Cuban enterprise Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport") ; and

d.    The source of the Cuban-origin HAVANA CLUB rum.

10

## A  384

59.    This recognition has been established in a number of ways, including the following:

a.    Sales of HAVANA CLUB rum to United States visitors to Cuba over the course of twenty-four years, both for their consumption in Cuba and, since 1977, for importation into the United States as accompanying baggage upon their return;

b.    Exposure of tourists and visitors to Cuba, including visitors from the United States, to HAVANA CLUB rum through promotional campaigns, billboards and advertising in Cuba over the course of twenty-four years.  There have been approximately 600,000 visits by United States persons to Cuba since 1973 and most of these visitors have been exposed to HAVANA CLUB's promotion;

c.    Since 1971, the emigration to the United States from Cuba of a substantial number of persons, numbering approximately 500,000, many of whom became familiar with the Cuban-origin HAVANA CLUB rum from its sale and promotion within Cuba prior to their emigration;

d.    Repeated, extensive, continuous and widespread mention and discussion of HAVANA CLUB rum in United States newspapers and periodicals since 1973, both in stories dealing generally with Cuba and in stories about rum.  In addition, similar articles mentioning HAVANA CLUB rum have appeared frequently in international media distributed in the United States; and

e.    The prominent mention of HAVANA CLUB rum in a major United States film, *The Firm*, released by Paramount Pictures in 1993 and viewed by well over 20 million United States consumers.

11

# A  385

60.    Over the last five years alone, the United States circulation of periodicals carrying mentions of HAVANA CLUB rum has been well over 10 million.  Many more millions of United States readers have read about HAVANA CLUB rum since 1973.

61.    The distinguishing element of the ""Havana Club" trademark used by defendants for rum in the United States is an essential part of plaintiffs' commercial names.

62.    Plaintiffs' aforesaid commercial names were legally adopted and used by them in Cuba for rum prior to defendant Galleon, S.A.'s application to register the "Havana Club" trademark in the United States for rum and prior to defendants' use of the "Havana Club" trademark in the United States for rum.

63.    Defendants' use of the "Havana Club" trademark in the United States for rum will lead to error or confusion in the mind of the United States consumer with respect to plaintiffs' aforesaid commercial names.

64.    The trademark "Havana Club" used by defendants for rum is identical with or deceptively similar to plaintiffs' commercial names.

65.    Defendants Galleon S.A. and Bacardi-Martini U.S.A., Inc. deliberately selected and used and are using the "Havana Club" trademark with the intention of:

a.    Taking the benefit of the United States consumers' knowledge of, the favorable reputation of, and the goodwill of, the HAVANA CLUB rum business of plaintiffs and their predecessors;

b.    Impeding plaintiff Havana Club International, S.A.'s export of the Cuban-origin HAVANA CLUB rum to the United States when it becomes legally possible for Cuban-origin products to be imported into the United States; and

12

## A   386

    c.  Causing and facilitating their Bahamian "Havana Club" rum to be palmed off as, or believed by consumers to be, made authorized, sponsored, endorsed by or otherwise connected with plaintiffs or their Cuban predecessors.

    66.  Defendants' use of "Havana Club" as a trademark for rum is in violation of Chapter III of the General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907. Chapter III of said treaty is self-executing.  Additionally, Sections 44(g) and 44(h) of the Lanham Act, 15 U.S.C. §1126(g) and (h), incorporate and implement Chapter III in all respects relevant to this cause of action.

    67.  Defendants' use of "Havana Club" as a trademark for rum is in violation of Sections 44(g) and 44(h) of the Lanham Act, 15 U.S.C. §1126(g) and (h).

