**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PERNOD RICARD USA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-505 (SLR) |
| v. | ) | |
| | ) | **REDACTED --** |
| BACARDI U.S.A., INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO BACARDI U.S.A.'S
MOTION TO PRECLUDE EXPERT TESTIMONY OF WALTER McCULLOUGH**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
*Attorneys for Plaintiff*
*PERNOD RICARD USA, LLC*

OF COUNSEL:

Vincent N. Palladino
Eric R. Hubbard
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036
(212) 596-9000

Original Filing Date:  October 14, 2008
Redacted Filing Date:  October 20, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING.................................................. 3

SUMMARY OF ARGUMENT ............................................................................... 3

STATEMENT OF FACTS ...................................................................................... 4

I.    PERNOD'S EXPERT DESIGNED AND CONDUCTED A SURVEY THAT
      ESTABLISHES CONSUMER DECEPTION ................................................ 4

      A.    Bacardi Launched Its Puerto Rican HAVANA CLUB Rum Although Its
            Bahamian HAVANA CLUB Rum Was Shown To Be Deceptive ........................... 4

      B.    Pernod Responded Promptly And Convincingly ...................................... 6

II.   BACARDI HAS NO SURVEY EVIDENCE TO THE CONTRARY ................. 8

      A.    Bacardi Did Not Conduct A Survey ....................................................... 8

      B.    Bacardi's Expert Simply Criticized Pernod's Survey .............................. 8

ARGUMENT ......................................................................................................... 10

I.    THE MCCULLOUGH SURVEY SHOULD BE ADMITTED........................ 10

      A.    This Court Should Take A "Hard Look" At Bacardi's Motion ............... 10

      B.    Bacardi Has Simply Criticized The Survey Methodology ..................... 11

      C.    The McCullough Survey Methodology Is Sound .................................. 14

            1.    The McCullough Survey Is Not Biased ....................................... 15

            2.    Mr. McCullough Utilized Proper Control Methodology ............... 16

            3.    Mr. McCullough Surveyed An Appropriate Sample Of The Proper
                  Universe Of Respondents.......................................................... 17

            4.    "Blinding Procedures" Did Not Break Down ............................... 20

            5.    Mr. McCullough Asked Appropriate Questions ........................... 20

            6.    Mr. McCullough Accurately Reported The Survey Data ............... 23

II.   BACARDI MAY NOT SUBSTITUTE A DAUBERT MOTION FOR A SUMMARY
      JUDGMENT MOTION IT DID NOT BRING AND KNEW IT WOULD LOSE ......... 23

CONCLUSION...................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anheuser-Busch, Inc. v. Caught-On-Bleu,*
  288 F. Supp. 2d 105 (D.N.H. 2003) .................................................................6, 13

*AstraZeneca v. TAP Pharm. Prods., Inc.,*
  444 F. Supp. 2d 278 (D. Del. 2006) ..................................................2, 10, 11, 12

*Bonesmo v. Nemours Found.,*
  253 F. Supp. 2d 801 (D. Del. 2003) ........................................................................14

*Castrol, Inc. v. Pennzoil Quaker State Co.,*
  No. Civ. A. 00-2511, 2000 WL 1556019 (D.N.J. Oct. 12, 2000) ...........................13

*Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.,*
  921 F.2d 467 (3d Cir. 1990) ...................................................................................14

*Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City,*
  383 F.3d 110 (3d Cir. 2004) ...................................................................................18

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.,*
  No. SACV04-725 CJC (Ex), 2006 WL 5187497 (C.D. Cal. Mar. 2, 2006) ......16, 24

*Daubert v. Merrill Dow Pharms. Inc.,*
  509 U.S. 579 (1993) ................................................................................................11

*Eco Mfg. LLC v. Honeywell Int'l, Inc.,*
  295 F. Supp. 2d 854 (S.D. Ind. 2003) .................................................................6, 13

*E.T. Browne Drug Co. v. Cococare Prods., Inc.,*
  538 F.3d 185 (3d Cir. 2008) ..............................................................................12, 24

*Gov't Employees Ins. Co. v. Google, Inc.,*
  77 U.S.P.Q.2d 1841 (E.D. Va. 2005) ..............................................13, 16, 19, 20

*Goya Foods, Inc. v. Condal Distribs., Inc.,*
  732 F. Supp. 453 (S.D.N.Y. 1990) .........................................................................13

*Havana Club Holding, S.A. v. Galleon, S.A.,*
  203 F.3d 116 (2d Cir. 2000) .....................................................................................4

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.,*
  258 F. Supp. 2d 1197 (D. Kan. 2003) ...............................................................13, 15

*In re Paoli R.R. Yard PCB Litig.,*
  35 F.3d 717 (3d Cir. 1994) .......................................................................................2

*Indianapolis Colts, Inc. v. Metro. Baltimore Football Club,*
    34 F.3d 410 (7th Cir. 1994) .........................................................................13

*Int'l Telecharge, Inc. v. AT&T,*
    No. MJG-92-1722, 1995 U.S. Dist. LEXIS 21818 (D. Md. Oct. 19, 1995) ...........................23

*J&J Snack Foods Corp. v. Earthgrains Co.,*
    220 F. Supp. 2d 358 (D.N.J. 2002) ................................................................6, 13

*J&J Snack Foods Corp. v. Nestle, USA, Inc.,*
    149 F. Supp. 2d 136 (D.N.J. 2001) ................................................................6, 13

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)..................................................................................11

*Lentz v. Mason,*
    32 F. Supp. 2d 733 (D.N.J. 1999) ..................................................................24

*Merisant Co. v. McNeil Nutritionals LLC,*
    242 F.R.D. 315 (E.D. Pa. 2007)....................................................................19

*Merriam-Webster, Inc. v. Random House, Inc.,*
    35 F.3d 65 (2d Cir. 1994) ..........................................................................15

*Novartis Consumer Health Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,*
    290 F.3d 578 (3d Cir. 2002)................................................................. passim

*Paco Sport, Ltd. v. Paco Rabanne Parfums,*
    86 F. Supp. 2d 305 (S.D.N.Y. 2000)...........................................................6, 13, 19

*Pharmacia Corp. v. Alcon Labs., Inc.,*
    201 F. Supp. 2d 335 (D.N.J. 2002) .................................................................15

*Phillips-Van Heusen Corp. v. Calvin Clothing Co.,*
    444 F. Supp. 2d 250 (S.D.N.Y. 2006)...............................................................13

*Smith v. Wal-Mart Stores, Inc.,*
    537 F. Supp. 2d 1302 (N.D. Ga. 2008) ..............................................................20

*Star Indus., Inc. v. Bacardi & Co.,*
    412 F.3d 373 (2d Cir. 2005)......................................................................14, 23

