## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------x
```

PERNOD RICARD USA, LLC                      :

        Plaintiff,                          :

    v.                                      :  C.A. No. 06-505-SLR

BACARDI U.S.A., INC.,                       :

        Defendant.                          :

```
---------------------------------------------------x
```

### OFFER OF PROOF BY DEFENDANT UNDER FED. R. EVID. 103(A)(2)

Defendant Bacardi U.S.A., Inc. ("Bacardi USA") hereby makes an offer of proof pursuant to Federal Rule of Evidence 103(a)(2), regarding certain testimonial evidence that would have been taken through Peter Szemenyei, CFO, Pernod Ricard USA, LLC. ("Pernod USA") and the documentary evidence in the exhibits referred to herein. [1]  This evidence is proffered in support of Bacardi USA's Third and Fourth Defenses. The Third Defense is that Pernod USA is not entitled to any relief, and the action must be dismissed, because Pernod USA, acting under the direction and control of its parent, Pernod Ricard, S.A. ("Pernod") is prosecuting this case in concert with, and to evade restrictions imposed upon, Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), a Cuban state enterprise, Havana Club Holding, S.A. ("HCH"), a joint venture owned by Pernod and Cuba, and Havana Club International S.A. ("HCI"), a sister subsidiary owned by Pernod that distributes HAVANA

---

[1]     Bacardi USA, through Mr. Szemenyei, would have introduced the following trial exhibits: DX 89, DX 121, DX 125, DX 126, and DX 128.

CLUB rum outside the United States. In so doing, Pernod USA is violating Section 211 of the Omnibus Consolidation and Emergency Supplemental Appropriations Act (Public Law No. 105-277, 112 Stat. 2681 (Oct. 21, 1998)) ("Section 211"), the Trading With the Enemy Act (as amended, 12 U.S.C. § 95a) ("TWEA"), the Cuban Liberty and Democratic Solidarity Act (Pub. L. No. 104-114, 110 Stat. 785 (1996)) (the "LIBERTAD Act"), and regulations of the Office of Foreign Assets Control, including the Cuban Assets Control Regulations (31 C.F.R. Part 515) (the "CACR"). The Fourth Defense is that this action is time-barred by the statute of limitations, estoppel, and laches. Certain of the proffered evidence is also relevant and competent to prove, or tend to prove, that the testimony of Messrs. Agdern and McCarthy that sales of Pernod USA's MALIBU product were somehow hurt by the sale of Bacardi's HAVANA CLUB rum in Florida was not credible or entitled to any weight, as the motive of Pernod USA in bringing this action was not to protect sales of MALIBU rum cordial, but rather to try to preserve or reserve alleged rights in the U.S. mark HAVANA CLUB rum for Pernod or its sister subsidiaries. The court at the Pretrial Conference indicated Bacardi would be allowed to make a proffer of evidence in support of the aforesaid affirmative defenses.[2] The proffered testimonial and documentary evidence is relevant and competent and should be admitted in this matter.[3]

I.     THE PROFFERED EVIDENCE ESTABLISHES PERNOD CONTROLS ALL THE "HAVANA CLUB" LITIGATION AND ITS INTERESTS AND THOSE OF PERNOD USA ARE THE SAME

Pernod, an international beverage and spirits corporation, owns and controls Pernod USA, which is the exclusive U.S. distributor of Pernod products. This ownership and

---

[2]  Prior to the close of trial Bacardi was directed to file its proffer as a memorandum marked as a court exhibit. Trial Transcript 476:11-477:1.

[3]  As this is a bench trial, the trial could be reopened for the limited purpose of reviewing this evidence, or, in the alternative, the Court could as a matter of law determine that the doctrine of issue preclusion or collateral estoppel is properly invoked.

control appears from its 2008-2009 annual report (DX 89)[4] and its website, www.pernod-ricard.com (DX 121). Pernod's interests and those of Pernod USA and its other subsidiaries are completely aligned with respect to the HAVANA CLUB brand name used by Bacardi USA in the United States. As demonstrated by its 2007.2008 annual report,[5] Pernod has controlled all the U.S. "Havana Club" litigation as well as the lobbying efforts by Pernod and Pernod USA in the United States to amend or repeal the statutes dealing with Cuban trade cited in Bacardi USA's Third Defense. In that report, Pernod's General Counsel states, "We have naturally continued to manage . . . the dispute with Bacardi concerning Havana Club" (DX 89 at 86.) Indeed, an entire subsection of the segment "Disputes Relating to Brands" on Pernod's website is devoted to the HAVANA CLUB brand. (DX 121).

