## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| PERNOD RICARD USA, LLC | : | |
| Plaintiff, | : | C.A. No. 06-505-SLR |
| v. | : | |
| BACARDI U.S.A., INC., | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### DEFENDANT BACARDI U.S.A., INC.'S
### OPENING POST-TRIAL BRIEF ON ISSUES
### FOR WHICH IT BEARS THE BURDEN OF PROOF

Of Counsel:
William R. Golden, Jr.
Mark S. Gregory
Matthew D. Marcotte
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

Dated: June 3, 2009

William J. Wade (#704)
wade@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
  *Attorneys for Defendant*
  *Bacardi U.S.A., Inc.*

RLF1-3401812-1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

RECORDS FACTS AND PROFFER.................................................................................. 1

I.     PERNOD USA IS ACTING IN CONCERT WITH, AND AT THE
       BEHEST OF, ITS CORPORATE PARENT IN THE CONDUCT
       OF THIS LITIGATION............................................................................................. 1

II.    BACARDI USA FIRST SOLD RUM UNDER THE HAVANA
       CLUB TRADEMARK IN THE UNITED STATES IN 1995 AND
       PERNOD USA'S AFFILIATES WERE AWARE OF SUCH USE .................................... 7

ARGUMENT ...................................................................................................................... 7

I.     THE ISSUES DETERMINED AGAINST HCH AND HCI IN THE
       PRIOR HAVANA CLUB CASE ARE BINDING AGAINST PERNOD USA .................. 7

II.    PERNOD USA'S ACT OF PROSECUTING THIS LITIGATION AGAINST
       BACARDI USA VIOLATES FEDERAL LAW GOVERNING RELATIONS
       WITH, AND ACTIVITIES FOR THE BENEFIT OF, CUBA .......................................... 10

       A.     Section 211 Prohibits Pernod USA From Exercising Even
              Indirect Rights to The HAVANA CLUB Mark........................................... 11

       B.     The Cuban Assets Control Regulations Prohibit Pernod USA
              From Obtaining Injunctive Relief................................................................ 13

III.   THE PERNOD USA CLAIM AGAINST BACARDI USA IS TIME-
       BARRED BY THE STATUTE OF LIMITATIONS AND THE
       EQUITABLE DOCTRINE OF LACHES ................................................................... 17

IV.    BACARDI USA'S USE OF THE HAVANA CLUB MARK IS
       STATUTORILY EXEMPT FROM ANY CLAIM OF LIABILITY
       FOR BEING GEOGRAPHICALLY MISDESCRIPTIVE ............................................. 20

CONCLUSION.................................................................................................................. 21

RLF1-3401814-1

# TABLE OF AUTHORITIES

## CASES

*Allen v. McCurry,*
449 U.S. 90 (1980) ............................................................................................7

*Baglin v. Cusenier Co.,*
221 U.S. 580 (1911)..........................................................................................12

*Conopco, Inc. v. Campbell Soup Co.,*
95 F.3d 187 (2d Cir. 1996)...........................................................................17, 18

*Cuban Cigar Brands N.V. v. Upmann Int'l Inc.,*
457 F. Supp. 1090 (S.D.N.Y. 1978), *aff'd*, 607 F.2d 995 (2d Cir. 1979) .............12

*Empresa Cubana del Tabaco v. Culbro,*
399 F.3d 462 (2d Cir. 2005)..............................................................................14

*Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport
v. U.S. Dept. of Treasury,*
No. 06-1692, 2009 WL 806279 (D.D.C. Mar. 30, 2009) .....................................15

*F. Palicio y Compania, S.A. v. Brush,*
256 F. Supp. 481 (S.D.N.Y. 1966), *aff'd*, 375 F.2d 1011 (2d Cir. 1967), *cert.
denied*, 389 U.S. 830 (1967) .............................................................................12

*Ford Motor Co. v. Catalanotte,*
342 F.3d 543 (6th Cir. 2003) .............................................................................17

*Golden State Bottling Co. v. NLRB,*
414 U.S. 168 (1973)............................................................................................9

*Havana Club Holding S.A. v. Buffett,*
No. 91116,754, 2003 WL 1423117 (TTAB Mar. 13, 2003)..................................13

*Havana Club Holding, S.A. v. Galleon, S.A.,*
62 F. Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd*, 203 F.3d 116 (2d Cir. 2000) ............5

*Havana Club Holding, S.A. v. Galleon, S.A.,*
203 F.3d 116 (2d Cir. 2000)...............................................................................16

*Holmberg v. Armbrecht,*
327 U.S. 392 (1946)...........................................................................................18

RLF1-3401817-1

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,*
585 F. Supp. 2d 623 (D. Del. 2008)..................................................................................8

*Island Insteel Sys., Inc. v. Waters,*
296 F.3d 200 (3d Cir. 2002)..........................................................................................17

*Maltina Corp. v. Cawy Bottling Co.,*
462 F.2d 1021 (5th Cir.), *cert. denied,* 409 U.S. 1060 (1972)...........................................12

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha,*
855 F. Supp. 673 (D. Del. 1994)......................................................................................8

*Montana v. U.S.,*
440 U.S. 147 (1979)........................................................................................................7

*Republic of Iraq v. First Nat'l City Bank,*
241 F. Supp. 567 (S.D.N.Y. 1965), *aff'd,* 353 F.2d 47 (2d Cir. 1965), *cert. denied,*
382 U.S. 1027 (1966).....................................................................................................12

*State v. Edwards,*
918 A.2d 1008 (Conn. App. Ct.), *cert. denied,* 926 A.2d 666 (Conn. 2007) ......................2

