IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERNOD RICARD USA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-505 (SLR) |
| | ) | |
| BACARDI U.S.A., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PERNOD RICARD USA, LLC'S ANSWERING POST-TRIAL BRIEF

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *Pernod Ricard USA, LLC*

OF COUNSEL:

Vincent N. Palladino
Eric R. Hubbard
Leslie M. Spencer
Margaret C. Lu
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036
(212) 596-9000

August 3, 2009

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .......................................................................................3

    A.    The Court Properly Excluded Evidence Regarding Trademark
           Ownership – Originally A Part Of Dismissed Count II ...................................3

    B.    Based On Bacardi's Representations, The Court Properly Excluded
           DTX 125 And Testimony Of Two Pernod USA Executives ..........................5

    C.    Bacardi Failed To Introduce Other Evidence It Now Relies Upon ................6

    D.    The Evidence Established That Pernod USA Could Not Have
           Brought Its Lanham Act Claim Until After Bacardi Had Launched
           Its Puerto Rican HAVANA CLUB Rum In August 2006 ..............................7

ARGUMENT ............................................................................................................9

    I.    BACARDI DID NOT PROVE ITS THIRD AFFIRMATIVE DEFENSE ..............9

        A.    Bacardi Provided No Evidence At Trial To Support Its Third
               Affirmative Defense.....................................................................................10

        B.    Bacardi May Not Rely On Its Offer Of Proof In Lieu Of Trial
               Evidence.......................................................................................................11

        C.    Bacardi Cannot Make Up For A Lack Of Evidence With An
               Unpleaded And Unproven Collateral Estoppel Defense................................13

        D.    Bacardi's Third Affirmative Defense Fails As A Matter of Law ..................16

    II.    BACARDI DID NOT PROVE ITS STATUTE OF LIMITATIONS AND
          LACHES DEFENSES ............................................................................................23

    III.    BACARDI DID NOT PROVE ITS SEVENTH AFFIRMATIVE
          DEFENSE...............................................................................................................26

CONCLUSION.......................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Baglin v. Cusenier Co.,
   221 U.S. 580 (1911)......................................................................................................18

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,
   402 U.S. 313 (1971)......................................................................................................12

Cuban Cigar Brand N.V. v. Upmann Int'l Inc.,
   457 F. Supp. 1090 (S.D.N.Y. 1978)............................................................................18

Digene Corp. v. Ventana Med. Sys., Inc.,
   484 F. Supp. 2d 274 (D. Del. 2007)......................................................................13, 14

E.E.O.C. v. Great Atl. & Pac. Tea Co.,
   735 F.2d 69 (3d Cir. 1984).............................................................................................8

Empressa Cubana del Tabaco v. Culbro Corp.,
   399 F.3d 462 (2d Cir. 2005)........................................................................................20

F. Palicio y Compania, S.A. v. Brush,
   256 F. Supp. 481 (S.D.N.Y. 1966)..............................................................................18

Fairbank's Capital Corp. v. Milligan,
   234 Fed. Appx. 21 (3d Cir. 2007).................................................................................13

Ford v. Temple Hosp.,
   790 F.2d 342 (3d Cir. 1986).........................................................................................12

Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics,
   859 F. Supp. 1521 (S.D.N.Y. 1994)............................................................................22

Gruber v. Price Waterhouse,
   911 F.2d 960 (3d Cir. 1990)...........................................................................................8

Hank Thorp, Inc. v. Minilite, Inc.,
   474 F. Supp. 228 (D. Del. 1979)..................................................................................12

Havana Club Holding S.A. v. Buffett,
   No. Opp. 91116754, 2003 WL 1423117 (T.T.A.B. Mar. 13, 2003).........................18

Havana Club Holding, S.A. v. Galleon, S.A.,
   62 F. Supp. 2d 1085 (S.D.N.Y. 1999)................................................................. passim

Havana Club Holding, S.A. v. Galleon, S.A.
   203 F.3d 116 (2d Cir. 2000)................................................................................. passim

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    516 F. Supp. 2d 324 (D. Del. 2007) .......................................................................13

*Huber v. Taylor*,
    532 F.3d 237 (3d Cir. 2008)..........................................................................13, 14

*Maltina Corp. v. Cawy Bottling Co.*,
    462 F.2d 1021 (5th Cir. 1972) ...............................................................................18

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    C.A. No. 98-80-SLR, 2004 WL 2980734 (D. Del. Dec. 17, 2004) ........................13

*Old Charter Distillery Co. v. Cont'l Distilling Corp.*,
    174 F. Supp. 312 (D. Del. 1959) ............................................................................12

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
    143 F.3d 800 (3d Cir. 1998)...................................................................................12

*Republic of Iraq v. First Nat'l City Bank*,
    241 F. Supp. 567 (S.D.N.Y. 1965) .........................................................................18

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
    453 F. Supp. 2d 834 (D. Del. 2006).................................................................. passim

*Taylor v. Sturgell*,
    128 S. Ct. 2161 (2008) ...........................................................................................14

*Teaching Co. v. Unapix Entm't*,
    87 F. Supp. 2d 567 (E.D. Va. 2000) ......................................................................22

*Thomas v. Independence Twp.*,
    463 F.3d 285 (3d Cir. 2006)......................................................................................8

*Viking Theatre Corp. v. Paramount Film Distrib. Corp.*,
    320 F.2d 285 (3d Cir. 1963)....................................................................................11

*W.L. Gore & Assocs., Inc. v. Totes Inc.*,
    788 F. Supp. 800 (D. Del. 1992).............................................................................22

STATUTES

10 Del. C. § 8106 ...........................................................................................................21

15 U.S.C. § 1052(a) .......................................................................................................24

15 U.S.C. § 1125(a) .................................................................................................. passim

50 U.S.C. App. § 1 *et seq.*............................................................................................16

Omnibus Consolidation and Emergency Supplemental Appropriations Act (Public Law
    No. 105-277, 112 Stat. 2681 (Oct. 21, 1998)) ................................................................ passim


OTHER AUTHORITIES

31 C.F.R. § 515, subpt. B ...........................................................................................16

31 C.F.R. § 515.201 ...........................................................................................19, 20

31 C.F.R. § 515.317 ...........................................................................................16

31 C.F.R. § 515.527 ...........................................................................................16, 17

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
    § 1278 (3d ed. 2004) ...........................................................................................12

2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
    § 14:40 (4th ed. 2008)...........................................................................................25

1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE
    § 103.20[1] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 2009)................................10

Fed. R. Civ. P. 8(c) ...........................................................................................12

Fed. R. Evid. 103(a)(2) ...........................................................................................10

Judge Sue L. Robinson, Briefing Guidelines in Patent Cases, at III(d)(i) (D. Del. rev.
    Dec. 16, 2008)...........................................................................................9

## <u>INTRODUCTION</u>

Bacardi U.S.A., Inc.'s ("Bacardi") opening post-trial brief confirms that Bacardi has no defense to Pernod Ricard USA, LLC's ("Pernod USA") claim that Bacardi's use of HAVANA CLUB misrepresents the geographic origin of its Puerto Rican rum in violation of the Lanham Act. Bacardi devotes more than three quarters of its brief to a Third Affirmative Defense, which is founded on facts that were not admitted (and indeed not even offered) into evidence, much less proven, and on fundamental misinterpretations of the law. According to Bacardi, this defense turns on Bacardi's alleged ownership of the HAVANA CLUB trademark. But Bacardi succeeded in dismissing Pernod USA's trademark ownership claim – original Count II – and thereafter blocked discovery on that issue. Accordingly, at the February 18, 2009 Pretrial Conference, the Court properly excluded evidence regarding that claim. Nevertheless, Bacardi now seeks to rely on this evidence to support its defense.