    68.  Defendants are barred from using HAVANA CLUB as a trademark for rum in the United States.

    WHEREFORE, plaintiffs pray that this Court enter a judgment:

    1.  For a preliminary and permanent injunction restraining defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with defendants or with any of the foregoing, from using the words "Havana Club" on rum products or as part of any trademark, service mark, brand name, trade name or other business or commercial designation, in connection with the sale, offering for sale, distribution, advertising or promotion of alcoholic beverages, or otherwise in the alcoholic beverage business;

    2.  For an injunction directing defendants to destroy all signs, prints, packages, wrappers, containers, advertisements, promotional material, business forms, etc. in the possession or

# A  387

under the control of the defendants, which display the words "Havana Club," and any  means of

manufacturing or making the same;

      3.     Awarding plaintiffs' their attorneys fees and the cost of this action; and

      4.     Granting such other and further relief as this Court may deem necessary and

proper under the circumstances.

Dated: New York, New York
      September 22, 1997

                      RABINOWITZ, BOUDIN, STANDARD,
                      KRINSKY & LIEBERMAN, P.C.

                      By: _____
                      Michael Krinsky, Esq.

                      Attorneys for Plaintiffs
                      Havana Club Holdings, S.A. and
                      Havana Rum & Liquors, S.A.

EXHIBIT B

CYNTHIA S. PAPSDORF (Bar No. 152794)
KELLEY DRYE & WARREN
515 South Flower Street, Suite 1100
Los Angeles, California 90071
(213) 689-1300

Attorneys for Plaintiffs
BACARDI & COMPANY, LTD. and
BACARDI-MARTINI U.S.A. INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| BACARDI & COMPANY, LTD., and BACARDI-MARTINI U.S.A. INC., | ) ) ) | Case No. |
|---|---|---|
| Plaintiffs, | ) ) ) | COMPLAINT FOR: |
| vs. | ) ) | 1. LANHAM ACT VIOLATION- TRADEMARK INFRINGEMENT; |
| ESP DISTRIBUTING COMPANY, INC., NATIONWIDE DISTRIBUTING CO., INC., STEVEN G. BILLOTA, ERIC LAY and PATRICK BIRD, | ) ) ) ) | 2. LANHAM ACT VIOLATION- FALSE DESIGNATION; 3. CAL. BUS. & PROF. CODE § 17200 - UNFAIR COMPETITION; AND |
| Defendants. | ) ) ) ) ) | 4. CAL. BUS. & PROF. CODE §§ 17200 AND 17500 - FALSE ADVERTISEMENT AND DECEPTIVE ACTS AND PRACTICES |

Plaintiffs BACARDI & COMPANY LTD. and BACARDI-MARTINI

U.S.A., INC., by their undersigned attorneys, Kelley Drye &

Warren, for their complaint against the defendants allege as

follows:

THE PARTIES

1.    Plaintiff Bacardi & Company, Ltd. is a corporation

organized under the laws of Liechtenstein, having its principal

place of business at Millar Road, Nassau, the Bahamas

(hereinafter "Bacardi & Co").

1       2.    Plaintiff Bacardi-Martini U.S.A., Inc. is a
2   corporation organized under the laws of Delaware, having its
3   principal place of business at Biscayne Boulevard, Miami, Florida
4   (hereinafter "Bacardi USA").

5       3.    Upon information and belief, defendant ESP
6   Distributing Company, Inc. d/b/a Worldwide Distributing Co., Inc.
7   (hereinafter collectively "ESP"), is a corporation organized
8   earlier this year and existing under the laws of the State of
9   California, with its principal place of business located at 7750
10  Gloria Avenue, Van Nuys, California, and with a postal drop at
11  9800-D Topanga Canyon Boulevard, Suite 241, Chatsworth, CA 91311.
12  The predominant part of the corporate title "ESP" is an acronym
13  composed of the first initials/of the first names of the three
14  individual defendants.

15      4.    Upon information and belief, defendant Nationwide
16  Distributing Co., Inc. ("Nationwide") is an entity organized and
17  formerly existing under the laws of the State of Arizona, with
18  its principal place of business located at 8340 E. Raintree Dr.,
19  Scottsdale, Arizona.  Nationwide is the predecessor of defendant
20  ESP and certain of its assets, including promotional materials
21  and customer lists were transferred to defendant ESP.