*Tyco Indus., Inc. v. Lego Sys., Inc.,*
    5 U.S.P.Q.2d 1023 (D.N.J. 1987) ............................................................. passim

*United States v. Dentsply Int'l Inc.,*
    277 F. Supp. 2d 387 (D. Del. 2003)..................................................................14

*Vista Food Exch. v. Vistar Corp.*,
  No. 03-Cv-5203 DRHWDH, 2005 WL 2371958 (E.D.N.Y. Sept. 27, 2005) ........................18

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
  744 F. Supp. 1259 (S.D.N.Y. 1990).......................................................................................13

*Westchester Media Co. L.P. v. PRL USA Holdings*,
  103 F. Supp. 2d 935 (S.D. Tex. 1999) ..............................................................................6, 13

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) ...........................................................................................................3

**OTHER AUTHORITIES**

6 *J. Thomas McCarthy, Trademarks and Unfair Competition* (4th ed. 2008)       12, 19, 20, 21

*Shari Diamond*, *Reference Manual on Scientific Evidence* (Federal Judicial Center, 2d ed.
  2000) .............................................................................................................14, 16, 17, 18, 22

*Gary T. Ford*, *The Impact of the Daubert Decision on Survey Research Used in
  Litigation*, *Journal of Public Policy & Marketing* (2005) ......................................................16

## <u>INTRODUCTION</u>

Bacardi U.S.A., Inc. ("Bacardi") has moved to preclude the testimony of plaintiff Pernod Ricard USA, LLC's ("Pernod") expert witness Walter McCullough.  This is Pernod's Answering Brief in opposition to Bacardi's motion.

During March-April 2008, Mr. McCullough designed and conducted a consumer survey.  The survey demonstrated that Bacardi's use of the name HAVANA CLUB for its Puerto Rican rum caused 18% of likely prospective rum buyers to be misled into believing that Bacardi's rum originates in Cuba and an additional 4% to be confused about the product's connection with Cuba.  That response rate exceeds the 15% level of deception that supports a false advertising claim in this Circuit.  *See Novartis Consumer Health Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594 (3d Cir. 2002) ("survey evidence demonstrating that 15% of the respondents were misled by the MNTS name is sufficient to establish the 'actual deception or at least a tendency to deceive a substantial portion of the intended audience' necessary to establish a Lanham Act claim for false or misleading advertising under Section 43(a)") (citation omitted).

Despite two years of litigation and ample resources, Bacardi has not conducted a survey to try to establish the absence of deception.  Fearing the outcome of such a survey, Bacardi instead retained an expert witness to criticize the McCullough survey.  Armed with little more than the opinion of a competing expert, Bacardi now improperly seeks to achieve through the back door what it did not (because it could not) seek directly: summary judgment.  This is because survey evidence is critical to a Lanham Act false advertising claim.  *See Tyco Indus., Inc. v. Lego Sys., Inc.*, 5 U.S.P.Q.2d 1023, 1030 (D.N.J. 1987) ("Where an ad is ... claimed to deceive, a violation of § 43(a) must be based upon evidence showing what message the consumer will take from the ad ....  ['This is] evidence (usually in the form of market research or

consumer surveys) showing how the statements are perceived by those who are exposed to them.'") (citation omitted), *aff'd without op*., 853 F.2d 921 (3d Cir. 1988).

This Court should take a "hard look" at Bacardi's criticisms of the McCullough survey, recognizing that surveys typically are not excluded in Lanham Act cases because "'it is relatively easy for one expert to criticize a survey done by another expert.'" *Tyco Indus., Inc.*, 5 U.S.P.Q.2d at 1031 (citation omitted); *see also AstraZeneca v. TAP Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 286 (D. Del. 2006) ("'when the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment,' the Court of Appeals will give these rulings 'a "hard look" to determine if a district court has abused its discretion in excluding evidence as unreliable.'") (*quoting In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 750 (3d Cir. 1994)).

Such a hard look reveals that Bacardi's motion should be denied. Mr. McCullough designed and conducted a demonstrably sound survey. Excluding it based on the unsupported criticisms leveled by Bacardi's expert would be tantamount to ruling that the survey is unreliable because Bacardi and its witness say so, even though Bacardi has not demonstrated that a survey done according to its expert's requirements would yield a different result. *See AstraZeneca*, 444 F. Supp. 2d at 291 (in Lanham Act cases, even demonstrated survey flaws typically go to "the weight, not the admissibility of the survey"); *Tyco Indus., Inc.*, 5 U.S.P.Q.2d at 1031 (relying on plaintiff's survey where defendant's expert "admit[ted] that he could not say that Mr. Bruno's conclusions … were wrong, but only that he criticized the way Mr. Bruno arrived at his conclusions").

If Bacardi wishes to rely on its criticisms, Mr. McCullough's testimony about his survey should be admitted, and Bacardi should be required to cross-examine Mr. McCullough

and put its own expert on the stand at trial so that their testimony can be evaluated by the jury Bacardi itself requested.

## NATURE AND STAGE OF THE PROCEEDING

On August 15, 2006, Pernod filed this action asserting that Bacardi has violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by falsely and misleadingly describing the geographic origin of its Puerto Rican HAVANA CLUB rum product, which is not produced in Cuba (Count I), and falsely stating that it owns the HAVANA CLUB trademark in the United States (Count II).   On December 19, 2006, the Court denied Bacardi's motion to transfer this case to the Southern District of Florida.   On August 21, 2007, the Court granted Bacardi's motion to dismiss Count II.

Since then the parties have engaged in extensive fact discovery, exchanged expert reports and deposed each other's expert witnesses.   Neither party sought summary judgment by the September 12, 2008 deadline for doing so.   Pernod's expert Walter McCullough designed and conducted a consumer survey that proves the deceptive nature of Bacardi's use of HAVANA CLUB.   Bacardi now seeks to preclude Mr. McCullough from testifying about the survey at the trial, which is scheduled to commence on March 2, 2009.

## SUMMARY OF ARGUMENT

1.      The McCullough survey should be admitted.   In keeping with Third Circuit law, this Court should take a "hard look" at Bacardi's motion, which seeks summary judgment under the guise of a *Daubert* motion.   Bacardi has simply criticized the survey methodology without putting its criticisms to the test by conducting its own survey.   In fact, the McCullough survey is methodologically sound:

- Bacardi does not dispute that Mr. McCullough surveyed an appropriate number of respondents (411) using an accepted mall intercept methodology.

- Bacardi does not dispute that Mr. McCullough used the preferred test-control group model recommended by its own expert. It simply and incorrectly quarrels with Mr. McCullough's choice of SILVER CLUB as a control.

- Mr. McCullough conducted his survey among prospective rum buyers located throughout the country (including Florida) who speak English because the evidence shows that Bacardi intends to sell, and currently promotes, its HAVANA CLUB rum nationwide to English speaking people who intend to buy rum.