Mr. Szemenyei, had Bacardi USA been allowed to call him as a witness, would have confirmed Pernod's control of Pernod USA and the alignment of their interests on Cuban issues, especially "HAVANA CLUB." He would have testified that Pernod USA succeeded to the U.S. spirits distribution business of Austin Nichols & Co., Inc. ("Austin Nichols"), a sister subsidiary of Pernod Ricard, in or about 2002. (DX 125.) [6] Mr. Szemenyei would have also testified that Austin Nichols had been in the spirit business in the United States prior to 1996 and knew or should have known of Bacardi's sales of HAVANA CLUB rum at least as early as 1996 and took no action to stop such use. *See* DX 128 (declaration establishing that Austin Nichols was aware of Bacardi's sale of HAVANA CLUB rum in 1996).

---

[4]     Citations to "DX ____" refer to Bacardi USA's trial exhibits marked for identification.

[5]     DX 89 is Pernod Ricard's 2007/2008 Annual Report.

[6]     DX 125 is a letter from David M. Mason to Brett G. Kappel, dated April 26, 2002, explaining Austin, Nichols & Co., Inc.'s adoption of the trade name Pernod Ricard USA.

Mr. Szemenyei would also have testified that Pernod owns and controls Pernod USA;[7] that Pernod USA, at Pernod's direction, has been lobbying the U.S. Congress to repeal Section 211, the CACR, and other U.S. laws and regulations pertaining to trade with Cuba; and that Pernod directed the filing of and controls the present litigation. Mark Orr, who directs the U.S. lobbying effort, is Vice President, North American Affairs, for Pernod USA. The chart below, prepared from DX 126,[8] illustrates Pernod's U.S lobbying activities on issues relating to Cuba:

**Pernod And Pernod USA's 2008 Lobbying On Cuban Legislation**

| Date | Client Name | Amount | Registrant Name | Contact Name & Title | Specific Lobbying Issue |
|------|-------------|--------|-----------------|----------------------|--------------------------|
| 1/13/09 | Pernod Ricard | $30,000.00 | Meyers And Associates | Fran Boyd (Senior Associate) | House/Senate Farm Bill; Judicial Powers Restoration Act; Free Trade With Cuba; Promoting American Ag and Medical Exports To Cuba Act; Promoting American Ag and Medical Exports To Cuba Act; Cuba Reconciliation Act |
| 1/15/09 | Pernod Ricard | $180,000.00 | Pernod Ricard | Mark Orr (Vice President North American Affairs) | Section 211 of the 1998 Omnibus Appropriations Act; U.S. Trade Policy (No Specific Legislation); H.R. 217; H.R. 624; H.R. 1306/§749; H.R. 2819/§1673/§1806 |
| 1/15/09 | Pernod Ricard USA | $20,000.00 | Steptoe & Johnson LP | Douglas S. Kantor* | Issues relating to trademarks on domestic and imported goods |

---

[7]    The tie between Pernod and Pernod USA is also supported by deposition testimony from Mark Barabell which was read into the record at trial. Trial Transcript 314:13-16.

[8]    DX 126 is a collection of lobbying reports from the Senate Office of Public Records' Lobbying Disclosure Act Database, *available at* http://soprweb.senate.gov/index.cfm?event=choosefields.

| Date | Client Name | Amount | Registrant Name | Contact Name & Title | Specific Lobbying Issue |
|------|-------------|--------|-----------------|----------------------|-------------------------|
| | | | | *Supervising Atty: James Barnette (Partner) | |
| 1/16/09 | Pernod Ricard USA | $30,000.00 | Nelson Mullins Riley & Scarborough LLP | Jesse S. Emerson* *Supervising Atty: Butler Derrick, Jr. (Partner – Attorney) | §1806 Judicial Powers Restoration Act; HR1908 and §1145; Patent Reform Act Of 2007; §749 and HR1306, to modify the prohibition in recognition by U.S. of certain rights relating to marks, trade names or commercial names |
| 1/16/09 | Pernod Ricard | $50,000.00 | Ogilvy Governmental Relations | Stewart Hall (Managing Director) | §749/H.R. 1306, A bill to modify the prohibition on recognition by United States courts of certain rights relating to certain marks, trade names, or commercial names. Issues related to the restoration of judicial authority under repeal of Section 211 of the FY1999 Omnibus Appropriations Bill |

### A.   Pernod USA Is Precluded From Relitigating The Issues Establishing Bacardi USA's Defenses Or Contesting Facts Previously Established

The doctrine of issue preclusion or collateral estoppel, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94 (1980) (citing *Montana v. U.S.,* 440 U.S. 147, 153 (1979)). Issue preclusion protects a defendant from the burden of relitigating an issue that has been fully and fairly tried in a prior action and decided against the plaintiff or its privies. *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855 F. Supp. 673, 677 (D. Del. 1994). In the Third Circuit,

the preclusion doctrine applies where the following four elements are met: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 629 (D. Del. 2008) (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (quotation marks omitted)).