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het
Kapitaal Van Saybolt Int'l B.V. v. Schreiber,*
327 F.3d 173 (2d Cir. 2003)........................................................................................7, 8

*Taylor v. Sturgell,*
128 S. Ct. 2161 (2008)....................................................................................................9

*Wilson v. Garcia,*
471 U.S. 261 (1985).......................................................................................................17

## STATUTES & OTHER AUTHORITIES

12 U.S.C. § 95a.................................................................................................11, 20, 21

22 U.S.C. §§6021-6091 ....................................................................................................13

31 C.F.R. § 515...........................................................................................................*passim*

10 *Del. C.* § 8106 ...........................................................................................................16

## INTRODUCTION

Defendant Bacardi U.S.A., Inc. ("Bacardi USA") respectfully submits this Opening Post-Trial Brief on the issues for which it bears the burden of proof. Those issues are denominated as the Third, Fourth, Fifth, Sixth and Seventh Affirmative Defenses in Bacardi USA's Partial Answer to the Complaint dated September 22, 2006. (D.I. 14). Since Bacardi USA has met its burden of proof with respect to the Fourth, Fifth, and Seventh Affirmative Defenses, Plaintiff Pernod Ricard USA, LLC ("Pernod USA") is precluded from recovering any relief in this action because: (a) its claim is barred by the statute of limitations; (b) its claim is barred by the equitable doctrines of laches, waiver and/or estoppel; and (c) Bacardi USA's use of the subject mark is statutorily exempt from the Lanham Act proscription against geographically misdescriptive trademarks because Bacardi's own usage of the HAVANA CLUB mark dates back to 1995, and its predecessor's use of the same mark dates back to the 1930s.[1] The Third Affirmative Defense (that federal law prohibits Pernod USA's suit) is established by the evidence submitted by Bacardi USA in its March 30, 2009 Offer of Proof. (D.I. 102). Judgment, should, therefore, be entered in favor of Bacardi USA.

## RECORD FACTS AND PROFFER

## I.   PERNOD USA IS ACTING IN CONCERT WITH, AND AT THE BEHEST OF, ITS CORPORATE PARENT IN THE CONDUCT OF THIS LITIGATION

Bacardi USA's March 30, 2009 Offer of Proof under Federal Rule of Evidence 103(a)(2) (the "Offer Of Proof") contains considerable evidence, if it were admitted, establishing that Pernod USA is acting under the direction and control of its corporate parent, Pernod Ricard, S.A. ("Pernod") in bringing and litigating this action. (D.I. 102). To complete the record, in this

---

[1] The Court's dismissal of Count II of Pernod USA's complaint subsequent to the filing of the Answer rendered the Sixth Affirmative Defense moot, as it related to the claim pled in that count. Accordingly, Bacardi USA is no longer pursuing that affirmative defense.

brief Bacardi USA argues the law that it believes demonstrates the relevance of the Offer Of Proof. Wright & Graham, *Federal Practice & Procedure* 2d § 5040 (the court cannot determine the admissibility and probative value without the substance of the proffered evidence); *State v. Edwards*, 918 A.2d 1008, 1022 (Conn. App. Ct.), *cert. denied,* 926 A.2d 666 (Conn. 2007) (one purpose of offer of proof is to inform the court of the legal theory under which the evidence is admissible).[2]   Based on the evidence set forth in the Offer of Proof, there is ample   record evidence to establish Bacardi USA's Third Affirmative Defense (federal law prohibits this suit).

Pernod is an international beverage and spirits corporation. (DTX 89, DTX 121). Pernod USA is the exclusive U.S. distributor of Pernod products and is a wholly owned subsidiary of Pernod. (Tr. 29:21-24.) The proof and scope of Pernod's ownership and control of Pernod USA is revealed in several ways, including in Pernod's 2007-2008 annual report (DTX 89) and Pernod's website, www.pernod-ricard.com (DTX 121).   Pernod's interests and the interests of Pernod USA and its other subsidiaries are completely aligned with respect to the HAVANA CLUB brand name used by Bacardi USA in the United States.  Pernod's 2007-2008 annual report concedes, even brags, that Pernod has controlled all of the U.S. "Havana Club" litigation as well as the lobbying efforts by Pernod and Pernod USA in the United States aimed to cause the relevant statutes dealing with Cuban trade to be amended or repealed. (DTX 89). The chart below, which summarizes information from DTX 126,[3] illustrates Pernod and Pernod USA's coordinated U.S lobbying activities on issues relating to Cuba:

---

[2]      On the final day of trial, Bacardi USA's counsel was prepared to make an oral proffer, and the Court specifically allowed the filing of the written Offer of Proof to be marked as a Court exhibit. (Tr. 476:11-477:2). The Offer Of Proof contains the following trial exhibits that have not yet been admitted in evidence—DTX 89, DTX 117, DTX 121, DTX 125, DTX 126, DTX 128, and DTX 130.

[3]      DTX 126 is a collection of lobbying reports from the Senate Office of Public Records' Lobbying Disclosure Act Database, *available at* http://soprweb.senate.gov/index.cfm?event=choosefields.