Bacardi pretends that material presented for the first time after trial in a so-called "offer of proof" had been admitted at trial. Even if such unadmitted material were part of the evidentiary record, it would be woefully insufficient to show that: (1) Pernod USA "is seeking to prosecute this case in concert with and to promote the interests of Cubaexport and Havana Club Holding, S.A." in violation of the irrelevant statutes cited in the Third Affirmative Defense; or (2) Pernod USA can be bound by facts concerning trademark ownership that were allegedly found in another case (*Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd*, 203 F.3d 116 (2d Cir. 2000) (the "New York Case")) – where Pernod USA was not a party.

Wholly apart from Bacardi's failure of proof, the irrelevant legislation and regulations relied on in the Third Affirmative Defense in no way excuse Bacardi's continued

deception of consumers in violation of Lanham Act § 43(a)'s prohibition on false designation of the geographic origin its Puerto Rican HAVANA CLUB rum product.

Similarly unfounded are Bacardi's statute of limitations and laches defenses, in which Bacardi claims that although Pernod USA filed this action seven days after Bacardi launched its Puerto Rican HAVANA CLUB rum, the company somehow "sat on its alleged rights for so long that they are no longer legally enforceable."  Bacardi can pursue these defenses only by eliding over the fact that its 2006 Puerto Rican HAVANA CLUB rum product is admittedly different from the 1995 Bahamian HAVANA CLUB rum product that was on the market only until 1996, and that neither Pernod USA nor its supposed predecessor-in-interest Austin Nichols & Company ("Austin Nichols") marketed a rum that competed with Bacardi's Bahamian HAVANA CLUB rum.

Bacardi's Seventh Affirmative Defense of supposed statutory exemption is also without merit.  This defense is based on the unproven (and unprovable) premise that Bacardi's conduct began in 1995, rather than in 2006 when Bacardi launched the product that is the subject of this action.  The defense also fails as a matter of law because the Lanham Act provision on which Bacardi relies – Section 2(a) – concerns the registration of trademarks in the United States Patent and Trademark Office, not claims brought in Court pursuant to Lanham Act § 43(a).

Bacardi's arguments are not only unsupported in fact or law, they are not even remotely credible.  Pernod USA proved the elements of Count I, and nothing in Bacardi's opening post-trial brief establishes a defense to that Lanham Act § 43(a) claim.

## STATEMENT OF FACTS

**A.    The Court Properly Excluded Evidence Regarding Trademark
Ownership – Originally A Part of Dismissed Count II**

Pernod USA filed this action on August 15, 2006, asserting two counts under

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a):  Count I alleged that defendant Bacardi

falsely represents that Havana or Cuba is the geographic origin of its Puerto Rican HAVANA

CLUB rum:

> Bacardi U.S.A.'s use of HAVANA CLUB for a rum not produced in Cuba
> and Bacardi U.S.A.'s statements that its HAVANA CLUB is the rum that
> was made in Cuba and sold in the United States before 1960 are false and
> misleading representations concerning the geographic origin of Bacardi
> U.S.A.'s rum.  (D.I. 1 at 5, ¶ 21).

Count II alleged that Bacardi falsely asserts that it owns the HAVANA CLUB trademark:

> Bacardi U.S.A.'s statement that it owns the rights to the HAVANA CLUB
> trademark in the United States as successor to a company that marketed a
> Cuban HAVANA CLUB rum prior to 1960 is false.  (D.I. 1 at 6, ¶ 30).

On September 22, 2006, Bacardi moved to dismiss Count II, which would have

adjudicated the truth of Bacardi's trademark ownership claim.  (D.I. 12).  Bacardi's position was

that trademark ownership is entirely separate from Count I's claim of consumer deception arising

out of a false designation of geographic origin:

> The allegation of Count II that Bacardi USA falsely claimed to have
> trademark rights in the HAVANA CLUB mark fails to meet either of [the
> requirements of a Lanham Act claim].  Certainly the alleged claim of
> rights in the trademark is not a claim as to the "nature" of the rum sold
> under the mark, or as to the "characteristics, qualities or geographic
> origin" of the rum, or as to Bacardi USA's "commercial activities."  Nor
> was the alleged statement concerning Bacardi USA's rights in the mark
> made "on or in connection with any goods or services."  (D.I. 13 at 10).
>
> * * * *
>
> Pernod USA cannot breathe life into Count II by reincorporating the
> geographical misdescriptiveness element of Count I.  Consumer confusion
> about geographic origin is already covered by Count I . . . .  (D.I. 27 at 3).

Indeed, to support its motion to dismiss Count II, Bacardi asserted that Pernod USA was not the proper party to assert such a claim because it did not own the HAVANA CLUB trademark.  (D.I. 27 at 5).

Over Pernod USA's opposition, the Court granted Bacardi's motion and dismissed Count II stating that "[t]he 'good' for sale in commerce by defendant is rum, not the 'Havana Club' trademark."  Therefore, the Court concluded that Pernod USA had "failed to sufficiently allege in its count two the first element of a § 43(a) false advertising claim."  (D.I. 41 at 14-15). This result reflects a fundamental distinction recognized by the Court between Pernod USA's false designation of geographic origin claim and the question of trademark ownership.

Relying on the Court's dismissal of Count II, Bacardi blocked all discovery sought by Pernod USA concerning the trademark ownership issue.  For example, as recited by Pernod USA's counsel during the pretrial conference, Bacardi objected to Pernod USA's requests for documents concerning trademark issues:

> MR. HUBBARD:  I have a list of some of our requests that were objected to, your Honor.
>
> * * * *
>
> MR. HUBBARD:  All documents that support or refute Bacardi's claim of ownership of the HAVANA CLUB trademark.  All documents concerning communications with Jose Arechebala S.A., Jose Arechebala International Limited, or any member of the Arechebala family or their representatives concerning HAVANA CLUB rum, the Arechebala's HAVANA CLUB rum or the HAVANA CLUB trademark, including, without limitation, the alleged assignment of the HAVANA CLUB trademark to Bacardi.  We were told that we were not entitled to any documents responsive to that request.  All documents concerning consumer beliefs about the ownership of the HAVANA CLUB trademark.  All documents concerning Bacardi's claim of ownership to the HAVANA CLUB trademark, including, without limitation, documents  concerning John Gomez's statement on August 8th, 2006, that quote, "We own the rights to the brand HAVANA CLUB," and any other statements by John Gomez, Patricia Neal or any other Bacardi spokesperson concerning Bacardi's alleged ownership of the HAVANA CLUB trademark.  I mean, we sought documents, your Honor, and we

> were told that we could not have any, and now the very issue that we tried
> to discover, we understand they want to put evidence in on.  And passing
> the discovery, your Honor, when Count 2 was dismissed, we understood
> the trademark issues were no longer in the case.  (02/18/2009 Hr'g Tr.
> 22:13-23:13).