22      5.    Upon information and belief, defendant Eric Lay
23  ("Lay") is an individual with his residence or place of business
24  in Van Nuys, California who, together with Billota and defendant
25  Patrick Bird, is a part owner and has and exercises effective
26  control over defendant ESP.  Lay actively participated in the
27  acts of infringement and unfair competition alleged herein and
28

-2-

1 performed acts in the Central District of California in

2 connection therewith as averred more fully below.

3        6.    Upon information and belief, defendant Steven G.

4 Billota ("Billota") is an with his residence at 19824 Winged Foot

5 Way, Northridge, California.  Billota is president of defendant

6 ESP as well as a part owner and director who, among other things,

7 is responsible for the financial, marketing, and other day-to-day

8 business decisions for ESP which acts under his direction and

9 control.  Billota actively participated in the acts of

10 infringement and unfair competition alleged herein and performed

11 acts in the Central District of California in connection

12 therewith as averred more fully below.

13        7.    Upon information and belief, defendant Patrick

14 Bird is an individual with his residence at 10161 Farralane

15 Avenue, Chatsworth, Calif., and his place of business in Van

16 Nuys, California who, together with defendants Billota and Lay,

17 is a part owner of defendant ESP and has and exercises effective

18 control over defendant ESP.  Bird acts as national sales manager

19 of ESP and has actively participated in the acts of infringement

20 and unfair competition alleged herein and performed acts in the

21 Central District of California in connection therewith as averred

22 more fully below.

23                    JURISDICTION AND VENUE

24        8.    This is a civil action for infringement of

25 federally registered trademarks, for false descriptions and false

26 designations of origin in violation of 15 U.S.C. §1125(a), and

27 for substantial and related claims for unfair competition at

28 common law and under the laws of the State of California wherein

                              -3-

1 the amount in controversy, exclusive of interests and costs,

2 exceeds the sum or value of Fifty Thousand ($50,000) Dollars.

3 Jurisdiction of this Court arises:

4       (a)  over the first and second counts herein asserted

5 under the Trademark Laws of the United States, 15 U.S.C. §1051,

6 et seq., as amended, pursuant to 15 U.S.C. §1121 and 28 U.S.C.

7 §1338(a); and

8       (b)  over the third and fourth counts herein asserted

9 pursuant to 28 U.S.C. §1338(b) and the doctrine of pendent

10 jurisdiction, since these claims arising under the laws of the

11 State of California and other states relating to trademarks and

12 unfair competition are joined with substantial and related claims

13 for violation of the trademark laws of the United States.

14       9.  Venue is properly laid in this Court pursuant to

15 28 U.S.C. §1391(b) and (c) as the defendants all reside, may be

16 found, or transact affairs in this district, and the claims

17 alleged arose here.

18 FACTS COMMON TO ALL CAUSES OF ACTION

19       10.  Since long prior to the acts of defendants

20 complained of hereinafter, Bacardi and its predecessors have long

21 been engaged, among other things, in the manufacture and sale of

22 rum under a trade name or trading style prominently featuring the

23 word BACARDI.

24       11.  A predecessor of Bacardi & Co, in or about 1862,

25 adopted and began to use the word BACARDI as a trademark for rum.

26       12.  The BACARDI trademark, since its original adoption

27 and first use, has been continuously used by Bacardi & Co and its

28 predecessors to identify their rum and to distinguish it from

-4-

1  goods marketed and sold by others and has, among other things,

2  been prominently displayed upon labels affixed to bottles of

3  plaintiffs' said rum, the packaging thereof, and displays

4  associated therewith.

5      13.  The BACARDI trademark has, for many years, been

6  used in the United States by Bacardi & Co and its predecessors to

7  identify and distinguish rum produced in San Juan, Puerto Rico by

8  Bacardi Corporation and distributed throughout the continental

9  United States, including the State of California, by Bacardi USA

10  pursuant to licenses from Bacardi & Co and its predecessors.