- Mr. McCullough assured that neither interviewers nor interviewees knew Pernod was the survey's sponsor, and Bacardi's expert does not challenge this.

- Mr. McCullough asked appropriate non-leading questions.

- Mr. McCullough accurately and separately reported the number of respondents in the survey who were "misled" or "confused" by Bacardi's use of HAVANA CLUB.

2.     Bacardi cannot prevail on a *Daubert* challenge simply because it has found an expert who disagrees with some of Mr. McCullough's methodology.  Nor can it substitute a *Daubert* motion for a summary judgment motion it did not bring and knew it would lose because at a minimum the McCullough survey would have raised genuine disputes as to material facts.

## STATEMENT OF FACTS

I.     **PERNOD'S EXPERT DESIGNED AND CONDUCTED A SURVEY THAT ESTABLISHES CONSUMER DECEPTION**

A.     **Bacardi Launched Its Puerto Rican HAVANA CLUB Rum Although Its Bahamian HAVANA CLUB Rum Was Shown To Be Deceptive**

Bacardi is a "leading importer[ ] and distributor [ ] of spirits throughout the United States."  (D.I. 41 at 1).  In 1995 and 1996, Bacardi distributed 922 cases of a Bahamian

HAVANA CLUB rum in the United States.  *Havana Club Holding, S.A. v. Galleon, S.A.*, 203

F.3d 116, 121 (2d Cir. 2000).  A consumer survey conducted in 1997 reported *inter alia*:

> The Source Study tested respondents beliefs regarding the
> geographic origin of the [Bacardi] Bahamian Havana Club Rum.
> Slightly more than half (52%) attributed Bahamian Havana Club
> Rum as coming from Cuba.  Clearly this finding supports the first
> hypothesis being tested:
>
> 1)     The name "Havana Club" will confuse a substantial
> number of consumers as to the geographic origin of the Bahamian
> rum.

Declaration of Victor D. Hendrickson ("Hendrickson Decl.") Ex. 1 at 10.  That HAVANA

CLUB rum was taken off the market in 1996.

Without any further surveys or focus groups, nine years later in August 2006,

Bacardi "officially launched its 'Havana Club' brand rum in the United States."  (D.I. 41 at 4

(citing D.I. 1 ¶7)).  This time, the rum is "made in Puerto Rico."  (D.I. 41 at 2 (citing D.I. 1 ¶5

Ex. A)).  On August 8, 2006, Bacardi issued a nationwide press release over the internet, which

announced that "Bacardi has been preparing a relaunch of Havana Club rum in the United

States."  (D.I. 1 Ex. C).  Later that same day, its Vice President and Group Marketing Director,

John Gomez, discussed the product launch on "All Things Considered," a National Public Radio

production broadcast nationally.  (D.I. 1 Ex. D).

Mr. Gomez and Bacardi's spokeswoman Patricia Neal also spoke to reporters.

Within hours of Bacardi's announcement, *The Wall Street Journal* was reporting the "expected

... relaunching [of] Havana Club brand rum in the U.S."  (D.I. 19 Ex. 3).  Bacardi's breaking

news was further disseminated nationwide over the internet.  (D.I. 19 Exs. 4-5).  Yet another

internet source announced a day later the launch of the HAVANA CLUB "brand for the United

States."  (D.I. 1 Ex. B).  Confirming Bacardi's ambitious plans, Ms. Neal was reported in the

article as stating that the debut of HAVANA CLUB in South Florida bars, restaurants and clubs

was designed to create celebrity buzz that would help sell the drink in New York *and other U.S. markets.*  (D.I. 1 Ex. B (emphasis added)).

In its nationwide announcements touting its HAVANA CLUB rum, Bacardi also stated that "Bacardi aims to tap both the *U.S.* craze for *premium white spirits*, such as Grey Goose *vodka*, and the recent upswing in sales of rum."  (D.I. 1 Ex. B (emphasis added)).  The language on Bacardi's HAVANA CLUB rum bottle, marketing materials and website is English.  (Hendrickson Decl. Exs. 2-4).  Bacardi has not even attempted to show that in the United States its HAVANA CLUB rum (or premium white spirits such as vodka) is directed at non-English speakers – whether they speak only Spanish, French or some other language.

### B.    Pernod Responded Promptly And Convincingly

Bacardi continues to promote its product nationwide on its website.  (Hendrickson Decl. Ex. 4).  ████████████████████████████████████████████
████████████████████████

Pernod has established that Bacardi's HAVANA CLUB rum product is deceptive.  Pernod has retained Walter McCullough as an expert witness to design and conduct a consumer survey to determine "the extent to which, if at all, Havana Club Rum miscommunicates its origin of manufacture or its ingredients."  (Graham Decl. Ex. A at 4).  Mr. McCullough is a renowned consumer survey expert whose surveys have been credited by numerous courts.[1]  He is president

---

[1]    *See*, *e.g.*, *Westchester Media Co. L.P. v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d 935, 968 (S.D. Tex. 1999) ("this court credits … the findings in Mr. McCullough's survey"), *vacated in part on other grounds,* 214 F. 3d 658 (5th Cir. 2000); *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 295 F. Supp. 2d 854, 883 (S.D. Ind.) (crediting Mr. McCullough's survey and stating "[h]e brought substantial experience and expertise to the task, and he used reliable methodology and procedures"), *aff'd*, 357 F.3d 649 (7th Cir. 2003); *Anheuser-Busch, Inc. v. Caught-On-Bleu*, 288 F. Supp. 2d 105, 122-23 (D.N.H. 2003) (crediting a McCullough survey), *aff'd*, 105 Fed. Appx. 285 (1st Cir. 2004); *J&J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 381 (D.N.J. 2002) (crediting a McCullough survey); *J&J Snack Foods Corp. v. Nestle, USA, Inc.*, 149 F. Supp. 2d 136,

and owner of Monroe Mendelsohn Research ("MMR"), a leading marketing research firm. Since 1968, Mr. McCullough has been actively involved at MMR in the design, implementation and analysis of research projects for major manufacturers, service firms, advertising firms and law firms.[2]

In March-April 2008, Mr. McCullough designed and conducted his survey among consumers likely to purchase rum in the next six months.  Over 400 respondents in eight geographic locations (including Florida) were shown a rum product and interviewed about their perceptions.  205 respondents were shown Bacardi's HAVANA CLUB rum product and asked a series of questions.  A separate group of 206 respondents were shown a "control" rum product and asked the same questions.  This control product was a duplicate of Bacardi's product, except that the name SILVER CLUB had been substituted for HAVANA CLUB.  (Graham Decl. Ex. A at 6).