### 1.    The Uncontestable Facts

Judge Scheindlin, in *Havana Club Holding, S.A. v. Galleon, S.A*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd*, 203 F.3d 116 (2d Cir. 2000) (DX 117),[9] in a fully and fairly contested adjudication, determined certain facts to be true, which were set out in Exhibit 2.A of the Joint Pre-Trial Order.  This Court should determine Pernod USA is collaterally estopped from contesting any of them.  The facts established are as follows:

1.    Jose Arechabala, S.A. ("JASA") was a Cuban corporation that succeeded to the family rum business formed by Jose Arechabala in Cuba in the 1800s.

2.    JASA used the mark HAVANA CLUB on rum JASA produced in Cuba and Puerto Rico and sold in the United States prior to 1960.

3.    JASA established common law ownership rights in the HAVANA CLUB trademark in the United States and also registered the HAVANA CLUB mark for "rum" in the United States Patent and Trademark Office.

4.    Bacardi & Company Limited ("Bacardi") has been given the express consent to use the name and mark HAVANA CLUB on rum in the United States by the *bona fide* successors-in-interest to JASA in agreements executed on or about April 1997.

---

9    DX 117 is a copy of Judge Scheindlin's decision.

5.     On October 13, 1960, pursuant to Cuban Law No. 890, all the Cuban assets of JASA, including the HAVANA CLUB trademark, were confiscated by the Cuban revolutionary regime.

6.     The Cuban law also purported to confiscate JASA's rights in the HAVANA CLUB mark in the United States.  Cuban Law No. 890 recited that compensation would be provided to persons and companies like JASA whose Cuban assets had been seized, but no such compensation was ever paid to JASA or its shareholders.

7.     Cubaexport is a Cuban company and is designated as a Cuban national as defined by 31 C.F.R. § 515.305.

8.     In 1976, the trademark HAVANA CLUB for "rum" was registered in the United States Patent and Trademark Office (the "Cubaexport U.S. Registration") by Cubaexport.

9.     On October 29, 1993, Cubaexport entered into an agreement purportedly transferring the U.S. rights to the HAVANA CLUB trademark and the Cubaexport U.S. Registration to another Cuban state enterprise, which, on or about November 22, 1993, attempted to transfer the aforesaid mark and the Cubaexport U.S. Registration to HCH, an affiliate of Pernod Ricard.

10.     Neither Pernod Ricard nor any of its affiliates, including Pernod USA, has ever received the express consent of JASA, its shareholders, or its successors, to use of the mark HAVANA CLUB in the United States or anywhere else.

11.     Those agreements purporting to transfer the U.S. rights to the HAVANA CLUB mark and the Cubaexport U.S. Registration were held to be null and void under the § 515.201(b)(1) of the CACRs, and these attempted assignments of said HAVANA CLUB mark

and the Cubaexport U.S. Registration were held to be invalid and of no force and effect and *void ab initio*.

12.     The Bacardi rum business is presently owned by the descendants of Don Facundo Bacardi, who over a century ago in Cuba originated a recipe and process for the distillation and manufacture of rum that has been sold ever since under the BACARDI name and mark.

13.     Bacardi USA distributes rums produced in Puerto Rico under the authority of Bacardi. Bacardi is the successor to JASA, which sold its rights to the HAVANA CLUB brand in the United States to Bacardi.

### 2.     Pernod USA Is Precluded From Relitigating Issues Relating To U.S. Ownership Of The HAVANA CLUB Mark

Pernod USA is also precluded from relitigating the issues determined by the Partial Judgment entered by Judge Scheindlin in the *Havana Club* case on October 20, 1997. (DX 130.)[10] That Partial Judgment decreed, in pertinent part:

- Neither **Havana** Rums & Liquors, S.A., Havana Club Holding, S.A., nor its licensee, Havana Club International, S.A., ever obtained any rights to the HAVANA CLUB mark in the United States by transfer. (DX 130 at ¶ 6.)

- Plaintiffs Havana Club Holding, S.A., and Havana Club International, S.A., have no rights to the registered trademark HAVANA CLUB in the United States. (DX 130 at ¶ 7.)