2

**Pernod And Pernod USA's 2008 Lobbying On Cuban Legislation**

| Date | Client Name | Amount | Registrant Name | Contact Name & Title | Specific Lobbying Issue |
|---|---|---|---|---|---|
| 1/13/09 | Pernod Ricard | $30,000.00 | Meyers And Associates | Fran Boyd (Senior Associate) | House/Senate Farm Bill; Judicial Powers Restoration Act; Free Trade With Cuba; Promoting American Ag and Medical Exports To Cuba Act; Promoting American Ag and Medical Exports To Cuba Act; Cuba Reconciliation Act |
| 1/15/09 | Pernod Ricard | $180,000.00 | Pernod Ricard | Mark Orr (Vice President North American Affairs) | Section 211 of the 1998 Omnibus Appropriations Act; U.S. Trade Policy (No Specific Legislation);  H.R. 217; H.R. 624; H.R. 1306/§749; H.R. 2819/§1673/§1806 |
| 1/15/09 | Pernod Ricard USA | $20,000.00 | Steptoe & Johnson LP | Douglas S. Kantor*  *Supervising Atty: James Barnette (Partner) | Issues relating to trademarks on domestic and imported goods |
| 1/16/09 | Pernod Ricard USA | $30,000.00 | Nelson Mullins Riley & Scarborough LLP | Jesse S. Emerson*  *Supervising Atty: Butler Derrick, Jr. (Partner – Attorney) | §1806 Judicial Powers Restoration Act; HR1908 and §1145; Patent Reform Act Of 2007; §749 and HR1306, to modify the prohibition in recognition by U.S. of certain rights relating to marks, trade names or commercial names |
| 1/16/09 | Pernod Ricard | $50,000.00 | Ogilvy Governmental Relations | Stewart Hall (Managing Director) | §749/H.R. 1306, A bill to modify the prohibition on recognition by United States courts of certain rights relating to certain |

3

RLF1-3401812-1

| Date | Client Name | Amount | Registrant Name | Contact Name & Title | Specific Lobbying Issue |
|---|---|---|---|---|---|
| | | | | | marks, trade names, or commercial names. Issues related to the restoration of judicial authority under repeal of Section 211 of the FY1999 Omnibus Appropriations Bill |

Pernod's 2007-2008 annual report also includes a statement by Pernod's General Counsel that "We have naturally continued to manage . . . the dispute with Bacardi concerning Havana Club." (DTX 89 at 86). Further, an entire subsection of the segment "Disputes Relating to Brands" on Pernod's website is devoted to the HAVANA CLUB brand. (DTX 121). These admissions from Pernod conclusively demonstrate that Pernod, not Pernod USA, is the driving force behind all litigation relating to the HAVANA CLUB brand, including the current litigation.

In addition to those Pernod admissions, as Bacardi USA also established in its Offer Of Proof, if it had been given the opportunity to do so, it would have called Peter Szemenyei, Pernod USA's Chief Financial Officer, to further confirm Mark Barabell's testimony showing the direct and substantial linkage between Pernod and Pernod USA (Tr. 314:13-16), and to expressly testify about the alignment of their interests on Cuban issues, especially those relating to the "HAVANA CLUB" brand. Further evidence corroborating Pernod's control of Pernod USA submitted in the Offer of Proof is an April 26, 2002 letter from David M. Mason to Brett G. Kappel revealing Austin, Nichols & Co., Inc.'s adoption of the trade name Pernod Ricard USA and that Pernod USA succeeded to the U.S. spirits distribution business of Austin Nichols & Co., Inc. ("Austin Nichols"), a sister subsidiary of Pernod, in or about 2002. (DTX 125). Accordingly, Pernod USA is a successor-in-interest to Austin Nichols, and is bound by its knowledge.

4

The proof Bacardi USA included in its Offer Of Proof also shows that Pernod USA, at Pernod's direction, has been lobbying the U.S. Congress to repeal or relax a variety of U.S. laws and regulations pertaining to trade with Cuba, including those discussed below which bar Pernod USA's claims in this action, as shown in the chart reproduced above. Mark Orr, the individual who directs the extensive U.S. lobbying effort for Pernod on these issues, is Vice President, North American Affairs, for Pernod USA.

The significance of the close and controlling relationship between Pernod and Pernod USA is that the following facts established by *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd*, 203 F.3d 116 (2d Cir. 2000) ("the HAVANA CLUB Case") (DTX 117), a fully and fairly contested adjudication in which Judge Scheindlin made certain determinations, are binding on Pernod USA. *See* Argument Part I, below. Those determinations of fact include:

a.   Jose Arechabala, S.A. ("JASA") was a Cuban corporation that succeeded to the family rum business formed by Jose Arechabala in Cuba in the 1800s.

b.   JASA used the mark HAVANA CLUB on rum JASA produced in Cuba and Puerto Rico and sold in the United States prior to 1960.

c.   JASA established common law ownership rights in the HAVANA CLUB trademark in the United States and also registered the HAVANA CLUB mark for "rum" in the United States Patent and Trademark Office.

d.   Bacardi & Company Limited ("Bacardi") has been given the express consent to use the name and mark HAVANA CLUB on rum in the United States by the bona fide successors-in-interest to JASA by virtue of agreements executed in or about April 1997.

e.   On October 13, 1960, pursuant to Cuban Law No. 890, all Cuban assets belonging to JASA, including the HAVANA CLUB trademark, were confiscated by the Cuban revolutionary regime.

f.   The Cuban law also purported to confiscate JASA's rights in the HAVANA CLUB mark in the United States. Cuban Law No. 890 recited that compensation would be provided to persons and companies, like JASA,

5

whose Cuban assets had been seized, but no such compensation was ever paid to JASA or its shareholders.

g.    Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport") is a Cuban state enterprise and is designated as a Cuban national as defined by 31 C.F.R. § 515.305.

h.    In 1976, Cubaexport registered the trademark HAVANA CLUB for "rum" in the United States Patent and Trademark Office (the "Cubaexport U.S. Registration").

i.    On October 29, 1993, Cubaexport entered into an agreement purportedly transferring the U.S. rights to the HAVANA CLUB trademark and the Cubaexport U.S. Registration to another Cuban state enterprise, which, in turn, on or about November 22, 1993, attempted to transfer the aforesaid mark and the Cubaexport U.S. Registration to Havana Club Holding, S.A. ("HCH"), an affiliate of Pernod Ricard that is jointly-owned by Pernod and Cuba.