In spite of the Court's dismissal of Count II and Bacardi's denial of relevant

discovery, Bacardi proposed in the Pretrial Order to prove at trial numerous facts directed to its

alleged ownership of a HAVANA CLUB trademark in the U.S., and to admit into evidence

documents and testimony concerning those facts.  (D.I. 99, Ex. 2).  Pernod USA objected to

admission of those facts in its Pretrial Order submissions (D.I. 99), and the dispute was argued

and ruled on by the Court at the Pretrial Conference.  (02/18/2009 Hr'g Tr. 34:24-35:4).

The Court excluded evidence regarding Bacardi's "Issues of Fact Remaining to be

Litigated" Nos. 1-14 – which were directed to trademark ownership issue.  (*Id.*).  At the same

time, the Court authorized Bacardi to make an offer of proof with respect to those particular facts

to preserve its position on appeal:

> I will allow Bacardi to make a proffer of this evidence, these Facts 1
> through 14, so that if on appeal you feel as though relevant conduct was
> not permitted to be admitted and considered by the Court, I will certainly
> let you do that.  (02/18/2009 Hr'g Tr. 35:17-21).

At the close of trial, the Court reiterated that Bacardi could make an offer of proof

with respect to that excluded evidence.  (03/05/2009 Tr. 476:11-21).  The Court did not address

an offer of proof with respect to any other evidence, and Bacardi did not propose such an

expanded offer of proof.  On March 30, 2009, Bacardi submitted an offer of proof that included

trademark Facts 1-14 among other material.

**B.      Based On Bacardi's Representations, The Court Properly Excluded
         DTX 125 And Testimony Of Two Pernod USA Executives**

Also during the Pretrial Conference, the Court ruled that Pernod USA was not

required to produce its CEO, Paul Duffy, to testify at trial in light of Bacardi's representation that

his testimony would be offered solely to establish that Pernod Ricard S.A. owns Pernod USA. (02/18/2009 Hr'g Tr. 38:14-40:15).

Similarly, based upon Bacardi's representation that it sought testimony of Pernod USA's CFO Peter Szemeneyei to testify concerning a third party document (DTX 125) (02/18/Hr'g Tr. 39:5-10), the Court excluded DTX 125 and ruled that Pernod USA was not required to produce Mr. Szemeneyei to testify at trial:

> I find that whatever relevance it [DTX 125] has, the weight given to a document that grants a request to change the name of a Political Action Committee from one corporation to another truly has so very little weight in my mind about whether the companies are truly successors in interest that I am not going to let the document in, so you don't [have] to worry about the CFO [Mr. Szemeneyei].  (02/18/2009 Hr'g Tr. 41:9-18).

In addition to trademark Facts 1-14, Bacardi's March 30, 2009 offer of proof includes DTX 125 and expanded testimony that Mr. Szemeneyei supposedly would have given had he been compelled to testify at trial.  (D.I. 102).  In particular, Bacardi now says "it would have called Peter Szemeneyei, Pernod USA's Chief Financial Officer, to further confirm Mark Barabell's testimony showing the direct and substantial linkage between Pernod and Pernod USA [], and to expressly testify about the alignment of their interests on Cuban issues, especially those relating to the 'HAVANA CLUB' brand."  (D.I. 106 at 4).[1]

## C.   Bacardi Failed To Introduce Other Evidence It Now Relies Upon

The Court did not preclude Bacardi from seeking to offer other documents that Bacardi now alleges are relevant, including statements in Pernod Ricard S.A.'s annual reports and certain documents concerning lobbying.  Bacardi simply failed to offer that evidence at trial. Bacardi did so even though Pernod USA represented at the Pretrial Conference that Pernod

---

[1]   "D.I. 106" is Defendant Bacardi U.S.A., Inc.'s Opening Post-Trial Brief On Issues For Which It Bears The Burden Of Proof.

USA's Vice President of Spirits Marketing, "Mr. [Jeffrey] Agdern, can talk about the two very narrow points that Mr. Golden mentioned, the successor question and the parentage question." (02/18/2009 Hr'g Tr. 38:3-5).

Instead, Bacardi improperly included in its March 30, 2009 offer of proof two rulings from the New York Case (DTX 117, DTX 130), and the following material that Bacardi never sought to introduce at trial although it was free to do so:

- Pernod Ricard, S.A.'s 2007/2008 Annual Report (DTX 89);
- Pernod Ricard, S.A.'s web page (DTX 121);
- 2008 lobbying reports for Pernod Ricard, S.A. and Pernod USA (DTX 126); and
- Facts to be judicially noticed.[]  (D.I. 102).

On April 15, 2009, Pernod USA filed its objections to Bacardi's offer of proof, which identified those few items that were appropriate for an offer of proof; made clear that an offer of proof may not be used to supplement the trial record and may not include material never offered at trial; and explained why the material in Bacardi's offer of proof was inadmissible. (D.I. 103).

> **D.     The Evidence Established That Pernod USA Could Not Have Brought Its Lanham Act Claim Until After Bacardi Had Launched Its Puerto Rican HAVANA CLUB Rum In August 2006**

Pernod USA filed this action on August 15, 2006 – seven days after the August 8, 2006 launch of Bacardi's Puerto Rican HAVANA CLUB rum that is the subject of this litigation. (D.I. 1; JTX 4).   At trial, Bacardi introduced evidence concerning a different, Bahamian, HAVANA CLUB rum that its affiliate marketed in 1995-96.   (JTX 2; 03/04/2009 Tr. 248:22-249:5).   Bacardi's Chief Marketing Officer John Gomez was mistaken when he identified DTX 91 as a Puerto Rican HAVANA CLUB rum sold in the U.S. by Bacardi in the 1990's.

(03/04/2009 Tr. 249:17-21).[2]  There is no evidence that Bacardi or any of its affiliates marketed any HAVANA CLUB rum in the U.S. after 1996 until Bacardi introduced its new Puerto Rican HAVANA CLUB rum in a new bottle ten years later.  (JTX 2; 03/04/2009 Tr. 241:25-242:2).

Moreover, Bacardi's old Bahamian and new Puerto Rican HAVANA CLUB rum products are different.  The rums, bottles and labels are all different.  (JTX 2; JTX 6).  Indeed, Bacardi has conceded that its "the rum at issue in this case is formulated, packaged, and labeled very differently from the rum at issue in the prior case."  (D.I. 92 at 2-3).

Nor is there any evidence that either Pernod USA, or any alleged predecessor-in-interest of Pernod USA, was marketing a rum product in the U.S. during the 1995-96 window when Bacardi's affiliate was marketing a Bahamian HAVANA CLUB rum in the U.S.  Indeed, all of the evidence at trial was to the contrary.  Pernod USA was chartered in 2001 in connection with the purchase of the Seagrams Company.  (03/03/2009 Tr. 38:23-39:9).  At that time, a number of brands of spirits were sold or transferred to Pernod USA.  (*Id.*).  These included WILD TURKEY bourbon produced by Austin Nichols.  (*Id.*).  After transferring the distribution of WILD TURKEY bourbon to Pernod USA, Austin Nichols continued to operate as the producer of that product.  (*Id.* at 39:4-9).  Austin Nichols did not market any brands of rum in the United States from 1995-1997.  (*Id.* at 38:16-18).