11  Bacardi USA and Bacardi Corporation are related companies of

12  Bacardi within the meaning of the Lanham Act and their use inures

13  to the benefit of Bacardi & Co. (Bacardi & Co and Bacardi USA

14  will be referred to collectively hereinafter as "Bacardi").

15      14.  The trademark BACARDI was duly registered on March

16  6, 1934 in the United States Patent and Trademark Office by a

17  predecessor of Bacardi as a trademark for rum under Registration

18  No. 310,654.  A copy of this certificate of registration is

19  attached as Exhibit A.  A predecessor of Bacardi & Co also

20  registered other label trademarks prominently featuring the word

21  "Bacardi" for rum in said office including, among others,

22  Registration No. 331,459, dated January 7, 1936 (hereinafter

23  "BACARDI Label Trademark").  A copy of this certificate of

24  registration is attached as Exhibit B.  The aforesaid trademarks

25  and registrations and related goodwill were duly assigned to

26  Bacardi & Co and are valid and subsisting, and Bacardi & Co is

27  still the owner of said trademarks and said registrations and of

28

-5-

the goodwill and reputation represented and symbolized by said
marks.

15.   Rum bearing the name and trademark BACARDI has
been widely and extensively sold, advertised, and promoted in the
United States and throughout the world.  BACARDI rum is now and
for several years has been the largest selling brand of distilled
spirits in the United States.

16.   Millions of dollars have been spent in the United
States upon the promotion and advertising of rum under the
BACARDI name and mark, and total sales of BACARDI rum in the
United States over the years are well in excess of 100 million
dollars.

17.   Since said original adoption and use of BACARDI as
a trade name and mark for rum, the use of said mark BACARDI has
been extended to other goods, including articles of clothing and
non-alcoholic fruit cocktail mixes.  BACARDI was registered by
Bacardi & Co as a trademark for "Clothing -- namely, Shirts" in
Class 25 (U.S.C1.39) in the United States Patent and Trademark
Office under Registration No. 1,241,247 on June 7, 1983.  The
BACARDI name and mark has also been displayed under the
supervision and control of Bacardi & Co on items such as
cigarette lighters, watches, and jewelry which have been
distributed in the United States in connection with the promotion
and sale of BACARDI products.

18.   Notice of each of the aforesaid registrations has
been given by Bacardi in accordance with the provision of 15
U.S.C. §1111.

-6-

19.   By virtue of the extensive advertisement and sale of products under the BACARDI name and trademark and, most importantly, the excellence of the products themselves, BACARDI has become a world famous trademark representing an invaluable goodwill and reputation which rightfully belongs exclusively to Bacardi & Co.

### FIRST CAUSE OF ACTION
### (Lanham Act Violation--Trademark Infringement)

20.   Plaintiffs repeat and reallege and by reference incorporate each and every allegation contained in paragraph 1 through 19 as if fully set forth herein.

21.   Defendant ESP is engaged, among other things, in the distribution of fast-selling, impulse merchandise, including liquor-related and tobacco-related products and sundries, which are sold to liquor stores, convenience food stores, and gas station marts in southern California and elsewhere in interstate commerce in the United States.

22.   Defendant ESP is also engaged in the distribution of fast-moving "counter-top" items, including "alcohol logo" cigarette lighters, key chains, and other sundries which are sold to liquor stores, convenience food stores, and similar outlets in southern California and elsewhere in interstate commerce in the United States.

23.   Defendants are now and have long been well aware of the vast goodwill represented and symbolized by the name and trademark BACARDI and are well aware that the trade and consuming public recognize the commercial magnetism of said mark and rely

-7-

1 | upon it as identifying products emanating exclusively from
2 | Bacardi.