In April 2008, Mr. McCullough reported the results of the survey.  His report sets out the number of respondents in the HAVANA CLUB test group (20%) and the SILVER CLUB control group (2%) who were misled into believing that Bacardi's Puerto Rican rum originates in Cuba.  It also reports separately the number of respondents in the HAVANA CLUB group (4%) and the SILVER CLUB group (less than 1%) who were confused about whether the product originates in Cuba.  Subtracting the SILVER CLUB control group numbers (2% and less than 1%) from the HAVANA CLUB test group numbers (20% and 4%), the report concludes that 18% of respondents were misled and another 4% were confused by the use of HAVANA CLUB. Together the level of deception (misled and confused) is 20% (due to the rounding of numbers).

153 (D.N.J. 2001) (crediting a McCullough survey); *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 321-24 (S.D.N.Y.) (crediting a McCullough survey), *aff'd without op.*, 234 F.3d 1262 (2d Cir. 2000).

[2]     *See* Declaration of Michelle M. Graham ("Graham Decl.") (D.I. 83) Ex. A at Ex. F.

(Graham Decl. Ex. A at 3).   *See* Graham Decl. Ex. D at 15 (the survey showed that the "belief

that [Bacardi's rum] came from Cuba came from the [HAVANA CLUB] brand ... [b]y having

the appropriate control cell and subtracting the control cell level of miscommunication from the

test cell level.").

Bacardi deposed Mr. McCullough on July 30, 2008.   The transcript of that

deposition is Graham Decl. Ex. D (hereinafter "McCullough Tr.").   At his deposition,

Mr. McCullough testified that the results from Florida showed a higher level of deception than

"was the case in the total study, but statistically equivalent."  (McCullough Tr. 142).

## II.     BACARDI HAS NO SURVEY EVIDENCE TO THE CONTRARY

### A.     Bacardi Did Not Conduct A Survey

Bacardi had nearly two years to conduct a survey to establish the allegations in its

Answer to Count I of the Complaint, namely, that its Puerto Rican HAVANA CLUB rum is not

deceptive.   However, Bacardi did not do so.   ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████  a 1997 survey showed that the HAVANA CLUB

product that Bacardi marketed in 1996 deceived 52% of respondents about the origin of

Bacardi's Bahamian rum.

### B.     Bacardi's Expert Simply Criticized Pernod's Survey

Rather than conduct a survey conforming to the requirements it seeks to impose

on Pernod, Bacardi hired Gary Ford, a retired professor of marketing at American University.

(Ford Tr. 5-6)[3], to attempt to pick holes in Mr. McCullough's methodology.   During his

---

[3]     Although Bacardi relies on Mr. McCullough's deposition, it has not furnished this Court
with the transcript.  It is submitted as Hendrickson Decl. Ex. 9 (hereinafter "Ford Tr.")
(Ford Tr. 7) together with Ford Dep. Ex. 5.  (Hendrickson Decl. Ex. 1).

August 6, 2008 deposition, Mr. Ford confirmed that he was hired by Bacardi "to review the quality or the overall quality of the survey conducted by Mr. McCullough."  (Ford Tr. 15).  He said he understood this to mean he was "free to point out flaws in the survey methodology if [he] found any … [and] to point out methodology that [he] found to be sound."  (Ford Tr. 15).  He submitted his report on July 11, 2008.  (Graham Decl. Ex. F).

Although Mr. Ford said he was free to report on what he regarded as both the survey's strength and weaknesses, his report contains only alleged criticisms of Mr. McCullough's survey.  (Graham Decl. Ex. A).  Mr. Ford omitted from his report any survey methodology employed by Mr. McCullough of which Mr. Ford approved.  (Ford Tr. 15-16).  Mr. Ford also failed to point out that in utilizing the test-control model, Mr. McCullough employed the "preferred approach."  (Ford Tr. 42).

Mr. Ford also did not acknowledge in his report that 411 survey respondents in the McCullough survey is an appropriate number or that Mr. McCullough used in his survey the widely accepted mall intercept methodology.  *See* McCullough Tr. 142 ("people who do research, both for litigation and non-litigation practices, regularly use [ ] malls as a place to do personal interviews.");  *Novartis Consumer Health, Inc. v. Johnson & Johnson – Merck Consumer Pharms.*, 129 F. Supp. 2d 351, 364 (D.N.J. 2000) (the "survey was administered in shopping malls around the country to 432 people who identified themselves as likely buyers of antacid products"), *aff'd*, 290 F.3d 578 (3d Cir. 2002); *Tyco Indus., Inc.*, 5 U.S.P.Q.2d at 1031 ("[C]ourts have repeatedly accepted mall intercept surveys in litigation.").

Further, in attempting to fault the 2008 McCullough survey, Mr. Ford compared it to part of a 1997 survey involving Bacardi's Bahamian HAVANA CLUB rum in which Mr. McCullough explored brand awareness – a question not at issue in this case.  (Ford Tr. 11,

14, 80-83; Graham Decl. Ex. C; Hendrickson Decl. Ex. 1).  By contrast, he did not "see how [another 1997 survey involving consumer perceptions of the original Bacardi's Bahamian HAVANA CLUB rum] would have been relevant for what I was doing" (Ford Tr. 81) although that issue is analogous to this case and the earlier survey showed consumer deception. Moreover, it questioned respondents at malls throughout the country and used a test-control group model that included non-geographical control products just as Mr. McCullough did in his 2008 survey.  (Hendrickson Decl. Ex. 1).

Mr. Ford further testified that he has performed his own litigation surveys in other cases, and that they have been admitted and credited although they "always" have been criticized by opposing experts.  (Ford Tr. 7).

## ARGUMENT

## I.   THE MCCULLOUGH SURVEY SHOULD BE ADMITTED

### A.   This Court Should Take A "Hard Look" At Bacardi's Motion

In this Circuit "'when the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment,' the Court of Appeals will give these rulings 'a "hard look" to determine if a district court has abused its discretion in excluding evidence as unreliable.'"  *AstraZeneca*, 444 F. Supp. 2d at 286 (citation omitted).  As Bacardi well knows, the McCullough survey is critical to Pernod's proof of Count I because consumer surveys are effectively *de rigueur* in cases involving such claims.  *See Novartis Consumer Health Inc.*, 290 F.3d at 590 ("Novartis is likely to succeed on the merits because ... Novartis will likely be able to prove, through the use of a consumer survey, that the MNTS name and label mislead consumers"); *Tyco Indus., Inc.*, 5 U.S.P.Q.2d at 1030

("'[E]vidence (usually in the form of market research or consumer surveys) show[s] how the statements are perceived by those who are exposed to them.'") (citation omitted).

Bacardi also knows that the McCullough survey poses a serious threat to its position because the results exceed those required to prove a false advertising claim in this Circuit.  *See Novartis Consumer Health Care Inc.*, 290 F.3d at 594 ("survey evidence demonstrating that 15% of the respondents were misled by the MNTS name is sufficient").  This Court should take a "hard look" at Bacardi's *Daubert* motion and deny it.