- Any rights that Havana Club Holding, S.A. may have had, may have, or claims to have had in the registration of the HAVANA CLUB trademark (U.S. Reg. No. 1,031,651), from forever until today are hereby canceled. (DX 130 at ¶ 8.)

The Cuban Asset Control Regulations ("CACR") on which this decision was based remain in effect, and bar Cubaexport, a Cuban entity, which had obtained U.S. Registration No. 1,031,651 of the trademark HAVANA CLUB from transferring any alleged

---

10      DX 130 is a copy of the Partial Judgment entered by Judge Scheindlin, dated October 20, 1997.

rights or claims to that mark to Pernod or its subsidiaries. In the meantime, the United States Patent and Trademark Office has issued an order canceling Cubaexport's U.S. Registration.

Should the Court find the above facts established as a matter of law and that Pernod USA is collaterally estopped from denying any of the above, the Court should accordingly enter judgment against Pernod USA because the present action represents an attempt to secure a transaction in violation of the laws and regulations set out in the Third Defense.

## II.   FEDERAL   STATUTES,   REGULATIONS   AND   LEGISLATIVE   FACTS JUDICIALLY NOTICED

Federal courts are required to take judicial notice of the statutes and regulations of the United States, including those cited in Bacardi USA's Third Defense. *See Feder v. Evans-Feder*, 63 F.3d 217, 225 (3d Cir. 1995). Alternatively, the Court may take judicial notice of the embargo on trade with Cuba and the fact that no Cuban rum has been sold here for decades and related political facts under Federal Rule of Evidence 201. *Cf. Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*, 457 F. Supp. 1090, 1101 (S.D.N.Y. 1978).

In 1963, the United States imposed an embargo on Cuba under section 5(b) of the TWEA. The embargo is currently implemented by means of the CACR. In 1996, Congress enacted the LIBERTAD Act, Pub.L. No. 104-114, 110 Stat 785 (1996), which, among other things, codified into law the regulations implementing the embargo. *See* 22 U.S.C. § 6032(h). The Secretary of the Treasury has the authority to administer the Cuban embargo, which he has delegated to the Office of Foreign Assets Control ("OFAC"). *See* 31 C.F.R. § 515.802. The CACR prohibit a broad range of transactions involving property in which a Cuban entity has an interest. In particular, 31 C.F.R. § 515.201(b) provides in pertinent part:

(b) All of the following transactions are prohibited, except as specifically authorized by the Secretary of Treasury (or any person, agency, or instrumentality designated by him) by means of regulations, rulings, instructions, licenses, or otherwise, if such transactions involve property in which [Cuba], or any national

thereof, has at any time on or since the effective date of this section had any interest of any nature whatsoever, direct or indirect:

(1) All dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property or evidence of indebtedness of ownership of property to any person subject to the jurisdiction of the United States.

Section 515.201(c) also prohibits "[a]ny transactions for the purpose or which has the effect of evading or avoiding any of the prohibitions set forth in . . . this section." Only general and specific licenses provide for exceptions to the prohibitions of § 515.201(b) and (c) noted above.

The CACR further provide the following definitions:

- "The phrase *transactions which involve property in which a designated foreign country, or any national thereof, has any interest of any nature whatsoever, direct or indirect*, includes, but not by way of limitation . . . (a) Any payment or transfer to such designated foreign country or national thereof." 31 C.F.R. § 515.309.

- ". . . . [T]he terms *property* and *property interest* or *property interests* shall include . . . trademarks, . . . and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent." 31 C.F.R. § 515.311.

- "The term *interest* when used with respect to *property* shall mean any interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 515.312.

- "The term *specially designated national* shall mean . . . (2) Any person who on or since [July 8, 1963] has acted for or on the behalf of the Government or authorities exercising control over a designate foreign country." 31 C.F.R. § 515.306.

/s/ Anne Shea Gaza

Of Counsel:
William R. Golden, Jr.
Mark S. Gregory
Matthew Marcotte
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212) 808-7800

William J. Wade (#704)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
wade@rlf.com
gaza@rlf.com
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
  *Attorneys for Defendant*
  *Bacardi U.S.A., Inc.*

Eugene D. Gulland
Oscar M. Garibaldi
Emily Johnson Henn
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Dated: March 30, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2009, I caused to be served by **hand delivery and e-mail** the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801

I hereby certify that on March 30, 2009, I caused the foregoing document to be sent via **e-mail** to the following non-registered participants:

Herbert F. Schwartz, Esquire
Vincent N. Palladino, Esquire
Pablo D. Hendler, Esquire
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036

*/s/ Anne Shea Gaza*
Anne Shea Gaza (#4093)
gaza@rlf.com