j.    Neither Pernod Ricard nor any of its affiliates, including Pernod USA, has ever received the express consent of JASA, its shareholders, or its successors, to use of the mark HAVANA CLUB in the United States or anywhere else.

k.    The agreements purporting to transfer the U.S. rights to the HAVANA CLUB mark and the Cubaexport U.S. Registration to HCH are null and void under the § 515.201(b)(1) of the CACRs, and the attempted assignments of said HAVANA CLUB mark and the Cubaexport U.S. Registration to HCH were held to be invalid and of no force and effect and void *ab initio*.

l.    The Bacardi rum business is presently owned by the descendants of Don Facundo Bacardi, who over a century ago in Cuba originated a recipe and process for the distillation and manufacture of rum that has been sold ever since under the BACARDI name and mark.

m.    Bacardi USA distributes rums produced in Puerto Rico under the authority of Bacardi.  Bacardi is the successor to JASA, which sold its rights to the HAVANA CLUB brand in the United States to Bacardi.

n.    Neither HCH nor its licensee, Havana Club International, S.A. ("HCI"), a sister corporation of Pernod USA, ever obtained any rights to the HAVANA CLUB mark in the United States by transfer.  (DTX 130 at ¶ 6).

o.    Neither HCH nor HCI have any rights to the registered trademark HAVANA CLUB in the United States.  (DTX 130 at ¶ 7).

6

II.     **BACARDI USA FIRST SOLD RUM UNDER THE HAVANA CLUB TRADEMARK IN THE UNITED STATES IN 1995 AND PERNOD USA'S AFFILIATES WERE AWARE OF SUCH USE**

The unrebutted proof at trial is that Bacardi introduced a HAVANA CLUB rum product (DTX 91 and JTX 2) to the United States market in the mid-1990s. (Tr. 242:20-24; 248:22-249:25). In addition, as Ramon Archebala testified, JASA, Bacardi's predecessor in interest, sold rum under the HAVANA CLUB mark in the United States prior to the confiscation of substantially all of JASA's assets by the Cuban government in 1960. (Tr. Sealed Vol. B 5:24-6:9, DTX 117). The HAVANA CLUB rum sold by JASA was made both in Cuba and in Puerto Rico. (DTX 87, DTX 117, DTX 120, Tr. 410:16-413:3). These products were offered for public sale. The public sale of these products provided Pernod USA and its predecessors with constructive notice of Bacardi's usage of the HAVANA CLUB brand for rum produced outside of Cuba.

**ARGUMENT**

I.      **THE ISSUES DETERMINED AGAINST HCH AND HCI IN THE PRIOR HAVANA CLUB CASE ARE BINDING AGAINST PERNOD USA**

Pernod USA has repeatedly asserted that the facts determined in the prior HAVANA CLUB Case have no bearing on the present case and cannot be treated as established as against it. As discussed below, these facts have more than just a bearing on the present case; they are dispositive of it, as they establish Bacardi's Third Affirmative Defense in this case. With respect to the question of whether those facts may be treated as established against Pernod USA, under the doctrine of issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. U.S.*, 440 U.S. 147, 153 (1979)); *Stichting Ter Behartiging Van de Belangen Van*

*Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 184 (2d Cir. 2003) ("The doctrines of collateral estoppel in general, and of privity in particular, are shaped by fundamental notions of due process.").

Issue preclusion protects a defendant from the burden of relitigating an issue that has been fully and fairly tried in a prior action and decided against the plaintiff or its privies. *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855 F. Supp. 673, 677 (D. Del. 1994). In the Third Circuit, the preclusion doctrine applies where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 629 (D. Del. 2008) (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (quotation marks omitted)).

Here, all four factors for applying issue preclusion to the facts established in the prior HAVANA CLUB Case are met. The limited factual findings set forth above are drawn directly from the opinions and judgments entered by Judge Scheindlin in the prior HAVANA CLUB Case, and were thus actually adjudicated in that case. A review of the opinions is more than sufficient to show that the adjudicated issues were fiercely and extensively litigated in that case — which went on for a number of years and was extremely contentious — and that those factual issues were necessary to those decisions. Pernod USA has placed all its eggs in one basket—claiming that it was not "represented" in the prior action. This is not the case.

While it is true that Pernod USA was not itself one of the parties in the HAVANA CLUB Case, there is no requirement in the law that principles of issue preclusion only apply if the party in the second action was actually present in or a party to the first case. To the contrary,

8

as long as there is privity between Pernod USA and a party to the prior case, the Court can bind

Pernod USA on the grounds that it has in effect already had its day in court. *Taylor v. Sturgell*,

128 S.Ct. 2161, 2172 (2008).

   The close relationship that exists here suffices to bind Pernod USA inasmuch as

Pernod USA is closely affiliated with the corporations which  previously litigated with Bacardi

regarding Bacardi's sales of a HAVANA CLUB rum product in the United States.  Significantly,

it is not necessary that the close relationship be in place at the time of the first lawsuit.  *See*

*Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 179 (1973) (successor-in-interest bound by

result in prior litigation).  Indeed, the Supreme Court's decision last year in *Taylor* contemplates

the importance of applying claim preclusion principles in a situation just like this one:

> [A] party bound by a judgment may not avoid its preclusive
> force by relitigating through a proxy.  Preclusion is thus in
> order when a person who did not participate in a litigation
> later brings suit as the designated representative of a person
> who was a party to the prior adjudication.  And although
> our decisions have not addressed the issue directly, it also
> seems clear that preclusion is appropriate when a nonparty
> later brings suit as an agent for a party who is bound by a
> judgment.