---

[2]    In fact, DTX 91 – which bears Exhibit No. 658 from the New York Case – was a mock-up of Bacardi's Bahamian rum bottle prepared solely for use in a consumer survey. Bacardi sold only a Bahamian rum in 1995-96.  *See Havana Club Holding S.A.*, 62 F. Supp. 2d at 1090-91 ("In 1995, Bacardi-Martini began to distribute rum in the United States which was produced in the Bahamas . . . .  From May 1996 through August 1996, Bacardi distributed an additional 906 cases . . . .").

Pernod USA did not acquire the MALIBU rum brand that competes directly with Bacardi's Puerto Rican HAVANA CLUB rum until 2005, long after Bacardi's Bahamian HAVANA CLUB rum had left the U.S. market. (*Id.* at 29:11-30:20).

## ARGUMENT

As discussed below, Bacardi has failed to meet its burden of proof on any of its affirmative defenses. *See Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006) (Federal Rules of Civil Procedure "place on the defendant the burden to set forth any 'matter constituting an avoidance or affirmative defense'") (*citing* Fed. R. Civ. P. 8); *Gruber v. Price Waterhouse*, 911 F.2d 960, 963 (3d Cir. 1990) ("When the statute of limitations is raised as a defense, we have recognized that it 'is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant.'") (citations omitted); *E.E.O.C. v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984) (burden of establishing laches is on defendant).

## I.   BACARDI DID NOT PROVE ITS THIRD AFFIRMATIVE DEFENSE

Bacardi's Third Affirmative Defense alleges:

Plaintiff is not entitled to any relief, and the action must be dismissed, because *plaintiff is seeking to prosecute this case in concert with and to promote the interests of Cubaexport and Havana Club Holding, S.A.*, contrary to Section 211 of Omnibus Consolidation and Emergency Supplemental Appropriations Act (Public Law No. 105-277, 112 Stat. 2681 (Oct. 21, 1998)) [Section 211], the Trading with the Enemy Act (as amended, 12 U.S.C. § 95a), the Cuban Liberty and Democratic Solidarity Act (Pub. L. No. 104-114, 110 Stat. 785 (1996)), and regulations of the Office of Foreign Assets Control, including the Cuban Asset Control Regulations (31 C.F.R. Part 515).  (D.I. 14 at 7) (emphasis added).

Bacardi's Third Affirmative Defense fails for at least the following reasons:

1.      Bacardi presented no evidence at trial that Pernod USA "is seeking to prosecute this case in concert with and to promote the interests of Cubaexport and Havana Club Holding, S.A.," as alleged in the defense;

2.      Bacardi cannot make up for its lack of admitted trial evidence by relying on its March 30, 2009 offer of proof (D.I. 106. at 1);

3.      Bacardi may not rely on an unpleaded and unproven collateral estoppel defense to bind Pernod USA to facts supposedly "determined in the prior HAVANA CLUB Case" (D.I 106 at 7); and

4.      As a matter of law, the statutes and regulations relied upon by Bacardi do not excuse Bacardi's continued deception of consumers in violation of the Lanham Act § 43(a) or deprive Pernod USA of the right to challenge Bacardi's false designation of the geographic origin of its Puerto Rican HAVANA CLUB rum.

### A.      Bacardi Provided No Evidence At Trial To Support Its Third Affirmative Defense

First and foremost, Bacardi's Third Affirmative Defense fails because Bacardi itself concedes that it cannot meet its burden to prove the defense with evidence admitted at trial. (D.I. 106 at 1-2).[3]  In asserting post-trial that Pernod USA is "seeking to prosecute this case in concert with and to promote the interests of Cubaexport and Havana Club Holding, S.A.,"

---

[3]      *See* Judge Sue L. Robinson, Briefing Guidelines in Patent Cases, at III(d)(i) (D. Del. rev. Dec. 16, 2008) ("Only **admitted trial exhibits** should be relied upon in post-trial briefing.").

Bacardi relies almost exclusively on material presented for the first time in its post-trial offer of proof.  (*Id.* at 2-6).[4]

### B.   <u>Bacardi May Not Rely On Its Offer Of Proof In Lieu Of Trial Evidence</u>

Bacardi cannot make up for this absence of trial evidence by pointing to the material in its offer of proof.  It goes virtually without saying that material in an offer of proof does not establish a fact.  On the contrary, the purpose of an offer of proof is to provide a record for determining whether evidence a party unsuccessfully attempted to introduce at trial was properly excluded.  *See* Fed. R. Evid. 103(a)(2); 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 103.20[1] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 2009).  Thus, Bacardi cannot rely on trademark Fact Nos. 1-14.  Nor can Bacardi rely on DTX 125 or its newly revised statement about what Mr. Szemeneyei's testimony supposedly would have been.  *See supra* at 5-6.

The same is true for the remainder of the material in Bacardi's offer of proof, which Bacardi *never sought to introduce at trial*.  Neither the Federal Rules of Evidence nor the Court's prior rulings permit Bacardi to introduce after trial through an offer of proof material that Bacardi could have but did not even attempt to introduce into evidence at trial.  But even if they did permit that, Bacardi's material would not prove its allegation that Pernod USA is "seeking to prosecute this case in concert with and to promote the interests of Cubaexport and Havana Club Holdings, S.A.," as the Third Affirmative Defense alleges.  Indeed, Bacardi did not even attempt to support that allegation in its post-trial brief.  Instead, it relies on its offer of proof to establish a different proposition, namely, that "Pernod USA is acting under the direction or control of its

---

4          The only admitted evidence cited by Bacardi is testimony about the uncontested fact that Pernod USA is "an affiliate of Pernod Ricard Holding in Paris."  (03/04/2009 Tr. 314:13-16).

corporate parent, Pernod Ricard S.A. . . . in bringing and litigating this action." (D.I. 106 at 1). Even if that unpleaded and unproven assertion were so, it would not support the Third Affirmative Defense.

And the material in Bacardi's offer of proof would not support Bacardi's position even if it had been offered and admitted at trial. For example, Bacardi seeks to rely on unoffered DTX 89 to substantiate its hyperbolic claim that Pernod Ricard S.A.'s "annual report concedes, even brags, that Pernod [Ricard S.A.] has controlled all of the U.S. 'Havana Club' litigation as well as the lobbying efforts by Pernod [Ricard S.A.] and Pernod USA in the United States aimed to cause the relevant statutes dealing with Cuban trade to be amended or repealed." (D.I. 106 at 2). The annual report actually says:

> We have naturally continued to manage ongoing litigation, such as the dispute with Bacardi concerning Havana Club. We also regularly assist the Group's subsidiaries in their development projects, particularly with regard to the creation of joint ventures with local partners. (DTX 89 at 86).

The quote says nothing about lobbying. And if Bacardi had placed that document before a Pernod USA witness, such as Mr. Agdern, the testimony would have been that the "litigation" being referred to was not this case.[5]

---

[5] Bacardi similarly inflates some unexplained documents that appear to reflect lobbying records (DTX 126). In the absence of any testimony, it is impossible to know what these documents are really about. Even using Bacardi's attorney-created chart (D.I. 106 at 3-4), it is clear that they do not "illustrate Pernod and Pernod USA's coordinated U.S. lobbying activities on issues relating to Cuba" as asserted by Bacardi. (D.I. 106 at 2). Indeed, none of the descriptions of "Specific Lobbying Issues" says anything about HAVANA CLUB. And for the entries where the "Client Name" is "Pernod Ricard USA," the "Specific Lobby Issue" does not even mention Cuba. Such material proves nothing without additional testimony or evidence. *See Viking Theatre Corp. v. Paramount Film Distrib. Corp.*, 320 F.2d 285, 296-97 (3d Cir. 1963) (rejecting offer of proof because "[t]he facts which the plaintiff offered to prove could have had ne[sic] legal significance in the absence of additional evidence"), *aff'd*, 378 U.S. 123 (1964).