3 |     24.   Notwithstanding this knowledge, and indeed, by
4 | reason of it, the individual defendants who control and act
5 | through the corporate defendants have caused cheap disposable
6 | butane cigarette lighters prominently displaying the BACARDI
7 | trademark (hereinafter "counterfeit BACARDI logo lighters") to be
8 | advertised, offered for sale, and sold, first by Nationwide and
9 | now by ESP, throughout Southern California and elsewhere in
10 | interstate commerce in the United States.  A copy of a brochure
11 | of defendants offering BACARDI logo lighters for sale is attached
12 | as Exhibit C.

13 |     25.   The counterfeit Bacardi logo lighters being
14 | advertised, distributed, and sold by defendants bear on the
15 | principal display panel thereof an exact reproduction and
16 | simulation of the BACARDI Label Trademark for rum.  A photocopy
17 | showing the label of defendants' counterfeit BACARDI logo lighter
18 | is attached hereto as Exhibit D.

19 |     26.   The use as aforesaid by defendants of Bacardi's
20 | trade name and mark BACARDI and its BACARDI Label Trademark is
21 | without the consent, license, or permission of Bacardi and the
22 | BACARDI logo lighters which defendants advertise, distribute, and
23 | sell are not manufactured by and do not originate with or have
24 | any other connection with plaintiffs.

25 |     27.   Defendants' unauthorized and wrongful use of
26 | Bacardi's name and mark BACARDI and the BACARDI Label Trademark
27 | in connection with the sale, offering for sale, and advertising
28 | of defendants' goods is likely to cause confusion, to cause

-8-

1  mistake and to deceive.  The likelihood that consumers will be
2  confused and deceived is further greatly increased by defendant's
3  willful and deliberate failure to disclose the name of the
4  distributor or producer on the labeling of said products as
5  required by federal law.
6       28.  Defendants' use, as aforesaid, of a counterfeit,
7  copy, and colorable imitation of plaintiffs' said federally
8  registered trademarks constitutes trademark infringement in
9  violation of the Lanham Act, as amended, 15 U.S.C. §1051, et seq.
10 and, more particularly, of 15 U.S.C. §1114(1).
11      29.  Defendants' use, as aforesaid, of the name and
12 mark BACARDI and the BACARDI Label Trademark is being made with
13 full knowledge of Bacardi's superior trademark rights and
14 constitutes a deliberate attempt to associate defendants' shoddy,
15 unsafe lighters with plaintiffs and plaintiffs' heavily
16 advertised and popular BACARDI rum and is calculated and likely
17 to divert and appropriate to defendants the invaluable goodwill
18 represented by the BACARDI name and trademark and rightfully
19 belonging exclusively to Bacardi.
20      30.  Plaintiffs have been and are being damaged by
21 defendants' aforesaid misrepresentations and acts of infringement
22 because of the misappropriation and misuse of Bacardi's said
23 names and marks, because of injury to plaintiffs' business
24 reputation and good will resulting from the association of
25 plaintiffs and the BACARDI name and mark with defendants and
26 their shoddy, unsafe lighters, and because of the consequent
27 diminution and tendency toward destruction of the value of said
28 names and marks resulting therefrom.

-9-

1        31.  Defendants' foregoing acts are causing great and

2 irreparable injury and will continue to do so unless restrained

3 by this Court.

4        32.  Plaintiffs have no adequate remedy at law.

5 SECOND CAUSE OF ACTION
(Lanham Act Violation--False Designations and Representations)

6

7        33.  Plaintiffs repeat and reallege and by reference

8 incorporate each and every allegation contained in paragraphs 1

9 through 32 as if fully set forth herein.

10        34.  Defendants' have imported the aforesaid

11 counterfeit BACARDI logo lighters and have distributed them in

12 commerce that may be regulated by Congress and by their use as

13 aforesaid of the BACARDI name and mark and of the BACARDI Label

14 Trademark have made false designations of origin and false

15 descriptions and representations that said lighters sold by the

16 defendants originate with or have been approved by plaintiffs or

17 meet the high standards of quality maintained by plaintiffs for

18 their products.