## B.    Bacardi Has Simply Criticized The Survey Methodology

Although *Daubert* and *Kumho*[4] permit a court to keep from the trier of fact evidence that is not "relevant and reliable,"[5] those cases do not support excluding a consumer survey where alleged methodological flaws can "be dealt with on cross-examination." *AstraZeneca,* 444 F. Supp. 2d at 291.  Bacardi deposed Mr. McCullough about his survey at length.  (Graham Decl. Ex. D).  As discussed below, Mr. McCullough provided sound and reasonable explanations for the design and conduct of his survey.  *See infra* at 13-22.  Rather than excluding his testimony it is appropriate to require Bacardi to cross-examine Mr. McCullough at trial and put Mr. Ford on the stand, so that the jury Bacardi requested can decide what weight to accord their testimony.

Excluding the McCullough survey at this juncture in light of Bacardi's criticisms would be tantamount to ruling that the survey is unreliable because Bacardi and its witness say so, even though Mr. McCullough cogently defends his methodology.  That plainly would be improper where Bacardi has conducted no survey of its own to test how, if at all, adopting its

---

[4]     *Daubert v. Merrill Dow Pharms. Inc.,* 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

[5]     Bacardi U.S.A., Inc.'s Opening Brief In Support Of Its Motion To Preclude Expert Testimony Of Walter McCullough ("Op. Br.") 1.

expert's criticisms might have altered the McCullough survey results.  *See Tyco Indus., Inc.*, 5 U.S.P.Q.2d at 1031 (granting plaintiff relief where defendant's expert "admit[ted] that he could not say that Mr. Bruno's conclusions … were wrong, but only that he criticized the way Mr. Bruno arrived at his conclusions").

Because criticisms of surveys typically go to their weight and not to their admissibility, surveys are not readily excluded.  *See E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 197 (3d Cir. 2008) (jury should decide what weight to accord survey because even "[non-trivial flaws do] not deprive the survey of probative value"); *Novartis Consumer Health Inc.*, 290 F. 3d at 590-94 (relying on survey despite criticisms); *AstraZeneca*, 444 F. Supp. 2d at 291 (denying *Daubert* motion where criticism of survey "goes to the weight, not the admissibility, of the survey evidence").

That is because "[i]t is notoriously easy for one survey expert to appear to tear apart the methodology of a survey taken by another."  6 *J. Thomas McCarthy, Trademarks and Unfair Competition* ("*McCarthy*") § 32:178, at 32-366 to 368 (4th ed. 2008).   As McCarthy explains:

> Similarly, cross-examination of a survey expert sometimes focuses strongly on the "road not taken":  Why did you not ask a different question?  Why did you not include more people in your sample?  Why did you not sample in different locations? ....
>
>         ....
>
> *The proper approach is to view such evidence with some understanding of the difficulty of devising and running a survey and to use any technical defects only to lessen evidentiary weight, not to reject the results out-of-hand.*

*Id.* (emphasis added).   *Accord Tyco Indus., Inc.*, 5 U.S.P.Q.2d at 1031 (rejecting a host of criticisms from an expert who did not conduct his own survey because "'it is relatively easy for one expert to criticize a survey done by another expert'") (citation omitted).

The work of survey experts who testify in litigation is regularly criticized and sometimes discredited. Such treatment comes with the territory.[6] The experience of both Mr. McCullough and Mr. Ford bears this out. The courts have considered and relied on Mr. McCullough's surveys despite criticisms from opposing experts. *See, e.g., Westchester Media Co. L.P.*, 103 F. Supp. 2d at 966 (crediting McCullough survey despite "vehement[] criti[cism]"); *Eco Mfg. LLC*, 295 F. Supp. 2d at 883 (crediting a McCullough survey despite criticism); *Anheuser-Busch, Inc.*, 288 F. Supp. 2d at 122-23 (same); *J&J Snack Foods Corp.*, 220 F. Supp. 2d 381 (same); *J&J Snack Foods Corp.*, 149 F. Supp. 2d at 153 (same); *Paco Sport, Ltd.*, 86 F. Supp. 2d at 321-24 (same). Mr. Ford testified that his litigation surveys have not only been admitted in evidence, but credited although they "always" have been criticized by opposing experts. (Ford Tr. 7).[7] This general propensity for criticism does not support exclusion at the pre-trial stage of any particular survey in any particular case.[8]

---

[6]   *Compare, e.g., Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197, 1210 (D. Kan. 2003) ("The court finds the credentials and testimony of Dr. Jacoby to be impeccable, and his rationale thoroughly persuasive.") with *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1274-76 (S.D.N.Y. 1990) ("Dr. David Jacoby['s] [survey] … deserves no weight in measuring actual confusion over the 1989 advertisement."); and *Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F. Supp. 453, 456 (S.D.N.Y. 1990) ("Dr. Michael Rappeport, an expert in market survey research, testified persuasively") with *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club*, 34 F.3d 410, 415 (7th Cir. 1994) ("Rappeport's … survey … consisted of three loaded questions asked in one Baltimore mall. Rappeport has been criticized before for his methodology, and we hope that he will take these criticisms to heart in his next courtroom appearance.") (citation omitted).

[7]   For example, in *Gov't Employees Ins. Co. v. Google, Inc.*, 77 U.S.P.Q.2d 1841, 1846-47 (E.D. Va. 2005), the Court "found that defendant's cross-examination ... revealed a number of weaknesses in [Mr. Ford's] survey evidence [including the control, question design and choice of stimuli]" before concluding that "[d]espite the many flaws in its design, the survey's results were sufficient to establish a likelihood of confusion." *See also Phillips-Van Heusen Corp. v. Calvin Clothing Co.*, 444 F. Supp. 250, 257 n.11 (S.D.N.Y. 2006) (crediting Ford survey despite criticisms); *Castrol, Inc. v. Pennzoil Quaker State Co.,* No. Civ. A. 00-2511, 2000 WL 1556019, at *19 (D.N.J. Oct. 12, 2000)

C.      **The McCullough Survey Methodology Is Sound**

Mr. McCullough conducted a methodologically sound survey in accordance with accepted principles. Bacardi's criticisms are contradicted by sound survey practice, the experience of Bacardi's own expert in prior cases, his unfounded assumptions about the facts of this case, the authorities on which Bacardi itself relies and/or Mr. McCullough's reasoned explanations for the methodology he employed in designing and conducting his survey.