*Taylor*, 128 S.Ct. at 2173 (internal citation omitted).

   Here, Pernod USA's interests were plainly represented in the prior action.  As

demonstrated above, Pernod USA is a subsidiary of Pernod and is fully aligned in interest with

Pernod with respect to the HAVANA CLUB brand in the United States.  HCH and HCI are

corporate entities organized under foreign law, which, as the testimony established in the prior

Havana Club Case, are the products of an agreement known as the Convenio Associativo (the

"Convenio").  The Convenio is an agreement between Pernod and the Cuban government,

purporting to allow for the global exploitation of the HAVANA CLUB brand for rum.  HCH and

HCI were created as joint ventures between Pernod and the Cuban government to this end—

HCH to own the trademark HAVANA CLUB and HCI to handle distribution of HAVANA CLUB rum worldwide.   They are plainly in privity with Pernod, which owns a substantial interest in both companies and which appoints members of their respective boards, and Pernod is plainly in privity with Pernod USA.  Accordingly, those facts deemed to be established against HCH and HCI in the prior HAVANA CLUB Case can be treated as established against Pernod USA in this case.   As discussed in greater detail below, once these facts are treated as established, a number of Bacardi's affirmative defenses are established as a matter of law.

## II.      PERNOD USA'S ACT OF PROSECUTING THIS LITIGATION AGAINST BACARDI USA VIOLATES FEDERAL LAW GOVERNING RELATIONS WITH, AND ACTIVITIES FOR THE BENEFIT OF, CUBA

Bacardi USA's Third Affirmative Defense is that this action is barred as a result of various federal laws governing the relationship between the United States and Cuba and the rights to property seized or expropriated by the Cuban government.   The essence of Bacardi USA's Third Affirmative Defense is that Pernod USA is prohibited from enjoining Bacardi USA's use of the HAVANA CLUB mark because such an injunction, if granted, would constitute an impermissible transfer of property in which a Cuban entity has an interest, in violation of the statutory and regulatory scheme governing the embargo on trade with Cuba.   The evidence adduced at trial and through Bacardi USA's Offer Of Proof more than meets the burden of proving that this litigation is nothing more than an effort to shield the HAVANA CLUB brand name for potential use by Pernod and its Cuban partners.   Such an effort is barred by federal law. The appropriate conclusion for the Court to draw from the evidence is that Pernod USA is prosecuting this case in concert with, and as part of an effort to evade restrictions imposed upon, Pernod's Cuban partners:  Cubaexport, HCH, and HCI.   The evidence conclusively establishes the validity of Bacardi USA's Third Defense:

Plaintiff is not entitled to any relief, and the action must be
dismissed, because plaintiff is seeking to prosecute this
case in concert with and to promote the interests of
Cubaexport and Havana Club Holding, S.A., contrary to
Section 211 of [the] Omnibus Consolidation and
Emergency Supplemental Appropriations Act (Public Law
No. 105-277, 112 Stat. 2681 (Oct. 21, 1998)), the Trading
with the Enemy Act (as amended, 12 U.S.C. § 95a), the
Cuban Liberty and Democratic Solidarity Act (Pub. L. No.
104-114, 110 Stat. 785 (1996)), and regulations of the
Office of Foreign Assets Control, including the Cuban
Asset Control Regulations (31 C.F.R. § 515).

A.    **Section 211 Prohibits Pernod USA From Exercising
Even Indirect Rights to The HAVANA CLUB Mark**

Under Section 211 of the Omnibus Consolidation and Emergency Supplemental

Appropriations Act (Public Law No. 105-277, 112 Stat. 2681 (Oct. 21, 1998)) ("Section 211"),

no Court may recognize, enforce, or otherwise validate any assertion by any party other than

Jose Archebala, S.A. or Bacardi, as its successor-in-interest, of rights in the trademark

HAVANA CLUB. This provision serves to prohibit Pernod USA from taking any action which

is designed to exclude Bacardi USA from using the mark in the United States under the guise of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.* Section 211 states:

[N]o transaction or payment shall be authorized or
approved pursuant to section 515.527 of title 31 ... with
respect to a mark, trade name, or commercial name that is
the same as or substantially similar to a mark, trade name,
or commercial name that was used in connection with a
business or assets that were confiscated unless the original
owner of the mark, trade name, or commercial name, or the
*bona fide* successor-in-interest has expressly consented.

Whenever a foreign government has tried to expropriate a U.S. trademark without

compensation to its original owner, federal courts have uniformly held that the original owner of

the confiscated mark and its bona fide successors-in-interest maintain their ownership of the

expropriated mark in the United States, regardless of whether it arguably had geographic

11

significance. *See e g , Baglin v Cusenier Co* , 221 U.S. 580, 595-97 (1911) (monks' continued ownership in "chartreuse" mark after forced out of France recognized because product was made with same formula); *Maltina Corp v Cawy Bottling Co* , 462 F.2d 1021, 1025 (5th Cir.), *cert denied*, 409 U.S. 1060 (1972); *Cuban Cigar Brands N V v Upmann Int'l Inc* , 457 F. Supp. 1090, 1101 (S.D.N.Y. 1978), *aff'd*, 607 F.2d 995 (2d Cir. 1979) (denying geographical misdescriptiveness claim). *See also F Palicio y Compania, S A v Brush*, 256 F. Supp. 481, 488 (S.D.N.Y. 1966) ("[a]cts of intervention and nationalization which do not afford compensation to the persons adversely affected are undoubtedly inconsistent with our policy and laws"), *aff'd*, 375 F.2d 1011 (2d Cir. 1967), *cert. denied*, 389 U.S. 830 (1967); *Republic of Iraq v First Nat'l City Bank*, 241 F. Supp. 567, 574 (S.D.N.Y. 1965) (same), *aff'd*, 353 F.2d 47 (2d Cir. 1965), *cert denied*, 382 U.S. 1027 (1966). By mandating that the express consent of the original owner of a confiscated mark or its successors be the necessary and only precondition for recognition of U.S. trademark rights in that mark, Congress impliedly adopted this precedent when it amended the Lanham Act through its adoption of Section 211.