C.   **Bacardi Cannot Make Up For A Lack Of Evidence With An Unpleaded And Unproven Collateral Estoppel Defense**

In the absence of any evidence that Pernod USA is "seeking to prosecute this case in concert with and to promote the interests of Cubaexport and Havana Club Holding S.A.," Bacardi asserts that Pernod USA is bound by "the facts determined in the prior HAVANA CLUB Case" (D.I. 106 at 7), and that these facts somehow support its defense. Bacardi is wrong.

Even if Bacardi could rely on one defense (collateral estoppel) to support a *different* affirmative defense, Bacardi's collateral estoppel defense fails because it was not pleaded. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any . . . affirmative defense."); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) ("Res judicata and collateral estoppel are affirmative defenses that must be pleaded."); *Ford v. Temple Hosp.*, 790 F.2d 342, 348 n.8 (3d Cir. 1986) (noting that collateral estoppel is a defense that must be affirmatively pleaded and is considered waived if not pleaded); *Old Charter Distillery Co. v. Cont'l Distilling Corp.*, 174 F. Supp. 312, 318 (D. Del. 1959) (doctrine of collateral estoppel unavailing since not pleaded); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278 (3d ed. 2004) ("[i]t is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense . . . results in the waiver of that defense and its exclusion from the case . . . [including the] affirmative defense [of collateral estoppel]").[6]

---

[6]   Bacardi's Fifth Affirmative Defense, which alleges that Count I "fails because it is barred by the doctrine of laches, waiver and/or estoppel," is not a collateral estoppel defense. As used in the Fifth Affirmative Defense, "estoppel" means the defense of "equitable estoppel" akin to the equitable defenses of laches and/or waiver. *See Hank Thorp, Inc. v. Minilite, Inc.*, 474 F. Supp. 228, 239 (D. Del. 1979) (estoppel involves (1) "'the party claiming the estoppel lacked knowledge and the means of knowledge of the truth of the facts in question'"; (2) the party claiming estoppel "'relied on the conduct of the party against whom the estoppel is claimed'"; and (3) the party claiming estoppel prejudicially changed its position as a result) (citation omitted); *Sanofi-Aventis v. Advancis Pharm.*

And even if Bacardi had pleaded collateral estoppel, it failed to prove the elements of that defense.  As recognized by Bacardi, collateral estoppel requires proof that: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *Fairbank's Capital Corp. v. Milligan*, 234 Fed. Appx. 21, 23 (3d Cir. 2007) (internal quotation marks and citations omitted); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 333 (D. Del. 2007). Regarding the fourth element, issue preclusion applies only to persons who were either parties to the prior suit or were in privity with a party to the prior suit.  *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008); *Digene Corp. v. Ventana Med. Sys., Inc.*, 484 F. Supp. 2d 274, 281 (D. Del. 2007).  In addition, the party being precluded must have had the opportunity to litigate fully and fairly the issue in question.  *Id.*; *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, No. 98-80-SLR, 2004 WL 2980734, at *3 (D. Del. Dec. 17, 2004).

Bacardi does not, because it cannot, make any meaningful effort to establish that the "identical issue [in this case] was previously adjudicated" in the New York Case.  Bacardi cannot establish that the New York Case litigated the issue, which arose for the first time a decade later, of whether "[Pernod USA] is seeking to prosecute the case in concert with and to promote the interests of Cuba expert and Havana Club Holding, S.A."  Nor did the New York Case adjudicate whether Bacardi's use of HAVANA CLUB falsely designates the geographic origin of its 2006 Puerto Rican rum in violation of the Lanham Act.

---

*Corp.*, 453 F. Supp. 2d 834, 855 (D. Del. 2006) (laches involves (1) "inexcusable delay [by the plaintiff] in bringing suit" and (2) "prejudice to the defendant as a result of the delay."); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) (waiver occurs when one party by affirmative action conveys its implied consent to another party to engage in a certain course of conduct).

And the New York Case did not adjudicate Bacardi's alleged ownership of the U.S. HAVANA CLUB trademark either.  In fact, Bacardi withdrew its fifth counterclaim in the New York Case, which sought a declaration that it owns the U.S. HAVANA CLUB trademark. And Count II in this case, which would have adjudicated Bacardi's alleged trademark ownership, was dismissed on Bacardi's motion in which Bacardi asserted that Pernod USA was not the proper party to assert such a claim because it did not own the HAVANA CLUB trademark. (D.I. 27 at 5).

Bacardi also cannot establish that Pernod USA (i) was a party to the New York Case or in privity with a party and (ii) had a full and fair opportunity to litigate the trademark ownership issue.  It is undisputed that Pernod USA was not represented in the New York Case. It was not a party to that case and did not exist until 2001, let alone have interests in the U.S. market for rum.  Nor was is it in privity with New York litigants Havana Club Holding, S.A. ("HCH") and Havana Club International, S.A. ("HCI").  *See Huber*, 532 F.3d at 251 (privity exists "only when a non-party [Pernod USA] controls or directs the previous litigation").

Bacardi does not even attempt to establish privity between Pernod USA and either HCH or HCI.  Instead, it argues (without support) that "privity" can be establish because (i) Pernod USA is "closely affiliated with" HCI and HCH and (ii) Pernod USA "is fully aligned in interest with Pernod [Ricard S.A.] with respect to the HAVANA CLUB brand in the United States."  (D.I. 106 at 9).  But even if those points were proven – and they were not – as a matter of law, they do not establish "privity" between Pernod USA and HCH or HCI either now or in 1995-97 when the New York Case was litigated.[7]

---

[7]     In *Taylor v. Sturgell*, 128 S. Ct. 2161, 2173 (2008), which Bacardi quotes (D.I. 106 at 9), the Supreme Court found that preclusion was appropriate in the very limited circumstances where a party who did not participate in the first litigation later brings suit

Bacardi also does not dispute that Pernod USA had *no* opportunity to litigate the issue in the New York Case.  Instead, Bacardi now attempts to bind Pernod USA to alleged findings regarding trademark ownership although Bacardi deprived Pernod USA of the opportunity to litigate the trademark ownership issue by moving to dismiss Count II and thereafter denying discovery on that issue.  *See Digene*, 484 F. Supp. 2d at 282 (no collateral estoppel where the party asserting the doctrine had the opportunity to litigate the issue on which privity is now allegedly based but denied the other party the full and fair opportunity to litigate that issue).

D.    <u>**Bacardi's Third Affirmative Defense Fails As A Matter of Law**</u>

Even if Bacardi had proved that it owns the HAVANA CLUB trademark in the U.S. and that this somehow supports its Third Affirmative Defense, the defense still fails as a matter of law.

1.    <u>**Section 211 Does Not Prohibit Pernod USA From Bringing Its Lanham Act § 43(a) Claim**</u>

As the alleged owner of the HAVANA CLUB trademark, Bacardi contends that Pernod USA's Lanham Act § 43(a) false designation of geographic origin claim is barred because Section 211(a)(1) supposedly provides:

> no Court may recognize, enforce, or otherwise validate any assertion by any party other than Jose Arechebala, S.A. or Bacardi, as its successor-in-interest, of rights in the trademark HAVANA CLUB.  This provision serves to prohibit Pernod USA from taking any action which is designed to exclude Bacardi USA from using the mark in the United States under the guise of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq*. (D.I. 106 at 11).