19        35.  Defendants' use as aforesaid of their counterfeits

20 of the BACARDI name and mark and of the BACARDI Label Trademark

21 constitutes the use of false and material descriptions and false

22 designations of origin in violation of Section 43(a) of the

23 Lanham Act, 15 U.S.C. § 1125(a).

24        36.  Defendants' foregoing acts are causing great and

25 irreparable injury and will continue to do so unless restrained

26 by this Court.

27        37.  Plaintiffs have no adequate remedy at law.

28

-10-

## LA01/PAPSC/113230.71

THIRD CAUSE OF ACTION
(Cal. Bus. & Prof. Code § 17200--Unfair Competition)

38.   Plaintiffs repeat and reallege and by reference incorporate each and every allegation contained in paragraphs 1 through 37, as if fully set forth herein.

39.   The aforesaid acts of defendants constitute passing off of their shoddy and unsafe products as Bacardi's product, trademark infringement, misappropriation, unjust enrichment, and unfair competition with plaintiffs, all in violation of plaintiffs' rights under California Business and Professional Code § 17200 et seq. and under the common law of California and the laws of the other states of the United States.

40.   Defendants' foregoing acts are causing great and irreparable injury and will continue to do so unless restrained by this Court.

41.   Plaintiffs have no adequate remedy at law.

FOURTH CAUSE OF ACTION
(Cal. Bus. & Prof. Code §§ 17200 and 17500--
False Advertising and Deceptive Acts and Practices)

42.   Plaintiffs repeat and reallege and by reference incorporate each and every allegation contained in paragraphs 1 through 41, as if fully set forth herein.

43.   The aforesaid acts of defendants constitute false advertising and deceptive acts and practices in the conduct of defendants' business in violation of Section 17200 and 17500 of the California Business and Professional Code.

44.   Defendants' foregoing acts are causing great and irreparable injury and will continue to do so unless restrained by this Court.

-11-

1         45.   Plaintiffs have no adequate remedy at law.

2                   <u>PRAYER FOR RELIEF</u>

3     WHEREFORE, PLAINTIFFS PRAY:

4         1.   That defendants ESP and Nationwide and their

5 officers, directors, agents, servants, employees, representatives

6 and affiliates and defendants Billota, Lay, Bird, and all

7 persons, firms, corporations and other entities in active concert

8 or participation with them, or any of them, be preliminarily and

9 then permanently enjoined and restrained from:

10         (a)   using, without the prior written consent of

11 Bacardi, directly or indirectly, in any manner whatsoever the

12 name BACARDI upon or in connection with the sale, offering for

13 sale, distribution, or advertising of cigarette lighters or any

14 other products or services, and from using any other word or

15 label which is a colorable imitation or simulation of the name

16 and mark BACARDI or the BACARDI Label Design Mark in connection

17 with the sale, offering for sale, distribution, or advertising of

18 cigarette lighters or any other products or services,

19         (b)   doing any other act or thing calculated or likely

20 to cause confusion or mistake in the trade or the minds of the

21 public, or to deceive actual or potential purchasers into

22 believing that defendants' goods are approved, licensed, or

23 otherwise authorized by Bacardi.

24         2.   That defendants be required to deliver up to

25 counsel for Bacardi for destruction all lighters, promotional and

26 advertising materials, catalogs, displays, labels, packaging and

27 containers displaying the name BACARDI or any colorable imitation

28 of the BACARDI Label Trademark.

-12-

1      3.   That each defendant be directed to file with this

2  Court and to serve upon Bacardi within thirty (30) days of the

3  service of this Court's injunction, a written report signed by

4  each defendant, under oath, setting forth in detail the manner in

5  which such defendant complied with the injunction.