Bacardi had both the time and money to conduct a survey of its own, and its failure to put Mr. Ford's criticisms to the test suggests it feared the survey results. *See Shari Diamond*, *Reference Manual on Scientific Evidence* at 236 (Federal Judicial Center, 2d ed. 2000) ("courts have drawn negative inferences from the absence of a survey"); *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc*., 921 F.2d 467, 475-76 (3d Cir. 1990) ("plaintiff's failure to conduct ... a survey where it has the financial resources to do so, could lead a jury to infer that the plaintiff believes the results of the survey will be unfavorable"); *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005):

> [Bacardi] submitted consumer surveys tending to rebut charges of actual consumer confusion. Star points out, and the district court noted, various flaws with these surveys. But as [Bacardi] correctly point[s] out, Star's failure to present its own consumer survey weighs against a finding of consumer confusion. *See Merriam-*

---

("Mr. Johnson's criticism of [Mr. Ford's survey] was insufficient to invalidate the Court's determination that the survey was accurate and statistically relevant").

[8]     Bacardi's cases do not support a different result. In *United States v. Dentsply Int'l Inc.*, 277 F. Supp. 2d 387, 435-40 (D. Del. 2003), *rev'd on other grounds*, 399 F.3d 181 (3d Cir. 2005), this Court did not grant a *Daubert* motion. Rather, as the trier of fact, this Court declined to credit a survey after an exhaustive analysis. Further, in *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 807 (D. Del. 2003), defendant made and the court granted a motion for summary judgment where plaintiffs "failed to show that there is an international standard of care ordinarily employed in the treatment of children with CVC's." The Court *considered* one expert's report and found that plaintiff's second expert, who failed to submit a report, would merely echo the first expert's report.

*Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994).

### 1.      The McCullough Survey Is Not Biased

Bacardi's *ad hominem* attack on Mr. McCullough (Op. Br. 3-4) based on two prior decisions, over a 40-year career does not establish that the survey he conducted in this case should be excluded at trial.  In one of these two decisions, the survey *was admitted in evidence*. *See Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335 (D.N.J. 2002).  And Bacardi misrepresents the decision in *Hill's Pet Nutrition, Inc.*, 258 F. Supp. 2d at 1203-04, where the survey used a different methodology from McCullough's survey in this case.[9]

Bacardi also accuses Mr. McCullough of "lack of candor in his sworn deposition," claiming that he failed to recall an 11-year old survey (among the hundreds he has designed) and urging without support that "[c]onveniently, McCullough's memory lapse allowed him to avoid having to explain his rationale for making crucial changes in the design of the present survey."  (Op. Br. 5).  In fact, Mr. McCullough testified about the prior survey, including why the country of origin issue in the current survey and the brand awareness issue in the prior survey present "completely different situations."  (McCullough Tr. 11, 9, 16, 22-24, 30-31, 58-61, 101).  *See also* McCullough Tr. 8-9, 23-24 (testifying that he did not recall the earlier survey *before he designed the current survey*).

---

[9]      Contrary to Bacardi's assertion, the Court never "agreed with defendant's contention that the survey conducted by plaintiff was obtained by 'questionable techniques' of a disreputable expert, i.e., Mr. McCullough."  (Op. Br. 4).  The court did not even challenge Mr. McCullough's credentials, much less agree that he is "disreputable," which clearly is not so.

### 2.    Mr. McCullough Utilized Proper Control Methodology

Bacardi does not and cannot fault Mr. McCullough for using the test-control group model, which concededly "is the preferred approach." (Ford Tr. 42).[10] Mr. McCullough used that accepted model when he tested the extent to which, if at all, Bacardi's use of the HAVANA CLUB trademark for its rum causes consumer deception. (McCullough Tr. 15-19, 27-28, 80-83, 118-22, 127-30).

Unable to fault Mr. McCullough's use of the accepted test-control group model, Bacardi devotes over two pages of its brief to quarrelling with his choice of SILVER CLUB as a control. (Op. Br. 14-16). However, even if Bacardi's criticism were well founded (which it is not), it would go to the weight and not to the admissibility of the survey. *See*, *e.g.*, *Gov't Employees Ins. Co.*, 77 U.S.P.Q.2d at 1845-48 (relying on a Ford survey despite criticism of control choice). Indeed, in the very case Bacardi cites, the survey was accepted in evidence despite criticism of plaintiff's control choice. *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, No. SACV04-725 CJC (Ex), 2006 WL 5187497, at *7 (C.D. Cal. Mar. 2, 2006) ("Any flaws in the survey may be elucidated on cross-examination, so that the finder of fact can appropriately adjust the weight it gives to the survey's results.").

In any event, Mr. Ford's criticism is not well founded. "[T]he 'best' control stimulus will excise or correct the part of the allegedly misleading/confusing communication and

---

[10]    *See Gov't Employees Ins. Co.*, 77 U.S.P.Q.2d at 1846 ("After asking both [test and control] groups a series of questions designed to measure the likelihood of confusion, [Mr. Ford] compared the degree of confusion [in the two groups]."); *Gary T. Ford*, *The Impact of the Daubert Decision on Survey Research Used in Litigation*, *Journal of Public Policy & Marketing* 249 (2005) (hereinafter "*Ford*, *Daubert*") ("If it is necessary to expose respondents to a stimulus and then ask questions, a control group ... should be used."), submitted as Graham Decl. Ex. B; *Diamond*, *Reference Manual On Scientific Evidence* at 257 ("The effect of the allegedly deceptive message is evaluated by comparing the responses made by the experimental group members with those of the control group members.").

leave the remainder of the stimulus unchanged." *Ford*, *Daubert* at 249, *citing Diamond*, *Reference Manual On Scientific Evidence*.  That is precisely what Mr. McCullough did when he replaced HAVANA CLUB with SILVER CLUB while leaving Bacardi's rum bottle otherwise unchanged.[11]

### 3.    Mr. McCullough Surveyed An Appropriate Sample Of The Proper Universe Of Respondents

Mr. McCullough chose to interview 411 prospective rum purchasers at malls in eight markets distributed throughout the country including Florida – and not in Florida alone.  As discussed *supra* at 8-9, Bacardi does not quarrel with Mr. McCullough's decision to survey a sample of 411 respondents in malls.  Mr. Ford says only that the survey should have been confined to Florida.  (Ford Tr. 21-22).  This criticism is based on his unfounded assumption that "there are no plans to have [the HAVANA CLUB] product distributed to people – to states outside of Florida."  (Ford Tr. 22).  Mr. McCullough chose the correct universe, explaining that "while the product is currently marketed in Florida, that there is the potential that it could be rolled out to the total U.S.  So, therefore, my relevant universe were people in the total U.S."

---

[11]    In criticizing Mr. McCullough's decision to use SILVER CLUB rather than a geographic name control such as KINGSTON CLUB, Mr. Ford noted Mr. McCullough's use of KINGSTON SELECT in a 1997 survey.  *See* Op. Br. 16.  However, as Mr. McCullough explained, the *brand awareness* survey that used KINGSTON SELECT and the instant survey of *consumer beliefs regarding the country of origin of Bacardi's rum* addressed "completely different situations."  (McCullough Tr. 11).  In Mr. McCullough's view, use of a geographic name control in the current survey "would have been completely inappropriate."  (Mr. McCullough Tr. 15-16).  Moreover, while focusing on one 1997 survey, Mr. Ford dismissed as irrelevant another 1997 survey that *did* utilize non-geographic controls in surveying *consumer beliefs regarding the country of origin of Bacardi's rum*.  (Ford Tr. 82-84).