Section 211 mandates that the Court enter judgment for Bacardi USA on Pernod USA's claim under § 43(a) of the Lanham Act since it is indisputable, given the established proof, that: (a) HAVANA CLUB is the same or substantially similar to the HAVANA CLUB trademark previously used by JASA; (b) the assets owned by JASA in connection with that mark were confiscated by the Cuban Government without payment of any compensation whatsoever to JASA; and (c) Pernod USA has not received the express consent of JASA, its shareholders, or *bona fide* successors to use the trademark "HAVANA CLUB." Indeed, each and every one of these facts is established not only by the decision in the prior Havana Club Case, but was the subject of testimony and evidence at trial in this action. Ramon Arechebala and other witnesses

12

testified about the sale of HAVANA CLUB by JASA prior to the expropriation of JASA's property and that there was no compensation paid for that expropriation. (Tr. Vol B, Sealed 5:24-6:9, 8:6-16). No evidence of JASA consenting to Pernod USA's use of the mark has been suggested, much less offered.

Section 211 specifically directs courts, agencies, and any other governmental entity to prohibit any transfer of property in the HAVANA CLUB mark under these circumstances, and several courts have held that this is the case. *See, e.g, Havana Club Holding S.A. v. Buffett*, No. 91116,754, 2003 WL 1423117, at *4-5 (TTAB Mar. 13, 2003) (finding that since entity's claim rested on transfer of property rights in HAVANA CLUB mark to it in violation of Section 211, claim was invalid). Bacardi USA respectfully submits that this Court should not allow such a transfer to take place by finding in Bacardi USA's favor and denying Pernod USA's request that Bacardi USA be enjoined from using the HAVANA CLUB trademark that is its rightful property.

**B.     The Cuban Assets Control Regulations Prohibit Pernod USA From Obtaining Injunctive Relief**

It a well known fact, and one that the Court may take judicial notice of, that the United States imposed an embargo on Cuba in 1963 under section 5(b) of the Trading with the Enemy Act of 1917 ("TWEA"), as amended, 12 U.S.C. § 95a. The embargo is currently implemented by means of the Cuban Assets Control Regulations ("CACR"), as amended, 31 C.F.R. § 515. In addition, the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, Public Law 104-114 (March 12, 1996), 22 U.S.C. §§ 6021-6091, codifies regulations implementing the embargo on Cuba and provides that the embargo may not be lifted until a democratic regime is established in Cuba and a mechanism for resolving claims for unlawful

expropriations is established. The circumstances warranting the lifting of the embargo have not been certified by the President.

The injunctive relief sought by Pernod USA is precluded by the general prohibitions of § 515.201(b) of the CACR.[4] The CACR prohibit a broad range of transactions involving property [i.e., the HAVANA CLUB mark] in which a Cuban entity has or had an interest. In particular, 31 C.F.R. § 515.201(b) of the CACR prohibits certain "transactions" involving "property in which . . . [Cuba], or any national thereof, has at any time on or since the effective date of this section had any interest in the nature whatsoever, direct or indirect." The word "transfer" is broadly defined in the regulations to include "any . . . act . . . the effect of which is to create, surrender, release, transfer or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to property." Id. at § 515.310. "Property" or "property interest" is defined to include a trademark. Id. at § 515.311. And a "transaction" involving property may be implemented through "operation of law" in the form of a judgment or injunction. Empresa Cubana del Tabaco v. Culbro, 399 F.3d 462, 474 (2d Cir. 2005) (holding an "acquisition of property through operation of law is covered by § 515.201(b)"). Section 515.201(c) of the CACR also prohibits "[a]ny transactions for the purpose or which has the effect of evading or avoiding any of the prohibitions set forth in paragraphs (a) and (b) of this section." Only general and specific licenses provide for exceptions to the prohibitions of § 515.201(b) and (c) noted above. Pernod USA did not introduce any evidence suggesting the existence of such a license.

---

[4] Although the Complaint does request damages in addition to injunctive relief, Pernod USA offered no evidence of money damages, nor has it given any indication that it seeks any form of relief other than injunctive relief. Morever, even if Pernod USA were seeking monetary damages, such a claim would fail.

It has been established as between the parties that Bacardi is the rightful successor to the assets seized from JASA and has the exclusive right to use the HAVANA CLUB trademark in the United States. Those facts are established through the decision in the prior HAVANA CLUB Case. Pernod USA's claim in this case plainly represents a collateral attack on Bacardi's ownership rights in the HAVANA CLUB mark — it is little more than a patently transparent attempt to evade or avoid the CACR prohibition on any affiliate of HCH or HCI claiming any U.S. rights to the HAVANA CLUB mark by means of a transaction, including a legal suit. The HAVANA CLUB mark is U.S. property in which a Cuban entity, Cubaexport, claims an interest. That interest is demonstrated by Cubaexport's pending challenge to decisions that prevented it from renewing the Cubaexport U.S. Registration.[5]