---

"*as a designated representative*" or "*as an agent*" of the prior litigant.  *Taylor*, 128 S. Ct. at 2173 (emphasis added).

Bacardi's position is directly contradicted by the New York Case on which Bacardi relies.[8]  The District Court in the New York Case stated:

> Section 211 . . . does not prevent HCI from asserting its false designation of [geographic] origin claim.  This claim does not arise out of any ownership rights that HCI is asserting in the Havana Club name . . . .  Rather, it arises out of HCI's claim that . . . it is likely to be damaged by defendants' allegedly false designation of Cuban origin on its product.  Because § 211 does not explicitly abrogate rights to bring an unfair competition claim, this Court will not extend its reach to such claims.

*Havana Club Holding, S.A.*, 62 F. Supp. 2d at 1094.  And the Second Circuit observed that notwithstanding Section 211 "[a]ny rum producer selling its product in the United States can obtain standing to complain about Bacardi's allegedly false designation of [geographic] origin as long as it can demonstrate the commercial injury required for an action under section 43(a)."  *Havana Club Holding, S.A.*, 203 F.3d at 134.

Moreover, Bacardi does not cite the subsections of Section 211 that concern litigation, which are Sections 211(a)(2) and 211(b).  Sections 211(a)(2) and 211(b) provide on their face that "[n]o U.S. court shall recognize, enforce or otherwise validate any assertion of [rights in certain trademarks, trade names or commercial names] by a designated [Cuban] national."  Because Count I does not involve the assertion of rights in a trademark and Pernod USA is not a Cuban national, they are inapposite here.

Bacardi relies instead on Section 211(a)(1), which says nothing about what a court may or may not do in litigation, much less provide a defense to Count I.  As discussed below, Section 211(a)(1) concerns registration of a certain class of trademarks, trade names or commercial names by Cuba or Cuban nationals.  Count I does not raise that issue, and Pernod USA is not a Cuban national.

---

[8]     Bacardi-Martini U.S.A., Inc., one of the defendants in the prior *Havana Club* litigation, is a predecessor company to Bacardi U.S.A., Inc., the defendant in this suit.

The 1963 U.S. embargo on trade with Cuba preceded passage of Section 211 in 1998 by 35 years.  The embargo is overseen by the Office of Cuban Assets Control ("OFAC"), which is the branch of the Treasury Department that administers the Cuban Assets Control Regulations ("CACR"), which were promulgated in 1963 under the authority of the Trading With the Enemy Act ("TWEA"), 50 U.S.C. App. § 1 *et seq.*  Pursuant to the CACR, a transaction in the United States involving Cuban-owned property including registered trademarks is prohibited unless a transaction is authorized by OFAC.  31 C.F.R. § 515, subpt. B.  Such authorization may take the form of a "general license."  31. C.F.R. § 515.317.  In 1995, the CACR included among its general licenses the following license:

> Transactions related to a registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

31 C.F.R. § 515.527 (1996); *see* 60 Fed. Reg. 54,194, 54,196 (Oct. 20, 1995).

In 1998, at Bacardi's behest, Congress enacted Section 211, which provides *inter alia*:

> (a)(1) Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the *bona fide* successor-in-interest has expressly consented.

Pub. L. No. 105-277, 112 Stat. 2681-88, Sec. 211.

Accordingly, OFAC amended the CACR in 1999.  *See* 64 Fed. Reg. 25,808, 25,813 (May 13, 1999).  In particular, OFAC retained the original 31 C.F.R. § 515.527 general license as Paragraph (a)(1) of the amended regulation, and added Paragraph (a)(2):

(a)(2) No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the *bona fide* successor-in-interest has expressly consented.

Nothing in Section 211(a)(1) or OFAC's amended regulation prohibits a U.S. national such as Pernod USA from asserting in a U.S. court a claim for false designation of geographic origin pursuant to Lanham Act § 43(a).

There also is no merit to Bacardi's bald claim that "[b]y mandating that the express consent of the original owner of a confiscated mark or its successors be the necessary and only precondition for recognition of U.S. trademark rights in that mark, Congress impliedly adopted [prior] precedent when it amended the Lanham Act through its adoption of Section 211." (D.I. 106 at 12). Bacardi provides no support for its assertions that Section 211 amended the Lanham Act in any manner, including foreclosing U.S. nationals such as Pernod USA from bringing Lanham Act § 43(a) claims, or that Section 211 "impliedly adopted" the five cases Bacardi cites. (*Id.* at 12).

Each of those cases deals with claims to trademarks or other property – not defense of a Lanham Act § 43(a) claim. Bacardi claims that *Cuban Cigar Brand N.V. v. Upmann Int'l Inc.*, 457 F. Supp. 1090, 1101 (S.D.N.Y. 1978), *aff'd without op.*, 607 F.2d 995 (2d Cir. 1979), is a case involving denial of a "geographical misdescriptiveness claim." In fact, the Court enjoined defendant from using two trademarks, ordered cancellation of its trademark registrations, and refused to cancel plaintiff's trademark registration. *Id.*[9]

---

[9]    The remaining four cases are *Baglin v. Cusenier Co.*, 221 U.S. 580, 597 (1911) (involving "the right of property in trademarks"); *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021, 1026 (5th Cir. 1972) (involving effect of foreign corporate dissolution on

Finally, Bacardi's single non-precedential and inapposite Trademark Office authority[10] does not support its broad assertion that "Section 211 specifically directs courts, agencies, and any other governmental entity to prohibit any transfer of property in the HAVANA CLUB mark . . . , and several courts have held that this is the case."  (D.I. 106 at 13).  Even if that were the law, it would not provide a defense to Pernod USA's claim for injunctive relief pursuant to Lanham Act § 43(a) because such relief is not a "transfer of property in the HAVANA CLUB mark" to Pernod USA (or anyone else).

### 2. The Cuban Asset Control Regulations And The LIBERTAD Act Do Not Prohibit Pernod USA From Obtaining Injunctive Relief Pursuant To Lanham Act § 43(a)

There also is no merit to Bacardi's claim that:

> The present action represents an inappropriate attempt to secure a transaction in violation of the laws and regulations set out in the Third Affirmative Defense, which would be realized if judgment is entered for Pernod USA and injunction were entered barring Bacardi USA's use of the HAVANA CLUB mark for rum.  Accordingly, Pernod USA's attempts to circumvent the CACR and other federal law cannot be countenanced and judgment should instead enter in favor of Bacardi USA.  (D.I. 106 at 16-17).

Even if Bacardi had proof of those facts, neither the CACR nor the LIBERTAD Act provides a defense to Pernod USA's claim for injunctive relief pursuant to Lanham Act § 43(a).  Those regulations and legislation do not address such a claim for relief.  Ultimately, Bacardi's position is that the CACR in 1963 and the LIBERTAD Act in 1996 each carved out an

---

corporation's "'trademarks registered in this country'") (*quoting F. Palicio y Compania, S.A.* v. *Brush*, 256 F. Supp. 481, 491 (S.D.N.Y. 1966), *aff'd*, 375 F.2d 1011 (2d Cir. 1967)); *Republic of Iraq v. First Nat'l City Bank*, 241 F. Supp. 567, 575 (S.D.N.Y. 1965) ("plaintiff is not entitled to recover the property which it seeks in this action"), *aff'd*, 353 F.2d 47 (2d Cir. 1965).