6      4.   That defendants be mandatorily enjoined and

7  directed to send to all their customers a notice approved by the

8  Court, advising said customers that the "alcohol logo," "shot

9  logo," and "cigarette logo" cigarette lighters they obtained from

10  defendants are counterfeits, that the continued sale of said

11  lighters is unlawful, and that all such lighters should be

12  returned to defendants, at defendants' costs, for destruction.

13      5.   That defendants be required to account to

14  plaintiffs for any and all profits derived by them from their

15  acts of trademark infringement and unfair competition and that

16  plaintiffs have and recover three times their damages sustained

17  as the result of defendants' trademark infringement, use of

18  counterfeit trademarks and unfair competition.

19      6.   That plaintiffs have and recover their costs in

20  this action, including reasonable attorneys fees, together with

21  such other and further relief as to the Court seems just and

22  proper.

23  DATED:  July 14, 1995      CYNTHIA S. PAPSDORF
                         KELLEY DRYE & WARREN

24

25

26                      By                  
                         Cynthia S. Papsdorf

27                        Attorneys for Plaintiffs
                         BACARDI & COMPANY, LTD. and

28                         U.S.A., INC.

-13-

## LA01/PAPSC/113230.71

EXHIBIT C



**03 CV** **2996**

BADIAK WILL & RUDDY, LLP
Attorneys for Plaintiff
120 Broadway - Suite 1040
New York, New York 10271
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

BACARDI USA INC.,

Plaintiff,

-against-

M/V "COSCO NORFOLK", her engines, boilers, tackle, etc.
and SENATOR LINES GmbH,

Defendants
-----------------------------------------------------------X

COMPLAINT

03 cv.

Plaintiff, by its attorneys, Badiak Will & RUDDY, LLP alleges upon information and

belief, as follows:

FIRST: All and singular the following premises are true and constitute an admiralty

or maritime claim within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure and

within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

SECOND:    At and during all the times hereinafter mentioned, plaintiff had and

now has the legal status and principal office and place of business stated in Schedule A, hereto

annexed, and by this reference made a part hereof.

THIRD:    At and during all the times hereinafter mentioned, defendant had and

now has the legal status and office and place of business stated in Schedule A, and was and now

is engaged in business as a common carrier of merchandise by water for hire, and owned,

operated, managed, chartered and/or otherwise controlled the vessel above named as common

carriers of merchandise by water for hire.

FOURTH:    At and during all the times hereinafter mentioned, the said vessel was and now is a general ship employed in the common carriage of merchandise by water for hire, and now is or will be during the pendency of this action. within this District and within the jurisdiction of this Honorable Court.

FIFTH:    On or about the date and at the port of shipment stated in Schedule A, there was shipped by the shipper therein named and delivered to defendant and the said vessel, as common carriers, the shipment described in Schedule A then being in good order and condition, and defendant and the said vessel then and there accepted said shipment so shipped and delivered to them, and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, agreed to transport and carry the said shipment to the port of destination stated in Schedule A. and there deliver the same in like good order and condition as when shipped, delivered to and received by them. to the consignee named in Schedule A.

SIXTH.    Thereafter, the said vessel arrived at the port of destination, where it and defendant made delivery of the shipment, but not in like good order and condition as when shipped, delivered to and received by them, but on the contrary, with shortage, seriously injured and/or impaired in value by reason of the matter and things stated in Schedule A, all in violation of defendant's and the said vessel's obligations and duties as common carriers of merchandise by water for hire.

SEVENTH:    Plaintiff was the notify party, and party at risk of loss during transportation of the subject shipment and brings this action for its own account and for the account of its cargo insurer which made a partial payment of $2634.13 on account of the loss and damage alleged in the complaint and plaintiff is entitled to bring this action as a real party in interest.

EIGHTH:    By reason of the premises, plaintiff has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in the sum of $7,634.13.