(McCullough Tr. 21). ███████████████████████████████████████

███████████████████████████████████████████ [12]

Bacardi's failure in the wake of Pernod's lawsuit to make sales outside Florida (while continuing to promote the product nationwide on its website) does not detract from Mr. McCullough's informed and reasonable choice -- or support Mr. Ford's criticism. If Mr. McCullough had confined the survey to Florida, Bacardi no doubt would be faulting him for not conducting the survey nationwide where Bacardi expects to sell and continues to promote its product. In any event, the level of deception in Florida did not differ statistically from the survey as a whole and was in fact slightly higher. [13]

Even if a Florida universe were appropriate (which it is not), there is no merit to Bacardi's contention that a "proper Florida sample would have had to be conducted in both English and Spanish because ... 20.2% of Florida residents are of Hispanic decent." (Op. Br. 7). [14] Consistent with Bacardi's English-language product, marketing materials and website, Mr. McCullough surveyed "people who say they are likely to purchase rum in the next six

---

[12] Although Bacardi had distributed only 922 cases (8298 bottles) of HAVANA CLUB rum in 1995 and 1996 and none in 1997, the 1997 survey Mr. Ford chose to disregard was conducted in "mall locations ... geographically distributed through the nine census regions of the United States." (Hendrickson Decl. Ex. 1 at 2).

[13] Bacardi's reliance on *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 119 (3d Cir. 2004), is entirely misplaced. Although the plaintiff in that reverse confusion trademark infringement case needed to survey "[CNBEC's] customer base," it conducted the survey *outside* the area where "'[f]or the past 108 years, CNBEC and its predecessors in interest have offered retail banking services ... and not beyond'" (citation omitted). In *Vista Food Exch. v. Vistar Corp.*, No. 03-Cv-5203 DRHWDH, 2005 WL 2371958, at *6-7 (E.D.N.Y. Sept. 27, 2005), the survey was excluded because plaintiff failed to conduct it among "[defendant's] potential customers," conducted it in only one market where neither party sold its products, surveyed only 75 respondents, and failed to use a control product.

[14] Bacardi blurs two different survey concepts when it refers to a "sample" while addressing the propriety of the "universe" used in the McCullough survey. *See Diamond*, *Reference Manual On Scientific Evidence* at 239-44.

months who are English-speaking people, and that definition [of this universe] is very clearly spelled out [in my survey]."  (McCullough Tr. 232).  There is no evidence that the product is aimed at people who speak only Spanish.  Nor has Bacardi shown that "Florida residents ... of Hispanic decent" do not speak English well enough to buy a product with an English-language label or respond to an English-language survey.[15]

Mr. McCullough also appropriately surveyed consumers who said they were likely to purchase rum in the next six months.  As he testified, the "group you're going after – and ... should be going after are people likely to buy the product in the future."  (McCullough Tr. 64).  *See Paco Sport, Ltd.*, 86 F. Supp. 2d at 322 (crediting McCullough survey because a "survey must rely on responses of prospective purchasers of the products in question"); 6 *McCarthy* § 32:163, at 32-321 ("[A] survey is designed to prove the state of mind of a prospective purchaser."); *Novartis Consumer Health, Inc.*, 129 F. Supp. 2d at 364 ("survey ... administered ... to ... likely buyers of antacid products"); *Merisant Co. v. McNeil Nutritionals LLC*, 242 F.R.D. 315, 322 (E.D. Pa. 2007) (in "Lanham Act cases ... it is typical to survey prospective consumers").

That Mr. Ford supposedly is "unaware of any survey that did not require any actual product purchasers in the ending sample" (Op. Br. 7) speaks not to the propriety of Mr. McCullough's survey but to the unreliability of Mr. Ford's criticism.  In fact, Mr. Ford himself conducted a survey among "potential customers ... [namely] drivers who said that they were likely to consider purchasing or renewing their auto insurance policy within the next six months" in *Gov't Employees Ins. Co.*, 77 U.S.P.Q.2d at 1845 and n.10.  And he admitted that he

---

[15]     By contrast, Mr. McCullough conducted the 1997 *brand awareness* survey in English and Spanish because the survey sought to determine the attitudes of "Cubans currently living in the United States."  (Graham Decl. Ex. C at 5).

has no evidence that past and prospective purchasers of rum would have answered the questions differently. (Ford Tr. 28).

### 4.   "Blinding Procedures" Did Not Break Down

Without any record support whatever, Bacardi claims that double-blind conditions[16] "broke down" in the McCullough survey because the survey questioned a HAVANA CLUB rum group and a control group. (Op. Br. 9-10). Not even Mr. Ford's report supports Bacardi's speculation, perhaps because he has used this well-recognized methodology himself. *See Gov't Employees Ins. Co.*, 77 U.S.P.Q.2d at 1845-47 (discussing Mr. Ford's use of the test-control group model); *see also* McCullough Tr. 87-92, 190-97 (discussing the steps Mr. McCullough took to assure blind conditions). Further, in the case on which Bacardi relies, the Court denied a motion to exclude the survey with respect to the concepts the survey tested despite "numerous substantial flaws" because the "Eleventh Circuit has held that technical deficiencies in a survey presented in a Lanham Act action affect the weight to be accorded to the survey and not its admissibility." *Smith*, 537 F. Supp. 2d at 1334, 1322.

### 5.   Mr. McCullough Asked Appropriate Questions

Bacardi's objections to Mr. McCullough's questions are a classic example of improperly "focus[ing] strongly on the 'road not taken': Why did you not ask a different question?" 6 *McCarthy* § 32:178, at 32-366. As Mr. Ford testified:

> Q.   And you have not conducted a survey in this case using the methodology that you've recommended here?
>
> A.   That's correct.
>
> Q.   So you don't have any basis at this point to say whether or not it would have changed the results of the survey?

---

[16]   Double-blind conditions are intended to "ensure that 'both the interviewer and the respondent are blind to the sponsor of the survey and its purpose.'" *Smith v. Wal Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1330 (N.D. Ga. 2008).

> A.    I don't have any basis.   Just my experience in survey design.

Ford Tr. 73.  *See*, *e.g.*, *Tyco Indus., Inc.* 5 U.S.P.Q.2d at 1033 (rejecting criticisms of questions where defendant's expert failed to conduct survey and prove that alleged question defects "in fact affected the results in any significant way").   Moreover, each of Bacardi's criticisms is without merit.