Allowing Pernod USA to obtain an injunction against Bacardi's use of the name HAVANA CLUB for a rum product under § 43(a) of the Lanham Act would circumvent the prohibitions of CACR § 515.201(b) by allowing Pernod USA, an affiliate of HCH and HCI— Cuban nationals—to prevent Bacardi from making use of the HAVANA CLUB trademark that rightfully belongs to it in an effort to preserve that trademark for use by an entity related to the same Cuban government that originally confiscated the mark. It is not necessary that the surrendered or altered rights in the HAVANA CLUB mark be actually transferred to another party in order for the CACR prohibition to apply. Any injunction prohibiting a non-Cuban company like Bacardi from using the HAVANA CLUB mark on a non-Cuban rum would represent the indirect transfer of property rights to a Cuban national (HCH) which would, in

---

[5] The United States District Court for the District of Columbia has now ruled that the government was entitled to summary judgment on Cubaexport's claims that the failure to renew the Cubaexport U.S. Registration violated rights of Cubaexport. *Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport v. U.S. Dept. of Treasury,* No. 06-1692, 2009 WL 806279 (D.D.C. Mar. 30, 2009). Cubaexport's attorneys in that case (not coincidentally, the same attorneys representing Pernod USA in this case), have filed a notice of appeal.

RLF1-3401812-1

effect, create a vested property right in the U.S. HAVANA CLUB mark for as long as the embargo is in effect—namely, the right to prevent Bacardi or any other U.S. entity from selling HAVANA CLUB rum in the United States. Since there is no applicable general license, no specific OFAC license, and no other exception to the general prohibitions of § 515.201(b), such an injunction, *i e*, a transfer by judicial decree, is prohibited as an effort to evade the proscriptions of the CACR.

The practical consequences that would ensue if Pernod USA were allowed to prevail under such a theory demonstrates the reasons why federal law governing transactions involving Cuba must also be considered. Allowing Pernod USA's claim would invite business arrangements like Cubaexport's venture with Pernod, which Congress expressly intended to prevent — namely, ventures between Cuba and third-country nationals who "seek[] to profit from illegally confiscated property." *Havana Club Holding, S.A. v. Galleon, S.A* , 203 F.3d 116, 125 (2d Cir. 2000) (citing H. Rep. No. 104-202, at 25 (1996)). Such a precedent would eviscerate the very purpose of the CACR Section 211 and the LIBERTAD Act, which seek to "preserve such [confiscated] property until such time as the rightful owners can successfully assert their claim." *See id.* (discussing the legislative history of those statutes and acts). Bacardi, as the successor to JASA, is that rightful owner, and has a valid claim to continue using the HAVANA CLUB mark, particularly on a rum such as this one, which is produced in accordance with the same Arechebala family formula used to craft the HAVANA CLUB rum produced in Cuba and Puerto Rico since before 1960.

The present action represents an inappropriate attempt to secure a transaction in violation of the laws and regulations set out in the Third Affirmative Defense, which would be realized if judgment is entered for Pernod USA and injunction were entered barring Bacardi

USA's use of the HAVANA CLUB mark for rum. Accordingly, Pernod USA's attempts to circumvent the CACR and other federal law cannot be countenanced and judgment should instead enter in favor of Bacardi USA.

## III.   THE PERNOD USA CLAIM AGAINST BACARDI USA IS TIME-BARRED BY THE STATUTE OF LIMITATIONS AND THE EQUITABLE DOCTRINE OF LACHES

Assuming, for argument's sake only, that Pernod USA had colorable grounds for believing that Bacardi USA's use of the HAVANA CLUB mark is geographically misdescriptive, which it is not, Pernod USA sat on its alleged rights for so long that they are no longer legally enforceable. These facts are the basis for Bacardi USA's Fourth and Fifth Affirmative Defenses—that the complaint is barred by the statute of limitation and the doctrine of laches. Pernod USA's delay in seeking relief, though it (or its predecessors) knew or should have known that Bacardi was making use of the name in the 1990s, provides an independent basis for rejecting the claim.

The Lanham Act does not set forth an express statute of limitations. Therefore, to assess the timeliness of a suit, courts have looked to the state statute of limitations applicable to causes of action that are most analogous to a Section 43(a) claim. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *superceded by statute on other grounds,* Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5114, 369, 377-80 (2004), *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 206 (3d Cir. 2002); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). For Lanham Act claims, the most analogous state causes of action are for unfair competition and fraud. *Conopco*, 95 F.3d at 191-92. In applying the analogous state statute of limitations, courts use principles developed as the equitable doctrine of laches to evaluate the timeliness of a suit brought pursuant to the Lanham Act. *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th

Cir. 2003); *Conopco*, 95 F.3d at 193 (citing 15 U.S.C. § 1069, providing that laches principles are applicable to Lanham Act proceedings). "[L]aches is not ... a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (quotation marks and citation omitted). In Delaware, a three year limitation period governs those claims. 10 *Del. C.* § 8106.

        The three year limitations period set for analogous claims in Delaware sets a period of reasonable diligence and creates a presumption that the laches defense applies to bar a claim once that period of time has passed. *Conopco*, 95 F.3d at 191. Unchallenged proof at trial reveals that Bacardi USA made its first use of the HAVANA CLUB mark on rum not manufactured in Cuba in 1995, that is, more than a decade before Pernod USA brought this lawsuit.[6] (DTX 91, JTX 2, Tr. 242:20-24; 248:22-249:25). These sales were made publicly, and Pernod USA or its predecessors knew or should have know of them, but took no action against those sales. Because of the extraordinarily long delay in bringing this case after Bacardi USA's first sale of non-Cuban rum under the name and mark HAVANA CLUB, the burden shifts to Pernod USA to show that it acted with reasonable diligence in bringing this action. While Pernod USA has sought to avoid this defense because it was not technically formed until after Bacardi USA's first sales, it has not offered any explanation, nor can it, for the failure of its corporate alter-egos and affiliates, with whom its fate is necessarily bound, to bring suit upon learning of Bacardi USA's use of the HAVANA CLUB mark in 1995 or within three years thereafter. For the reasons discussed above, given the privity relationship between Pernod USA and Pernod, the lack of diligence exercised by Pernod and its various affiliates in failing to take