[10]    In *Havana Club Holding S.A. v. Buffett*, No. Opp. 91116754, 2003 WL 1423117, at *4-5 (T.T.A.B. Mar. 13, 2003), the United States Patent and Trademark Office Trademark Trial and Appeal Board held that the opposer could not demonstrate any real interest in the outcome of the proceeding and therefore lacked standing to assert its claims.

exception to Lanham Act § 43(a)'s prohibition on false statements if the statement concerns the

Cuban origin of a Puerto Rican rum.  That is utterly unsupported and, indeed, fantastic.

With respect to the CACR, Bacardi relies on 31 C.F.R. § 515.201(b)-(c), which

provide:

> (b) All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury (or any person, agency, or instrumentality designated by him) by means of regulations, rulings, instructions, licenses, or otherwise, if such transactions involve property in which any foreign country designated under this part [Cuba], or any national thereof, has at any time on or since the effective date of this section had any interests of any nature whatsoever, direct or indirect:

> > (1) All dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property or evidences of indebtedness or evidences of ownership of property by any person subject to the jurisdiction of the United States; and

> > (2) All transfers outside the United States with regard to any property or property interest subject to the jurisdiction of the United States.

> (c) Any transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions set forth in paragraph (a) or (b) of this section is hereby prohibited.[11]

These executive department regulations are irrelevant and provide no defense to

the Lanham Act § 43(a) false designation of origin claim set out in Count I.  In Count I, Pernod

USA is not seeking to transfer, withdraw, export or otherwise deal in the property of Cuba or a

Cuban national.  Nor is it seeking to engage in the transfer outside the United States of property

within the United States.  It is simply seeking to prevent Bacardi's continued deception of United

States consumers concerning the geographic origin of Bacardi's Puerto Rican rum.  The Lanham

Act's prohibition on false designations of geographic origin has coexisted with CACR

§ 515.201(b)-(c) since those regulations were promulgated in 1963 pursuant to the executive's

---

[11] Further, Bacardi cites the definitions of "transfer" (31 C.F.R. § 515.310) and "property," which includes "trademarks."  31 C.F.R. § 515.311.

TWEA authority.  Yet, Bacardi has cited no authority to support its novel theory that these regulations altered Lanham Act § 43(a), because none exists.[12]

        With respect to the LIBERTAD Act, there is no basis in law or the record for Bacardi's assertion that:

> Allowing Pernod USA's [false designation of geographic origin] claim would invite business arrangements like Cubaexport's venture with Pernod, which Congress expressly intended to prevent – namely, ventures between Cuba and third-country nationals who "seek[] to profit from illegally confiscated property." . . .  Such a precedent would eviscerate the very purpose of . . . the LIBERTAD Act, which seek[s] to "preserve such [confiscated] property until such time as the rightful owners can successfully assert their claim."  Bacardi, as the successor to JASA, is that rightful owner, and has a valid claim to continue using the HAVANA CLUB mark, particularly on a rum such as this one, which is produced in accordance with the same Arechebala family formula used to craft the HAVANA CLUB rum produced in Cuba and Puerto Rico since before 1960.  (D.I. 106 at 16).

        Nothing in the LIBERTAD Act condones false designations of geographic origin in violation of Lanham Act § 43(a), including Bacardi's continued deception of the public regarding where its rum is made.  Moreover, Bacardi did not prove at trial that:  (a) it is the owner of the HAVANA CLUB trademark, which was at issue in Count II; (b) there is any business arrangement between Cubaexport and Pernod USA; or (c) Bacardi's rum "is produced in accordance with the same Arechabala family formula."

---

[12]     Entirely inapposite is *Empressa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 474 (2d Cir. 2005), which states that "Cubatabaco's acquisition of the U.S. COHIBA mark through the famous marks doctrine is barred by 31 C.F.R. § 515.201(b)(2), which prohibits 'transfers outside the United States with regard to any property or property interest subject to the jurisdiction of the United States' if the transfer involves property in which a Cuban entity has an interest.  31 C.F.R. § 515.201(b)(2)."

## II.   BACARDI DID NOT PROVE ITS STATUTE OF LIMITATIONS AND LACHES DEFENSES

Even though Pernod USA brought this action just seven days after the August 8, 2006 launch of Bacardi's Puerto Rican HAVANA CLUB rum, Bacardi asserts that "Pernod USA sat on its alleged rights for so long that they are no longer legally enforceable." (D.I. 106 at 17). Of course, seven days is well within the three year statute of limitations period applied by Delaware courts in Lanham Act cases. *See Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 855-56 (D. Del. 2006) (appropriate time period for Lanham Act claims is three years, based on the Delaware fraud statute, 10 Del. C. § 8106).

Nevertheless, Bacardi contends that Pernod USA's claim is barred because "Bacardi USA made its first use of the HAVANA CLUB mark on rum not manufactured in Cuba in 1995 . . . . (DTX 91, JTX 2, Tr. 242:20-24; 248:22-249:25)." (D.I. 106 at 18). But Bacardi fails to mention that the 1995 product was, by Bacardi's own admission, a *Bahamian* rum that was "formulated, packaged, and labeled very differently from the rum at issue." (D.I. 92 at 2-3). And distribution of that product in the U.S. ceased in 1996. *See Havana Club Holding S.A.*, 62 F. Supp.2d at 1090-91:

> In 1995, Bacardi-Martini began to distribute rum in the United States which was produced in the Bahamas under the authority of Galleon, Bacardi & Co.'s predecessor-in-interest, bearing the trademark Havana Club. This distribution consisted of sixteen cases of rum shipped to four U.S. distributors. *See* SF at P 19; PX 146. From May 1996 through August 1996, Bacardi distributed an additional 906 cases of Havana Club rum to distributors in seven states. *See* PX 136, 146.[13]

---

[13]   Relying in part on one exhibit that was not offered or admitted at trial (DTX 117), Bacardi also asserts that "Bacardi USA's predecessor, JASA, produced non-Cuban rum under the name and mark HAVANA CLUB prior to 1960 without any protest from any entity whatsoever. (DTX 87, DTX 117, DTX 120, Tr. Sealed Vol. B 5:24-6:9, Tr. 410:16-413:3)." (D.I. 106 at 18). Bacardi does not explain, however, why that precludes Pernod USA from bringing this action to prevent conduct that began in August 2006.

Instead, Bacardi asserts that the "proof at trial is that Bacardi introduced a HAVANA CLUB rum product (DTX 91 and JTX 2) to the United States market in the mid-1990s.  (Tr. 242:20-24; 248:22-249:25)."  (D.I. 106 at 7).  In fact, the supposedly Puerto Rican rum to which Bacardi refers (DTX 91) actually was a mock-up of its Bahamian rum used in a consumer survey, not a product sold in the U.S.  *See supra* at 7 n.2.