WHEREFORE, plaintiff prays:

1.    That process in due form of law may issue against defendant citing it to appear and answer all and singular the matters aforesaid;

2.    That if defendant cannot be found within this District, then all its property within this District as shall be described in Schedule A, be attached in the amount of $7,634.13, with interest thereon and costs, the sum sued for in this Complaint.

3.    That judgment may be entered in favor of plaintiff against defendant for the amount of plaintiff's damages, together with interest and costs and the disbursements of this action;

4.    That process in due form of law according to the practice of this Court in causes of admiralty and maritime claims, may issue against said vessel, her engines, etc., and that all persons having or claiming any interest therein be cited to appear and answer under oath, all and singular the matters aforesaid, and that this Court will be pleased to pronounce judgment in favor of plaintiff for its damages as aforesaid, with interest, costs and disbursements, and that the said vessel may be condemned and sold to pay therefor;

5.    That if applicable, plaintiff demands that arbitration be commenced in the appropriate forum as designated in the applicable bill of lading, charter party or other agreement governing the contract of carriage referred to in the complaint.

5.    That this Court will grant to plaintiff such other and further relief as may be just and proper.

- 3 -

Dated:    New York, New York
          April 28, 2003

BADIAK WILL & RUDDY, LLP
Attorneys for Plaintiff

By
    STEPHEN A. FRANK (SF-0484)
120 Broadway - Suite 1040
New York, New York  10271
(212) 376-6767
Our Ref. :  03-031-SF

- 4 -

## SCHEDULE A

**PLAINTIFF's LEGAL STATUS AND PLACE OF BUSINESS:**
BACARDI USA INC. was and is a foreign corporation with its principal address and place of business located at 2100 Biscayne Blvd., Miami, FL

**DEFENDANT's LEGAL STATUS AND PLACE OF BUSINESS:**
SENATOR LINES GmbH was and still is a German Corporation with an office and place of business located at C/O Senator Lines (America) Inc., 80 East Rte. 80 · Suite 490, Paramus, NJ.

**DATE OF SHIPMENT:**
10-24-02

**PORT OF SHIPMENT:**
Genoa

**PORT OF DISCHARGE:**
New York/Boston

**SHIPPER:**
Martini & Rossi SpA

**CONSIGNEE:**
Horizon Beverage Group

**NOTIFY PARTY:**
Plaintiff

**SHIPMENT:**
629 cartons of Vermouth/Sparkling Water in Ctr. HJCU8036208 and 605 cartons of Sparkling Wine in Ctr. HJCU8101514

**AMOUNT:**
$7634.13

**TYPE OF CLAIM:**
Damage during ocean transportation

**BWR REF:**
O3-Z-031-SF

**DEF. REF:**
unknown

EXHIBIT D

BATTS, J

Doc # 5    ORIGINAL

BADIAK WILL & RUDDY, LLP
Attorneys for Plaintiff
120 Broadway - Suite 1040
New York, New York 10271
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BACARDI USA INC.,

                                    Plaintiff,

                -against-

M/V "COSCO NORFOLK", her engines, boilers, tackle, etc.
and SENATOR LINES GmbH,

                                    Defendants
------------------------------------------------------------X

CONDITIONAL    ORDER    OF
VOLUNTARY DISMISSAL

03 cv. 2996 (DAB)

The above entitled action having been settled and the defendant not having appeared or answered the Complaint, the same be and hereby is voluntarily dismissed, with prejudice and without costs but the plaintiff may apply to the Court to have this action reopened in the event the agreed upon settlement is not consummated within sixty (60) days of the date this Order is entered.

Dated:    New York, New York
          June 25, 2003

                              BADIAK WILL & RUDDY, LLP
                              Attorneys for Plaintiff

                              By:
                                  STEPHEN A. FRANK (SF-0484)
                                  120 Broadway - Suite 1040
                                  New York, New York 10271
                                  (212) 376-6767
                                  Our Ref. . 03-Z-031-SF

So Ordered:

                              Deborah A. Batts
                              USDJ          7/2/03