Before being questioned about Bacardi's HAVANA CLUB rum or SILVER CLUB rum, respondents were instructed *inter alia*:  "I'd like you to look at this rum.  Please look at it as you would if you saw it in a store and were deciding whether to buy it."  (McCullough Tr. 98; Graham Decl. Ex. A at Ex. A at "White Page M1" "Alcoholic Beverage Survey Main Questionnaire").  After receiving these instructions, respondents were asked Question 2A.  *See, e.g.*, 6 *McCarthy* § 32:163, at 32-321 ("[Because] a survey is designed to prove the state of mind of a prospective purchaser ... the closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results.").

Bacardi faults Question 2A because it "begins 'Did the *Rum* you just looked at communicate to you ...'; thus focusing the attention of the respondent not on the mark HAVANA CLUB ... or even the labeling – but rather on the rum itself."  (Op. Br. 11; emphasis added by Bacardi).  Bacardi provides no evidence of how, if at all, a different question would have altered the survey results.  Mr. McCullough considered his question "unambiguous," utilizing the word "rum" in the question "[b]ecause that's the product [the respondents] just looked at." (McCullough Tr. 100-01).  Artificially focusing respondents on the HAVANA CLUB trademark or the label as Mr. Ford recommends would have been a departure from market conditions.

Prospective purchasers of Bacardi's HAVANA CLUB rum are buying rum, not the HAVANA CLUB trademark or the label on the bottle.

Further, by using the SILVER CLUB control, Mr. McCullough's survey measured the extent to which the HAVANA CLUB trademark on Bacardi's rum bottle misleads and confuses prospective rum buyers.  *See* McCullough Tr. 15-19; *Diamond*, *Reference Manual On Scientific Evidence* at 257 ("[I]f respondents who viewed the allegedly deceptive commercial respond differently than respondents who viewed the control commercial, *the difference cannot be the result of a leading question, because both groups received the same question.*") (emphasis added).  Despite this, Bacardi contends that the survey should have begun with "a couple of open-ended main message questions" after respondents viewed Bacardi's rum.  (Op. Br. 11).  There is no evidence that this would have changed the survey results.

Bacardi also quibbles that "Question 2A is so worded as to upwardly bias the number of consumers who say 'yes,'" citing Mr. Ford's view that a "better question" would have incorporated a "don't know" option in the question itself.  (Op Br. 11).  Again, Mr. Ford did not test his supposedly "better question."   And Question 2A was immediately preceded by instructions "For any of my questions, if you don't know or have no opinion, please just tell me so."  (Graham Decl. Ex. A at Ex. A at "White Page M1" "Alcoholic Beverage Survey Main Questionnaire").

Bacardi further claims that "respondents [who answered 'HAVANA CLUB' to Question 2B] (whom McCullough deems to be *confused* about the origin of the product) *may* well have been forced into guessing by [Question 2B]."  (Op. Br. 12) (emphasis added).  No evidence supports Bacardi's speculation.  In fact, *none* of the nine respondents designated as *confused* answered "HAVANA CLUB" to Question 2B.  (Graham Decl. Ex. A at Exhibit E).

Finally, stringing together a host of unsupported assumptions, Bacardi incorrectly maintains that Question 3A was "improper" (Op. Br. 12-14).   Mr. McCullough cogently explained why the question is "appropriate." (McCullough Tr. 104, 106-07).   And there is no evidence that the seven respondents Bacardi cites were confused.  (Op. Br. 14).  On the contrary, one respondent was coded as misled and the other six as neither misled nor confused.  (Graham Decl. Ex. A at Exhibit E).

### 6.      Mr. McCullough Accurately Reported The Survey Data

Bacardi incorrectly claims that Mr. McCullough miscoded as "misled or confused" two respondents (out of 411 respondents in the survey).  (Op. Br. 17).  In fact, there was no coding error.  Mr. McCullough clearly *distinguished* between respondents whose answers indicate they were "misled" as to the origin of the survey products and those whose answers indicate they were "confused" about the product's origin and characterized those two respondents as "confused."  (Graham Decl. Ex. A at 3 and Exhibit E).  He deliberately did *not* count as "misled" any "confused" respondents.  "[T]hey are separate calculations.  Misled is just misled.  Confused is separate....  Misled and confused are mutually exclusive.  You can't be in both.  You're in one or the other."  (McCullough Tr. 125, 127).

## II.      BACARDI MAY NOT SUBSTITUTE A DAUBERT MOTION FOR A SUMMARY JUDGMENT MOTION IT DID NOT BRING AND KNEW IT WOULD LOSE

Once Pernod brought this lawsuit, Bacardi and its experienced counsel must have known that Pernod would introduce a survey because surveys are effectively required in cases of this kind.  *See, e.g.*, *Int'l Telecharge, Inc. v. AT&T*, No. MJG-92-1722, 1995 U.S. Dist. LEXIS 21818, at *32 (D. Md.  Oct. 19, 1995) (plaintiff represented by Kelley, Drye & Warren submitted survey in false advertising case).  *See also Star Indus., Inc.*, 412 F.3d at 387-88 (Bacardi and its

current counsel submitted surveys in Lanham Act case to demonstrate the absence of consumer confusion).  Yet, Bacardi did not conduct a survey of its own.

Without a survey, Bacardi could not expect to prevail on a motion for summary judgment because at a minimum the McCullough survey would have raised a genuine dispute as to the deceptive nature of Bacardi's HAVANA CLUB rum.  *See E.T. Browne Drug Co.,* 538 F.3d at 197 (even plaintiff's flawed survey defeated defendant's summary judgment motion); *Classic Foods Int'l Corp.*, 2006 WL 5187497, at *1 (citing plaintiff's survey in denying defendant's summary judgment motion despite defendant's criticism of survey).

Instead of bringing a motion for summary judgment it was bound to lose, Bacardi has elected to try to keep from the jury the evidence that its Puerto Rican rum deceives consumers – just as its Bahamian rum did until Bacardi pulled it from the market after being sued.  The jury is entitled to consider that evidence.  Bacardi's motion should be denied.  *See Lentz* v. *Mason*, 32 F. Supp. 2d 733, 747 (D.N.J. 1999) (denying "what is essentially a dispositive motion 'disguised' as motion *in limine*").

## **CONCLUSION**

Unable to refute Mr. McCullough's findings, Bacardi is grasping at straws in an attempt to keep them from the jury Bacardi itself requested.  Bacardi's motion should be seen for what it is and, accordingly, denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *Pernod Ricard USA, LLC*

OF COUNSEL:

Vincent N. Palladino
Eric C. Hubbard
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020

October 14, 2008
2548342

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on October 20, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on October 20, 2008, upon the following in the manner indicated:

### BY HAND & E-MAIL

Anne Shea Gaza, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801

### BY E-MAIL

Emily Johnson Henn, Esquire
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004

Michelle M. Graham, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
rsmith@mnat.com