---

[6] Bacardi USA's predecessor, JASA, produced non-Cuban rum under the name and mark HAVANA CLUB prior to 1960 without any protest from any entity whatsoever. (DTX 87, DTX 117, DTX 120, Tr. Sealed Vol. B 5:24-6:9, Tr. 410:16-413:3).

action must be attributed to Pernod USA. Accordingly, given the delay in bringing suit until long after the three year period from Bacardi USA's first sale of non-Cuban rum under the HAVANA CLUB name ended, Pernod USA's claim under the Lanham Act is untimely.

In addition to showing that there has been an undue delay, Bacardi USA has clearly established that it has been prejudiced by the delay:

> A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be "inequitable" in light of the delay in bringing that claim. Specifically, prejudice ensues when a "defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed."

*Conopco*, 95 F.3d at 192 (quoting *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 808 n.17 (8th Cir. 1979) (quoting *Tobacco Workers Int'l. Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 957-59 (4th Cir. 1971)), *cert. denied*, 446 U.S. 913 (1980)). The evidence admitted at trial demonstrates that Bacardi undertook considerable efforts to bring its HAVANA CLUB to market and to establish a favorable brand identity for the product. The marketing efforts included developing attractive and evocative packaging, and an effective marketing plan that used, among other things, a website (www.havanaclubus.com), promotional items and the sponsorship of various promotional events. *See generally* Tr. 241:22-274:24 (testimony of J. Gomez discussing marketing efforts), Tr. 405:17-413:3 (testimony of P. Neal discussing marketing efforts). Those efforts were all undertaken and the associated costs incurred as part of the production re-launch years after Bacardi USA's first use of the mark – a use that Pernod USA and its affiliates were quite aware of.

Simply put, all of the elements of the statute of limitations and laches defenses are present in this case. Pernod USA's claim is time-barred, and judgment should be entered for Bacardi USA on its affirmative defenses.

19

IV.   **BACARDI USA'S USE OF THE HAVANA CLUB MARK IS STATUTORILY EXEMPT FROM ANY CLAIM OF LIABILITY FOR BEING GEOGRAPHICALLY MISDESCRIPTIVE**

Assuming *arguendo* that the mark HAVANA CLUB had geographic significance,[7] Bacardi USA is statutorily exempt from liability for any claims that its use of HAVANA CLUB on rum produced outside of Cuba is geographically misdescriptive because its first use occurred prior to January 1, 1996. The Lanham Act specifically provides that:

> No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it –
>
> (a)  Consists of or comprises ... a geographic indication which, when used on or in connection with wines or spirits, identifies a place other than the origin of the goods and is first used on or in connection with wines or spirits by the applicant on or after one year after the date on which the WTO Agreement (as defined in section 3501(9) of Title 19) enters into force with respect to the United States.

15 U.S.C. § 1052(a). In the Statement of Administrative Authority, H.R. REP. NO. 103-316, at 269 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4294, Congress, in accordance with the requirements of the World Trade Association's Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPs"), explicitly stated, with respect to wine and spirits brands, "[a]ny trademark containing a geographic indication that is currently registered or *in use*, or that is registered or *in use* [before January 1, 1996] *may be maintained*" (emphasis added). This Congressional policy determination was incorporated in the amendment to 15 U.S.C. § 1052(a), which "grandfathers" the registration and usage of marks that might have geographic

---

[7] Bacardi USA does not address this issue in this brief, as this is an issue on which Pernod USA bears the burden of proof. Bacardi USA does not believe Pernod USA has met its burden of proof with respect to that claim.

significance, such as HAVANA CLUB, provided that the marks were used prior to January 1, 1996.

As discussed above, Bacardi and its predecessors made use of the HAVANA CLUB mark for rum long before January 1, 1996. Not only did Bacardi sell rum under the HAVANA CLUB mark in 1995, sales of which generated the prior HAVANA CLUB Case brought by affiliates of Pernod USA, but also, JASA, Bacardi's predecessor-in-interest, sold rum under the mark HAVANA CLUB which was produced in both Cuba and Puerto Rico, prior to 1960. As a result of the undisputed fact of these sales and the "grandfather clause" of 15 U.S.C. § 1052(a), Pernod USA's § 43(a) geographical misdescriptiveness claim fails as a matter of law on the unchallenged evidence adduced at trial.

### CONCLUSION

For all of the foregoing reasons, Bacardi USA respectfully submits that the Court should find that Bacardi USA has met its burden of proof with respect to the Fourth, Fifth, and Seventh Affirmative Defenses; and Judgment should enter in favor of Bacardi USA.


Of Counsel:
William R. Golden, Jr.
Mark S. Gregory
Matthew D. Marcotte
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York  10178
(212) 808-7800

Dated:  June 3, 2009

William J. Wade (#704)
wade@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
    *Attorneys for Defendant*
    *Bacardi U.S.A., Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2009, I caused to be served by **hand delivery and e-mail** the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801

I hereby certify that on June 3, 2009, I caused the foregoing document to be sent via **e-mail** to the following non-registered participants:

Herbert F. Schwartz, Esquire
Vincent N. Palladino, Esquire
Pablo D. Hendler, Esquire
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036

Anne Shea Gaza (#4093)
gaza@rlf.com