Limited distribution of a Bahamian rum years ago does not bar Pernod USA from challenging the false designation of origin of a different Puerto Rican rum that began in 2006. *See Teaching Co. v. Unapix Entm't*, 87 F. Supp. 2d 567, 586 (E.D. Va. 2000) ("When a defendant commits multiple wrongful acts, a separate statute of limitations attaches to each wrongful act."); *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1530 n.3 (S.D.N.Y. 1994) (finding each of defendants' alleged violations to be "'a distinct harm giving rise to an independent claim for relief'") (citation omitted).

And even if the 1995 and 2006 products and packaging had been the same, neither Pernod USA nor a predecessor could have sued in 1995.  There is no evidence that either Pernod USA (which was not chartered until 2001) or Austin Nichols (an alleged, but unproven, predecessor of Pernod USA) could have brought such a claim in 1995.  Neither of them was a competitor in the rum market in the U.S. at that time.

Bacardi's affirmative defense of laches also fails.[14]  A finding of laches requires (1) "inexcusable delay [by the plaintiff] in bringing suit" and (2) "prejudice to the defendant as a result of the delay."  *Sanofi-Aventis*, 453 F. Supp. 2d at 855; *W.L. Gore & Assocs., Inc. v. Totes Inc.*, 788 F. Supp. 800, 812 n.19 (D. Del. 1992).  Where no evidence of delay exists, laches fails

---

[14]  Bacardi has not pursued the equitable estoppel and waiver aspects of its Fifth Affirmative Defense.

as a defense.  As discussed above, Pernod USA did not delay.  Nor could either Pernod USA or

any supposed predecessor have sued in 1995.

Moreover, Bacardi introduced no evidence that it has been prejudiced in any way

because Pernod USA or a predecessor failed to join HCH and HCI as a plaintiff in the action

they brought in 1995.   Bacardi itself concedes that "prejudice ensues when 'defendant has

changed his position in a way that would not have occurred if the plaintiff had not delayed.'"

(D.I. 106 at 19).  Yet, the only evidence Bacardi cites concerns its marketing of a new product in

a new bottle:

> The evidence admitted at trial demonstrates that Bacardi undertook
> considerable efforts to bring its HAVANA CLUB to market and to
> establish a favorable brand identity for the product.  The marketing efforts
> included developing attractive and evocative packaging and an effective
> marketing plan that used, among other things, a website
> (www.havanaclubus.com), promotional items and the sponsorship of
> various promotional events.  *See generally* Tr. 241:22-274:24 (testimony
> of J. Gomez discussing marketing efforts), Tr. 405:17-413:3 (testimony of
> P. Neal discussing marketing efforts).  Those efforts were all undertaken
> and the associated costs incurred as part of the production re-launch years
> after Bacardi USA's first use of the mark – a use that Pernod USA and its
> affiliates were quite aware of.  (*Id.*).

There is no evidence that Bacardi would have pursued a different path if Pernod USA or a

predecessor had challenged Bacardi's prior product.   On the contrary, the prior product *was*

challenged.  Bacardi removed it from the market, and then started over ten years later.

In 2006, Bacardi proceeded at its peril by launching a HAVANA CLUB rum

made in Puerto Rico, not Cuba.  Bacardi knew that use of HAVANA CLUB on the prior product

caused widespread deception as to where the product was made.   (PTX 67; 03/05/2009

Tr. 454:22-455:8).  It also knew that HCH/HCI's Lanham Act § 43(a) challenge in the New York

Case failed only because they lacked standing to bring the claim and that "[a]ny rum producer

selling its product in the United States can obtain standing to complain about Bacardi's allegedly

false designation of [geographic] origin as long as it can demonstrate the commercial injury required for an action under section 43(a)." *Havana Club Holding S.A.*, 203 F.3d at 134.  The difference between 1995 and 2006, in addition to the offending product itself, was that Pernod USA had entered the U.S. rum market with its purchase of the MALIBU brand in 2005.  As a marketer of rum, Pernod USA could and did bring this action promptly after Bacardi launched its Puerto Rican HAVANA CLUB rum in 2006.

### III.   BACARDI DID NOT PROVE ITS SEVENTH AFFIRMATIVE DEFENSE

Bacardi's Seventh Affirmative Defense alleges:

> The Complaint fails because Bacardi's first sales of its HAVANA CLUB rum in the U.S. took place in 1995, and pursuant to the Lanham Act [§ 2(a)], 15 U.S.C. § 1052(a), as amended, trademarks of spirits which may have geographic significance but which were in use prior to January 1, 1996 are exempt from any statutory proscription against the use of trademarks that might otherwise be considered geographically misdescriptive.  (D.I. 14 at 8).

The defense fails as a matter of fact and law.  The sale of the Puerto Rican HAVANA CLUB rum at issue in this case did not "first . . . [take] place in 1995."  The false statement regarding the geographic origin of Bacardi's Puerto Rican rum on the bottle Bacardi uses today began in August 2006, not in 1995 when Bacardi sold its Bahamian rum in a different bottle.  *See supra* at 7, 21.

Moreover, Lanham Act § 2(a) does not provide a defense to a Lanham Act § 43(a) false designation of geographic origin claim.  Lanham Act § 2(a) concerns only whether certain terms, including geographic indications, can be registered with the United States Patent and Trademark Office as trademarks.  In particular, Lanham Act § 2(a) provides *inter alia*:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it –

> (a) Consists of or comprises . . . a geographical indication which, when used on or in connection with wines or spirits, identifies a place other than the origin of the goods and is first used on or in connection with wines or spirits by the applicant on or after [January 1, 1996].

The registration of a term as a trademark in the United States Patent and Trademark Office is not at issue in Count I, which concerns the use in commerce of a false designation of geographic origin.

Lanham Act § 2(a) was added by amendment in 1994. *See* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 14:40 (4th ed. 2008):

> The registration of certain geographic indications for wines and liquor was barred as of January 1, 1996 as a result of the Uruguay Round Agreements Act . . . .  However, GATT permits the continued registration of such misleading geographic indications that were first used before January 1, 1996 . . . .
>
> This GATT-required amendment to U.S. law was enacted by adding to the list of designations barred from registration in Lanham Act § 2(a) . . . .

There was no amendment of Lanham Act § 43(a).  Despite the 1994 change in Lanham Act § 2(a), the Second Circuit said in 2000 that "[a]ny rum producer selling its product in the United States can obtain standing to complain about Bacardi's allegedly false designation of [geographic] origin as long as it can demonstrate the commercial injury required for an action under section 43(a)." *Havana Club Holding S.A.*, 203 F.3d at 134.

## <u>CONCLUSION</u>

For the foregoing reasons, Pernod USA requests that Bacardi's affirmative defenses be dismissed, judgment be entered in favor of Pernod USA on Count I of the Complaint, and Bacardi be permanently enjoined from using the name HAVANA CLUB in connection with its non-Cuban rum.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *Pernod Ricard USA, LLC*

OF COUNSEL:

Vincent N. Palladino
Eric R. Hubbard
Leslie M. Spencer
Margaret C. Lu
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036
(212) 596-9000

August 3, 2009
3050609

## **CERTIFICATE OF SERVICE**

I, Rodger D. Smith II, hereby certify that on August 3, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Anne Shea Gaza, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I also certify that copies were caused to be served on August 3, 2009, upon the following in the manner indicated:

> **BY E-MAIL**

> Anne Shea Gaza, Esquire
> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, DE  19801

> William R. Golden, Jr., Esquire
> Kelley Drye & Warren LLP
> 101 Park Avenue
> New York, NY  10178

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
rsmith@mnat.com